UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x

CHINA GRILL, INC.,                              :
                                                :
                        Plaintiff,              :
                                                :
            v.                                  :        19-CV-3705 (DLC)
                                                :
ADP, LLC,                                       :
                                                :
                        Defendant.              :

------------------------------------------------------x

---

## DEFENDANT ADP, LLC'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT

---

KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York 10178
(212) 808-7800
Attorneys for Defendant

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................... 1

FACTUAL BACKGROUND .................................................................................. 2

    A.    The Parties ...................................................................................... 2

    B.    The Agreement................................................................................ 3

    C.    The Underlying Wage and Hour Class Action ................................... 4

    D.    The Complaint ................................................................................. 6

ARGUMENT ......................................................................................................... 7

POINT I.    THE CONTROLLING LEGAL STANDARDS ........................................ 7

    A.    Rule 12(b)(6) ................................................................................... 7

    B.    Rule 12(f) ........................................................................................ 8

POINT II.    THE BREACH OF CONTRACT CLAIM CANNOT BE SQUARED
WITH THE TERMS OF THE CONTROLLING CONTRACT ............................ 9

POINT III.    MULTIPLE PLEADING DEFECTS COMPEL THE
DISMISSAL OF THE GROSS NEGLIGENCE CLAIM ................................... 13

    A.    The Gross Negligence and Contract Claims Are Duplicative ............. 14

    B.    The Negligence Claim Fails Absent Any Duty of
Care Independent of the Underlying Contract ................................... 15

POINT IV.    THE CLAIM FOR BREACH OF THE IMPLIED COVENANT
OF GOOD FAITH FAILS AS A MATTER OF LAW ......................... 18

    A.    The Implied Covenant and Contract Claims Are Duplicative ............. 18

    B.    The Claim Improperly Seeks to Impose Implied Obligations
That Conflict With the Express Terms of the Agreement ................... 20

POINT V.    THE DEMAND FOR PUNITIVE DAMAGES
IS BASELESS AND SHOULD BE STRICKEN ................................. 22

CONCLUSION .................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

2002 Lawrence R. Buchalter Alaska Trust v. Philadelphia Financial Life Assurance Co.,
    96 F. Supp. 3d 182 (S.D.N.Y. 2015)................................................................. 18, 19

Ashcroft v. Iqbal,
    556 U.S. 662 (2009).............................................................................................. 7, 8

Bank of New York Mellon v. WMC Mortgage, LLC,
    2015 WL 4163343 (S.D.N.Y. July 10, 2015) ......................................................... 14

Bayerische Landesbank, New York Branch v. Aladdin Capital Management LLC,
    692 F.3d 42 (2d Cir. 2012)....................................................................................... 16

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007)................................................................................................... 7

Board of Managers of Soho North 267 West 124th Street Condominium v. NW 124 LLC,
    116 A.D.3d 506, 984 N.Y.S.2d 17 (1st Dep't 2014) ............................................... 17

Brass v. American Film Technologies, Inc.,
    987 F.2d 142 (2d Cir. 1993)....................................................................................... 8

Broder v. Cablevision Systems Corp.,
    418 F.3d 187 (2d Cir. 2005)..................................................................................... 22

Brokke v. Stauffer Chemical Co.,
    703 F. Supp. 215 (D. Conn. 1988)........................................................................... 24

Cargill Global Trading v. Applied Development Co.,
    706 F. Supp. 2d 563 (D.N.J. 2010) ......................................................................... 21

Cerveceria Modelo, S.A. De C.V. v. USPA Accessories LLC,
    2008 WL 1710910 (S.D.N.Y. Apr. 10, 2008).......................................................... 24

Clark-Fitzpatrick, Inc. v. Long Island Rail Road Co.,
    70 N.Y.2d 382, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987)............................... 15, 16

CRA, Inc. v. Ozitus International, Inc.,
    2017 WL 2779749 (D.N.J. June 27, 2017) .............................................................. 19

Cruz v. FXDirectDealer, LLC,
    720 F.3d 115 (2d Cir. 2013)..................................................................................... 19

Dormitory Authority of the State of New York v. Samson Construction Co.,
30 N.Y.3d 704, 70 N.Y.S.3d 893, 94 N.E.3d 456 (2018) ........................................ 15

Duane Reade v. SL Green Operating Partnership, LP,
30 A.D.3d 189, 817 N.Y.S.2d 230 (1st Dep't 2006) ................................................ 14

Embedded Moments, Inc. v. International Silver Co.,
648 F. Supp. 187 (E.D.N.Y. 1986) ......................................................................... 24

Eprotec Preservation, Inc. v. Engineered Materials, Inc.,
2011 WL 867542 (D.N.J. March 9, 2011) ................................................................ 9

Faistl v. Energy Plus Holdings, LLC,
2012 WL 3835815 (D.N.J. Sept. 4, 2012) ........................................................... 9, 10

Fellows v. CitiMortgage, Inc.,
710 F. Supp. 2d 385 (S.D.N.Y. 2010) ................................................................. 19, 22

Fields v. Thompson Printing Co.,
363 F.3d 259 (3d Cir. 2004) ................................................................................... 21

Frazer Exton Development, LP v. Kemper Environmental, Ltd.,
2004 WL 1752580 (S.D.N.Y. July 29, 2004), aff'd, 153 Fed. App'x 31 (2d Cir. 2005) ......... 13

Grande Village LLC v. CIBC Inc.,
2015 WL 1004236 (D.N.J. March 6, 2015) ............................................................ 10

Hahn v. OnBoard LLC,
2009 WL 4508580 (D.N.J. Nov. 16, 2009) ............................................................ 19

Hargrave v. Oki Nursery, Inc.,
636 F.2d 897 (2d Cir. 1980) ................................................................................... 16

Iconix Brand Group, Inc. v. Bongo Apparel, Inc.,
2008 WL 2695090 (S.D.N.Y. July 8, 2008) ..................................................... 17, 18

Iwanicki v. Bay State Milling Co.,
2011 WL 6131956 (D.N.J. Dec. 7, 2011) ............................................................ 9, 10

JGB (Cayman) Newton, Ltd. v. Sellas Life Sciences Group Inc.,
2018 WL 5266877 (S.D.N.Y. Oct. 23, 2018) ........................................................ 19

Johnson v. Metropolitan Sewer District,
926 F. Supp. 874 (E.D. Mo. 1996) ......................................................................... 24

Kurnik v. Cooper Health System,
2008 WL 2829963 (N.J. App. Div. July 24, 2008) ................................................ 21

L-7 Designs, Inc. v. Old Navy, LLC,
    647 F.3d 419 (2d Cir. 2011)..........................................................................................8, 9

LaFaro v. New York Cardiothoracic Group, PLLC,
    570 F.3d 471 (2d Cir. 2009)..............................................................................................8

McLaughlin v. Chong,
    2016 WL 1276470 (S.D.N.Y. March 29, 2016) .........................................................8

McMullen v. Ocwen Loan Servicing, LLC,
    2017 WL 714347 (D.N.J. Feb. 23, 2017) ..................................................................9

Nash v. Coram Healthcare Corp.,
    1996 WL 363166 (S.D.N.Y. June 28, 1996) ...........................................................24

Norte v. Worldbusiness Capital, Inc.,
    2015 WL 7730980 (S.D.N.Y. Nov. 24, 2015) .........................................................13

Oravsky v. Encompass Insurance Co.,
    804 F. Supp. 2d 228 (D.N.J. 2011) ..........................................................................20

OTG Brands, LLC v. Walgreen Co.,
    2015 WL 1499559 (S.D.N.Y. March 31, 2015) ........................................................8

Protoons Inc. v. Reach Music Publishing, Inc.,
    2016 WL 680543 (S.D.N.Y. Feb. 19, 2016), aff'd, 718 Fed. App'x 8 (2d Cir. 2017).............22

Prozeralik v. Capital Cities Communications, Inc.,
    82 N.Y.2d 466, 605 N.Y.S.2d 218, 626 N.E.2d 34 (1993).................................22, 23

Rapay v. Chernov,
    2017 WL 892372 (S.D.N.Y. March 6, 2017) ............................................22, 23, 24

Rosa v. TCC Communications, Inc.,
    2016 WL 67729 (S.D.N.Y. Jan. 5, 2016) .................................................................24

Skypala v. Mortgage Electronic Registration Systems, Inc.,
    655 F. Supp. 2d 451 (D.N.J. 2009) ..........................................................................10

Spencer Stuart Human Resources Consultancy (Shanghai) Co. v. American
    Industrial Acquisition Corp., 2017 WL 4570791 (S.D.N.Y. Oct. 12, 2017) .............................4

Spencer v. DHI Mortgage Co.,
    642 F. Supp. 2d 1153 (E.D. Cal. 2009)....................................................................24

TBI Unlimited, LLC v. Clear Cut Lawn Decisions, LLC,
    2013 WL 6048720 (D.N.J. Nov. 14, 2013) ........................................................19, 20

Twelve Sixty LLC v. Extreme Music Library Ltd.,
  2018 WL 369185 (S.D.N.Y. Jan. 9, 2018) ............................................................... 23

Underdog Trucking, LLC v. Verizon Services Corp.,
  2010 WL 2900048 (S.D.N.Y. July 20, 2010) ........................................................... 19

Ventus Networks, LLC v. Answerthink, Inc.,
  2007 WL 582736 (S.D.N.Y. Feb. 22, 2007) ............................................................. 24

Wade v. Kessler Institute,
  172 N.J. 327, 798 A.2d 1251 (2002) ........................................................................ 21

Walnut Housing Associates 2003 L.P. v. MCAP Walnut Housing LLC,
  136 A.D.3d 403, 25 N.Y.S.3d 129 (1st Dep't 2016) ............................................... 16

Wells v. Board of Trustees of California State University,
  393 F. Supp. 2d 990 (N.D. Cal. 2005) ................................................................. 9, 24

Wildenstein v. 5H&Co,
  97 A.D.3d 488, 950 N.Y.S.2d 3 (1st Dep't 2012) ................................................... 15

Wingate Inns International, Inc. v. Cypress Centre Hotels, LLC,
  2012 WL 6625753 (D.N.J. Dec. 19, 2012) .............................................................. 10

## Rules

Federal Rule of Civil Procedure 12(f) ................................................................................ 8

## Treatises

2 Moore's Federal Practice-Civil §12.37[3] (3d ed. 2018) .............................................. 23

## PRELIMINARY STATEMENT

Defendant ADP, LLC ("ADP") respectfully submits this memorandum of law in support of its motion pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f) to dismiss the Complaint of plaintiff China Grill, Inc. ("China Grill").

This action is a blatant attempt to foist upon ADP the financial consequences of China Grill's scheme to short-change its employees in violation of the wage and hour laws. During the time period relevant to this dispute, China Grill and a group of affiliated entities operated some thirty restaurants and bars throughout the United States and abroad. ADP was engaged in 2005 to process China Grill's payroll. The controlling contract made clear that China Grill was responsible for the accuracy of the payroll information it provided to ADP for processing. The contract also made clear that China Grill, not ADP, remained ultimately responsible for complying with the controlling wage and hour laws.

For nearly thirteen years, ADP processed China Grill's payroll without incident. That changed in 2018. In January 2018, six former employees commenced a putative wage and hour class action against China Grill and certain affiliates. Defendants were alleged to have maintained a policy and practice of not paying the statutory minimum wage and refusing to pay overtime. They also were accused of engaging in widespread "tip misappropriation." Significantly, this was not the first time the China Grill restaurant group and its principals had been accused of victimizing employees through willful violations of the wage and hour laws. They previously had been sued at least eight times in New York and Florida alone for wage and hour violations. Not surprisingly given this history, China Grill moved quickly to resolve quietly the wage and hour litigation class action commenced early last year. It promptly agreed to pay $1.22 million to settle that matter.

China Grill now seeks to stick ADP with the tab for resolving its most recent wage and hour problem.  ADP is alleged to somehow have guaranteed that China Grill's payroll practices would comply with all wage and hour laws.  This maneuver is slick but unavailing.  ADP assumed no such obligation in the controlling contract.  Nonetheless, China Grill maintains that ADP is to blame for its latest wage and hour woes because ADP did not deliver on an alleged contractual obligation to ensure that its payroll services were compliant with all applicable laws and regulations.

Tellingly, China Grill did not attach to the Complaint the "contract" in which it claims ADP effectively agreed to serve as an insurer of China Grill's payroll practices.  The reason for that omission is simple enough:  The terms of the controlling contract between China Grill and ADP bear no resemblance to China Grill's description of those terms in the Complaint.  Indeed, the Complaint is striking in that it is devoid of any references to specific terms and conditions of the contract that support China Grill's allegations.  The fact is that there are no such terms and conditions to be found within the four corners of the contract.  In short, China Grill's attempt to recover against ADP is based on the fictional terms of a contract it now apparently <u>wishes</u> it had entered into with ADP rather than the binding agreement China Grill and ADP <u>actually</u> <u>did</u> execute.  The predictable result, as demonstrated below, is a series of claims that fail as a matter of law and must be dismissed.

## **FACTUAL BACKGROUND**

### A.    **The Parties**

China Grill is a New York corporation maintaining its principal place of business in Manhattan.  During the time period relevant to this dispute, China Grill and its corporate affiliates owned and operated more than thirty restaurants and bars throughout the United States and abroad.  <u>See</u> Complaint, ¶¶4, 8.

ADP is a Delaware limited liability company maintaining its principal place of business in Roseland, New Jersey.  It is one of the world's leading providers of payroll processing services and other human resources management services and products.  Id., ¶¶5, 12.

**B.     The Agreement**

On March 1, 2005, China Grill and ADP entered into a Master Services Agreement (the "Agreement").  Id., ¶14.  (A copy of the Agreement, as amended and supplemented, is attached as Exhibit A to the Declaration of Tara L. Albritton.)  Therein, ADP agreed to provide payroll services to China Grill and certain designated affiliates.  See Agreement, Annex B, § 1, Annex Z, § 1.

In providing these payroll services, ADP necessarily was dependent upon China Grill to provide timely and accurate payroll information.  Indeed, ADP and China Grill agreed:

> All Services will be based upon information provided to ADP by Client and Client is responsible for the accuracy and timely input of all such information.  Upon receipt from ADP, Client will promptly review all payroll registers, disbursement records, reports and documents produced by ADP for accuracy, validity and conformity with Client's records.  Client will promptly notify ADP of any error or omission discovered by Client or any discrepancy between the information provided by ADP and Client's records and will not distribute any paycheck or rely on any record, report or document containing any discovered error, omission or discrepancy until such error, omission or discrepancy, has been corrected.  Client will be responsible for the consequences of any instructions Client may give to ADP.

Id., Annex A, § 2.2 (emphasis supplied).

The Agreement also directly addressed the issue of which party ultimately would be responsible for compliance with the wage and hour laws.  ADP and China Grill agreed:

> The Services are designed to assist Client in complying with **its** applicable legal and regulatory responsibilities.  Nevertheless, Client (and not ADP) will be responsible (i) for compliance by Client with all laws and governmental regulations affecting its business, and (ii) for any use Client may make of the Services to

3

> assist it in complying with such laws and governmental
> regulations.

Id., § 2.3 (emphasis supplied).  Similarly, ADP and China Grill agreed that "Client will be

exclusively responsible for compliance with all laws and governmental regulations with respect

to ADP iPay Statements."  Id., Annex B, § 4.

The Agreement is governed by New Jersey law.  Id., Annex A, § 9.11.

### C.        The Underlying Wage and Hour Class Action

On January 18, 2018, six former employees commenced a putative class and

collective action against China Grill and certain affiliated entities captioned James v. China Grill

Management, Inc., 18-cv-455 (S.D.N.Y.) (LGS).  See Complaint, ¶25 (A copy of the complaint

in the James class action (the "Class Action Complaint") is attached as Exhibit A to the

Declaration of Randall L. Morrison, Jr. ("Morrison Declaration")).[1]  Plaintiffs brought the James

action on behalf of non-exempt employees of a number of the China Grill group's restaurants,

including waiters, servers, hosts, bouncers, bartenders, bussers, cooks and dishwashers.  See

Class Action Complaint, ¶¶20, 24, 34.  Plaintiffs alleged that the China Grill entities "had a

policy and practice of failing to pay the statutory minimum wage[.]"  Id., ¶64.  In addition,

plaintiffs alleged that the China Grill entities improperly claimed tip credits.  Id.  Defendants also

were accused of maintaining "a policy and practice of refusing to pay overtime compensation[.]"

Id., ¶65.  Further, defendants were accused of failing to pay plaintiffs for all hours worked "due

to a policy of time shaving."  Id., ¶75.  Finally, plaintiffs accused the defendants of engaging in

improper "tip misappropriation[.]"  Id., ¶82.

---

[1]        ADP respectfully requests that the Court take judicial notice of the publicly filed pleadings attached to the
Declaration of Randall L. Morrison, Jr.  See Spencer Stuart Human Resources Consultancy (Shanghai) Co. v.
American Indus. Acquisition Corp., 2017 WL 4570791, at *1 (S.D.N.Y. Oct. 12, 2017) (this Court takes judicial
notice of documents filed in bankruptcy proceedings in the United States Bankruptcy Court for the Northern District
of New York).

Although China Grill claims to have been "shocked" by the allegations of the Class Action Complaint, see Complaint, ¶28, the fact is that the China Grill restaurant group and its principals are no strangers to wage and hour litigation. In the decade prior to being served in the James class action, they had been sued at least eight times in New York and Florida alone for short-changing employees through systematic and willful violations of federal and state wage and hour laws. See Morrison Declaration, ¶¶3-11, Exs. B-I.

Against this backdrop, China Grill moved swiftly to resolve the James class action quietly. Indeed, immediately after being served in the James matter, China Grill entered into settlement discussions with class counsel. See Declaration of C.K. Lee in Support of Plaintiffs' Unopposed Motion for Certification of the Settlement Class, Final Approval of the Class Settlement and Approval of the FLSA Settlement ("Lee Declaration in Support of Final Approval") at ¶11 ("parties have been negotiating settlement since inception of the lawsuit"). (A copy of the Lee Declaration in Support of Final Approval is attached as Exhibit J to the Morrison Declaration.) On July 24, 2018, China Grill participated in a mediation with class counsel. Id., ¶14.

On September 24, 2018, China Grill entered into a Settlement Agreement resolving all claims brought in the James action on behalf of a class of approximately 1,350 current and former employees. See Declaration of C.K. Lee in Support of Plaintiffs' Motion for an Order Conditionally Certifying Settlement Class and Collective Action and Granting Preliminary Approval to Proposed Class Action Settlement ("Lee Declaration in Support of Preliminary Approval"), Ex. A (Settlement Agreement). (A copy of the Lee Declaration in Support of Preliminary Approval is attached as Exhibit K to the Morrison Declaration.) The Settlement Agreement requires China Grill to pay $1.22 million into a settlement fund. See

Settlement Agreement, ¶1.29.  Pursuant to the Settlement Agreement, the settlement funds are to be remitted approximately 42 days after the settlement secures final court approval.  Id., ¶¶1.13, 3.1C.

On October 5, 2018, the parties filed for preliminary approval of the settlement. See Morrison Declaration, Ex. K.  On December 11, 2018, the Honorable Lorna G. Schofield granted preliminary approval of the settlement.  Id., Ex. L.  On April 29, 2019, Judge Schofield granted final approval of the settlement.  Id., Exs. M, N.  Pursuant to the terms of the Settlement Agreement as set forth above, China Grill is not scheduled to fund the settlement fund until approximately June 2019.

### D.   The Complaint

In its Complaint, China Grill asserts claims for breach of contract, gross negligence and breach of the covenant of good faith and fair dealing.  China Grill seeks $2 million in damages allegedly arising out of ADP's "willful and reckless failure" to perform its services.  See Complaint, ¶¶2, 48, 53, 60.  These alleged damages relate to the "substantial amount" China Grill claims it "will be required to pay" to resolve the James class action.  Id., ¶¶38-41.

In its breach of contract claim, China Grill alleges that ADP breached the Agreement "by failing to provide the agreed upon services in compliance with applicable legal and regulatory requirements."  Id., ¶45.  Specifically, China Grill maintains that, contrary to controlling law, ADP "calculated employee overtime and other amounts incorrectly"; "failed to provide the proper rate of overtime and regular rate of pay on wage statements"; "issued incorrect wage notices and statements"; and "fail[ed] to provide proper wage statements clearly indicating the tip credit allowance for each pay period."  Id., ¶46.

As for the gross negligence claim, China Grill alleges that "ADP owed a duty to Plaintiff to provide payroll services that would comply with all legal and regulatory requirements." Id., ¶50. ADP breached this "duty," China Grill alleges, by engaging in the very same conduct through which it is alleged to have breached the Agreement. Specifically, China Grill alleges that ADP was grossly negligent because, contrary to controlling law, it "calculated employee overtime and other amount incorrectly"; "failed to provide the proper rate of overtime and regular rate of pay on wage statements"; "issued incorrect wage notices and statements"; and "fail[ed] to provide proper wage statements clearly indicating the tip credit allowance for each pay period." Id., ¶51.

With respect to the claim for breach of the implied covenant of good faith and fair dealing, China Grill alleges that it "had a full expectation that [ADP's] contracted-for-services would be in full compliance with applicable law." Id., ¶58. ADP breached the implied covenant, China Grill alleges, by "recklessly and wantonly providing services to China Grill that were not in compliance with applicable law." Id., ¶59.

## ARGUMENT

### POINT I.

### THE CONTROLLING LEGAL STANDARDS

#### A.   Rule 12(b)(6)

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain sufficient factual allegations "to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. This facial plausibility standard demands "more than a sheer possibility that a

defendant has acted unlawfully." Id.  Applying this plausibility standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

In assessing a Rule 12(b)(6) motion, a court must "'accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.'" LaFaro v. New York Cardiothoracic Group, PLLC, 570 F.3d 471, 475 (2d Cir. 2009) (citation omitted). However, a court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" Iqbal, 556 U.S. at 678.  A court may disregard "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Id.

On a motion to dismiss, a court will deem the complaint "to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011) (citations omitted).  A court may also consider "matters of which judicial notice may be taken[.]" Brass v. American Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993).

## B.     Rule 12(f)

Rule 12(f) provides that a court "may strike from a pleading … any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  The purpose of a Rule 12(f) motion "is to create a clear mechanism for the court to save time and expense by eliminating certain items from pleadings when the items clearly lack merit[.]" McLaughlin v. Chong, 2016 WL 1276470, at *2 (S.D.N.Y. March 29, 2016).  Resolution of a Rule 12(f) motion "'is left to the district court's discretion.'" OTG Brands, LLC v. Walgreen Co., 2015 WL 1499559, at *5 (S.D.N.Y. March 31, 2015).  A Rule 12(f) motion "may be used to strike a prayer for relief when the damages sought are not recoverable as a matter of law." Wells v. Board of

Trustees of Cal. State Univ., 393 F. Supp. 2d 990, 994 (N.D. Cal. 2005) (striking demand for punitive damages).

## POINT II.

### THE BREACH OF CONTRACT CLAIM CANNOT BE SQUARED WITH THE TERMS OF THE CONTROLLING CONTRACT

The breach of contract claim is hollow at its core because China Grill identifies no provision of the Agreement that ADP is alleged to have actually breached.[2]  The sine qua non of any breach of contract claim under controlling New Jersey law is the defendant's failure to perform its obligations as reflected in the express terms of an enforceable agreement.[3]  See Faistl v. Energy Plus Holdings, LLC, 2012 WL 3835815, at *7 (D.N.J. Sept. 4, 2012) (to state a claim for breach of contract, plaintiff must "identify the portions of the contract that were allegedly breached"); Iwanicki v. Bay State Milling Co., 2011 WL 6131956, at *3 (D.N.J. Dec. 7, 2011) (same).  Thus, the "[f]ailure to allege the specific provisions of contracts breached is grounds for dismissal."  Eprotec Preservation, Inc. v. Engineered Materials, Inc., 2011 WL 867542, at *8 (D.N.J. March 9, 2011).

Not surprisingly, courts consistently dismiss breach of contract claims where, as here, the plaintiff fails to specifically identify what contractual provision the defendant is alleged to have breached.  See, e.g., McMullen v. Ocwen Loan Serv., LLC, 2017 WL 714347, at *4 (D.N.J. Feb. 23, 2017) (allegations inadequate to support breach of contract claim where, among other things, plaintiffs failed to identify the contractual provisions defendant allegedly violated);

---

[2]     ADP respectfully submits that on this motion the Court may properly consider the Agreement as a document that, although not attached to the Complaint, is nonetheless integral to China Grill's purported legal claims.  See L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011).

[3]     As noted, the Agreement provides that it "will be governed by and construed in accordance with the internal laws of the State of New Jersey, without regard to conflict of law principles."  See Agreement, Annex A, §9.11.

Grande Village LLC v. CIBC Inc., 2015 WL 1004236, at *5 (D.N.J. March 6, 2015) (breach of contract claim fails where, among other things, plaintiff fails to identify what contractual provisions defendants allegedly breached); Wingate Inns Int'l, Inc. v. Cypress Centre Hotels, LLC, 2012 WL 6625753, at *9 (D.N.J. Dec. 19, 2012) (breach of contract claim dismissed where it did not specify the contractual provisions forming the basis of the cause of action); Faistl, 2012 WL 3835815, at *7 (breach of contract claim dismissed where plaintiff failed to allege "which particular provision of the parties' Agreement was breached"); Iwanicki, 2011 WL 6131956, at *4 (breach of contract claim dismissed where plaintiff did not identify the terms of the contract that allegedly was breached); Skypala v. Mortgage Elec. Registration Sys, Inc., 655 F. Supp. 2d 451, 460 (D.N.J. 2009) (breach of contract claim dismissed where "[p]laintiff does not point to any provision of the contract 'specifically', nor can the Court discern, based on the pleadings," a provision that may have been breached).

In its breach of contract claim, China Grill does not refer to any specific provision of the Agreement that ADP allegedly has breached. Indeed, the Complaint is devoid of specific references to any particular terms of the Agreement. This is no oversight, nor is it the result of sloppy pleading. The fact is that the contract claim simply is not pegged to the Agreement -- or any other enforceable contract for that matter; instead, it is tied to the contract China Grill apparently now wishes it had entered into with ADP. As liberal as the pleading rules may be, they are not so forgiving as to allow a breach of contract claim to proceed based on the fictional terms of a contract that does not exist and which, in any event, are directly contrary to the terms of the controlling contract that actually does govern the parties' respective rights and obligations.

The gravamen of the breach of contract claim is that ADP "fail[ed] to provide the agreed upon services in compliance with applicable legal and regulatory requirements."

Complaint, ¶45.  China Grill alleges that it engaged ADP in an effort "to ensure that each of China Grill and its affiliated employees [sic] received compensation in full compliance with all applicable federal and state laws[.]"  Id., ¶10.  But China Grill does not identify any provision of the Agreement pursuant to which ADP assumed responsibility for ensuring China Grill's compliance with the wage and hour laws.  The Court will search the Agreement in vain for any provision imposing upon ADP the obligation of ensuring that its payroll services complied with controlling laws and regulations.  In fact, there is no provision of the Agreement obligating ADP to ensure that its payroll services complied with controlling laws and regulations.

ADP's obligations under the Agreement were quite limited.  ADP certainly did not commit to providing services in full compliance with governing laws and regulations.  To the contrary, China Grill remained ultimately responsible for compliance with controlling laws and regulations.  The Agreement could not be clearer on this point.  See Agreement, Annex A, §2.3. ("Services are designed to assist Client in complying with its applicable legal and regulatory responsibilities . . . .  Client (and not ADP) will be responsible (i) for compliance by Client with all laws and governmental regulations affecting its business") (emphasis supplied).

ADP did not agree to indemnify China Grill and hold it harmless for any claims arising out of its payroll practices.  While ADP indemnified China Grill with respect to certain intellectual property issues, id., §5.2, it gave no such indemnification with respect to claims arising out of its payroll services, which necessarily were dependent upon complete and accurate payroll information supplied by China Grill itself.  Id., §2.2.  The parties agreed that the accuracy of payroll information to be processed by ADP at all times remained China Grill's responsibility. Id.  China Grill was obligated to review all documents and reports ADP generated and promptly notify ADP of "any error or omission discovered by Client or any discrepancy between the

information provided by ADP and Client's records."  Id.  Significantly, nowhere in the Complaint does China Grill allege that it discovered any irregularities in ADP's payroll services from the inception of the parties' commercial relationship in 2005 through to January 2018 when it was served with the Class Action Complaint.  Nor does China Grill allege that at any point in that 13-year history it brought to ADP's attention any irregularities or deficiencies in the payroll services.

Acknowledging that the terms of the Agreement itself provide no basis for its contract claim, China Grill resorts to loose allegations to the effect that "ADP represented that its payroll services would comply with applicable wage and hour laws."  Complaint, ¶16; see also id., ¶24 ("ADP assured China Grill that the payroll services they [sic] were providing … were compliant" with controlling law); id., ¶28  ("China Grill believed, and had been told, that ADP's payroll services complied with existing law").  These allegations do not remedy the fundamental pleading defect underlying the breach of contract claim.  China Grill asserts no fraud claim or other cause of action tied to any representations ADP allegedly made regarding its services.  The breach of contract claim cannot be grounded on beliefs, impressions, assurances, statements or representations.  Instead, China Grill must tie its breach of contract claim to the terms set forth within the four corners of the Agreement.  It has not done so.

The simple fact of the matter is that China Grill has not identified and cannot identify any term of the Agreement that provides a plausible basis for the contention that ADP breached a contractual obligation to provide payroll processing services "in compliance with applicable legal and regulatory requirements."  Id., ¶45.  As a practical matter, it would have made no commercial sense for ADP to assume such an obligation and the attendant risks because, in providing the payroll services, ADP necessarily was dependent on China Grill to

provide timely and accurate payroll data.  See Agreement, Annex A. §2.2.  Given that ADP's payroll services were dependent upon China Grill for the timeliness and accuracy of the payroll information to be processed, the Agreement reflects the commercially reasonable allocation to China Grill of the risk that its payroll practices may run afoul of the controlling wage and hour laws.  In the end, the First Cause of Action is a breach of contract claim in search of a contractual provision that actually has been breached.  It fails as a matter of both law and logic.

**POINT III.**

**MULTIPLE PLEADING DEFECTS COMPEL
THE DISMISSAL OF THE GROSS NEGLIGENCE CLAIM**

Telegraphing the fatal deficiencies in the breach of contract claim, China Grill scrambles to articulate some alternative theory of liability.  The result is a fundamentally ill-conceived gross negligence claim that fails under New York law.[4]  First, the negligence claim is a mere rehash of the breach of contract claim.  It is nothing more than a contract claim masquerading as a tort claim.  Second, to state a colorable gross negligence claim, China Grill must allege that, in providing its payroll services, ADP was operating under a duty of care that was fully independent of, and extraneous to, the terms of the Agreement.  It plainly has not done so.  The absence of any conceivable extra-contractual duty of care here is fatal to the gross negligence claim.

---

[4]      New York law applies to China Grill's gross negligence claim.  In this diversity action, "New York law determines which state's law should be applied," and "[u]nder New York law, '[a] contractual choice of law provision . . . does not bind the parties with respect to non-contractual causes of action.'"  Frazer Exton Dev., LP v. Kemper Envtl., Ltd., 2004 WL 1752580, at *10 (S.D.N.Y. July 29, 2004), aff'd, 153 Fed. App'x 31 (2d Cir. 2005).  Under New York law, tort claims are governed by the law of the state in which the tort occurred.  A tort occurs in the state where the plaintiff ultimately suffered its alleged damages.  Norte v. Worldbusiness Capital, Inc., 2015 WL 7730980, at *10-11 (S.D.N.Y. Nov. 24, 2015).  Here, any damages China Grill allegedly sustained as a result of ADP's acts and/or omissions would have been sustained in New York, where China Grill maintains its principal place of business.  See Complaint, ¶4.

## A.    The Gross Negligence and Contract Claims Are Duplicative

The general rule under New York law is that "a tort cause of action that is based on the same facts underlying a contract claim will be dismissed as a mere duplication of the contract cause of action, particularly where … both seek identical damages." Duane Reade v. SL Green Operating P'ship, LP, 30 A.D.3d 189, 190, 817 N.Y.S.2d 230, 231 (1st Dep't 2006); see Bank of New York Mellon v. WMC Mortg., LLC, 2015 WL 4163343, at *3 (S.D.N.Y. July 10, 2015) (this Court recognized that "[u]nder New York law, '[t]wo claims are duplicative of one another if they arise from the same facts and do not allege distinct damages'"). This is precisely the scenario presented here. China Grill's gross negligence claim is wholly duplicative of its contract claim. Indeed, a side-by-side comparison of the core allegations of the breach of contract and gross negligence claims demonstrates the extraordinary degree to which the latter is the mirror-image of the former.

| Contract Claim | Negligence Claim |
|---|---|
| ADP breached the Agreement because it: | ADP was grossly negligent because it: |
| (a)  calculated employee overtime and other amounts incorrectly, leading to errors in the calculation of employee paychecks; | (a)  calculated employee overtime and other amounts incorrectly, leading to errors in the calculation of employee paychecks; |
| (b)  failed to provide the proper rate of overtime and regular rate of pay on wage statements; | (b)  failed to provide the proper rate of overtime and regular rate of pay on wage statements; |
| (c)  issued incorrect wage notices and statements that are in violation of the WTPA; | (c)  issued incorrect wage notices and statements that are in violation of the WTPA; |
| (d)  failed to provide proper notice of the tip credit under the WTPA; and | (d)  failed to provide proper notice of the tip credit under the WTPA; and |
| (e)  failed to provide proper wage statements clearly indicating the tip credit allowance for each pay period. | (e)  failed to provide proper wage statements clearly indicating the tip credit allowance for each pay period. |
| Complaint, ¶46. | Id., ¶51. |

14

On its face, then, the gross negligence claim is rooted in the same facts and circumstances as the contract claim.  The factual allegations underlying the two claims are identical.  Moreover, the two claims seek precisely the same $2 million in damages.  Id., ¶48 (demanding $2 million in damages with respect to the breach of contract claim); ¶53 (seeking $2 million in damages on the gross negligence claim).  The only form of damage alleged in the Complaint is the "substantial amount" China Grill claims it will be required to pay to settle the James class action.  Id., ¶38.  The redundancy in the damages sought by the gross negligence and contract claims is fatal to the tort claim.  See Wildenstein v. 5H&Co, 97 A.D.3d 488, 492, 950 N.Y.S.2d 3, 7 (1st Dep't 2012) (negligence claim should have been dismissed where "[e]ven the alleged damages are identical" to those sought in breach of contract claim, with both "seeking 'compensatory damages in an amount to be proven at trial, but not less than $1,333,962'").

The gross negligence claim "is merely a restatement, albeit in slightly different language," of the contractual obligations asserted in the breach of contract claim. Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 390, 521 N.Y.S.2d 653, 657, 516 N.E.2d 190, 194 (1987).  It is well settled that "[m]erely charging a breach of a 'duty of due care,' employing language familiar to tort law, does not, without more, transform a simple breach of contract into a tort claim."  Dormitory Auth. of the State of N.Y. v. Samson Constr. Co., 30 N.Y.3d 704, 711, 70 N.Y.S.3d 893, 898, 94 N.E.3d 456, 460 (2018).

### B.    The Negligence Claim Fails Absent Any Duty of Care Independent of the Underlying Contract

The negligence claim also runs afoul of the "well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated."  Clark-Fitzpatrick, 70 N.Y.2d at 389, 521 N.Y.S.2d at 656, 516 N.E.2d at 193; see Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC, 692

15

F.3d 42, 58 (2d Cir. 2012) ("[u]nder New York law, a breach of contract will not give rise to a tort claim unless a legal duty independent of the contract itself has been violated").  This legal duty "'must spring from circumstances extraneous to, and not constituting elements of, the contract[.]'"  Id. (quoting Clark-Fitzpatrick, 70 N.Y.2d at 389, 521 N.Y.S.2d at 656-57, 516 N.E.2d at 194).  Where the basis of a party's tort claim "is a breach of solely contractual obligations, such that the plaintiff is merely seeking to obtain the benefit of the contractual bargain through an action in tort, the claim is precluded[.]" Bayerische Landesbank, 692 F.3d at 58.  When "the only interest at stake is that of holding the defendant to a promise, the courts have said that the plaintiff may not transmogrify the contract claim into one for tort." Hargrave v. Oki Nursery, Inc., 636 F.2d 897, 899 (2d Cir. 1980).

        Here, any duty ADP may have owed to China Grill with respect to its payroll services arose solely out of the negotiated terms of the Agreement.  There is no conceivable extra-contractual source of any duty of care ADP could have owed to China Grill in performing its payroll services.  China Grill certainly does not identify one.  No statute or regulation imposed any such duty of care upon ADP.  The arm's-length commercial relationship between China Grill and ADP plainly is not one from which an independent duty of care might flow. Indeed, China Grill does not even allege this to have been the case.

        Thus, when China Grill rests its negligence claim on the allegation that "ADP owed a duty to Plaintiff to provide payroll services that would comply with all legal and regulatory requirements," see Complaint, ¶50, that duty could only have flowed from the Agreement itself.  Such a duty is not independent of, or extraneous to, the Agreement.  Given this fundamental pleading defect, the gross negligence claim fails as a matter of law.  See Walnut Hous. Assocs. 2003 L.P. v. MCAP Walnut Hous. LLC, 136 A.D.3d 403, 405, 25 N.Y.S.3d 129,

131 (1st Dep't 2016) ("gross negligence claim should be dismissed … as the claim does not allege a violation of a duty independent of [defendant's] contractual obligations"); Board of Managers of Soho N. 267 W. 124th St. Condominium v. NW 124 LLC, 116 A.D.3d 506, 507, 984 N.Y.S.2d 17, 18 (1st Dep't 2014) (trial court properly dismissed negligence claim where "plaintiff failed to allege any legal duty that would give rise to an independent tort cause of action").

This Court's analysis in Iconix Brand Group, Inc. v. Bongo Apparel, Inc., 2008 WL 2695090 (S.D.N.Y. July 8, 2008), is directly on point.  There, plaintiffs and defendants entered into a series of contracts relating to the design, manufacture, sale, marketing and distribution of plaintiffs' "Bongo" brand of jeans wear.  Id., at *1-2.  The relationship soured. Defendants gave notice that the underlying license agreement was terminated.  Litigation ensued. Id. at *2.  Plaintiffs asserted a number of claims, including breach of contract and negligence.  Id. at *1.

In the negligence claim, plaintiffs alleged that the defendant "'had a legal duty (distinct from its contractual obligations) to act in a reasonable manner while selling products bearing the Licensed Mark so as not to cause damage' to that mark[.]"  Id. at *3.  Plaintiffs further alleged that "this duty was breached when [defendant] 'acted negligently in dealing with retailers … by, inter alia, failing to timely ship orders made by retailers.'"  Id.  Defendants moved to dismiss the negligence claim, maintaining that "plaintiffs do not allege a violation independent of [the] contractual obligations[.]"  Id.

This Court granted the motion and dismissed the negligence claim in the absence of any extra-contractual duty of care.  Id. at *4.  The Court rejected plaintiffs' argument that they "'have properly pleaded the violation of a legal duty independent of the contract itself[.]'"  Id.

The problem with that conclusory allegation, the Court noted, is that neither the plaintiffs' pleading nor the opposition brief "identifies a potential source of such a duty." Id.

The same is true here. In conclusory fashion, China Grill alleges that "ADP owed a duty to Plaintiff to provide payroll services that would comply with all legal and regulatory requirements." Complaint, ¶50. Yet nowhere in the Complaint does China Grill plausibly allege what the source of this "duty" might have been other than the Agreement itself. There is no such extra-contractual duty and, for the reasons highlighted in Iconix Brand, China Grill's negligence claim fails as a matter of law.

### POINT IV.

### THE CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH FAILS AS A MATTER OF LAW

China Grill's claim for breach of the implied covenant of good faith and fair dealing fares no better than its breach of contract and gross negligence claims. It fails on at least two fronts. First, as with the negligence claim, it plainly is duplicative of the claim for breach of the parties' express contract. Second, the claim purports to impose upon ADP implied obligations that are directly contrary to (and substantially more onerous than) the obligations ADP expressly assumed in the Agreement.

### A. The Implied Covenant and Contract Claims Are Duplicative

To be viable under controlling New Jersey law, a claim for breach of the implied covenant of good faith and fair dealing "must not arise out of the same conduct underlying an alleged breach of contract action."[5] TBI Unlimited, LLC v. Clear Cut Lawn Decisions, LLC,

---

[5] In this diversity action, New York law determines whether a cause of action is contractual or tortious in nature for purposes of assessing whether it falls within the scope of a contractual choice-of-law clause. 2002 Lawrence R. Buchalter Alaska Trust v. Philadelphia Fin. Life Assur. Co., 96 F. Supp. 3d 182, 212-13 (S.D.N.Y. 2015). Under New York law, a cause of action for breach of the implied covenant of good faith is a contractual

2013 WL 6048720, at *3 (D.N.J. Nov. 14, 2013); see Hahn v. OnBoard LLC, 2009 WL

4508580, at *6 (D.N.J. Nov. 16, 2009) ("[i]n both New York and New Jersey, a plaintiff cannot

maintain a claim for breach of the implied covenant of good faith and fair dealing when the . . .

cause of action arises out of the same conduct underlying the alleged breach of contract").  New

Jersey and New York law are consistent on this point.  See Cruz v. FXDirectDealer, LLC, 720

F.3d 115, 125 (2d Cir. 2013) ("when a complaint alleges both a breach of contract and a breach

of the implied covenant of good faith and fair dealing based on the same facts, the latter claim

should be dismissed as redundant"); see, e.g., JGB (Cayman) Newton, Ltd. v. Sellas Life Sci.

Group Inc., 2018 WL 5266877, at *13 (S.D.N.Y. Oct. 23, 2018) (this Court dismissed an implied

covenant claim, finding that it "arise[s] from the same facts at issue in its breach of contract

claims and, as such, must be dismissed as redundant"); Underdog Trucking, LLC v. Verizon

Servs. Corp., 2010 WL 2900048, at *6 (S.D.N.Y. July 20, 2010) (this Court dismissed an

implied covenant claim on redundancy grounds because each basis for that claim "is

encompassed by the breach of contract claim"); Fellows v. CitiMortgage, Inc., 710 F. Supp. 2d

385, 407 (S.D.N.Y. 2010) (this Court dismissed an implied covenant claim, finding its

underlying allegations "are duplicative of those underlying [the] breach of contract claim";

noting that "New York law does not … recognize a separate cause of action for breach of the

implied covenant of good faith and a breach of contract on the same facts").

        A claim for breach of the implied covenant is properly dismissed where it is

duplicative of a breach of contract claim.  See CRA, Inc. v. Ozitus Int'l, Inc., 2017 WL 2779749,

at *7 (D.N.J. June 27, 2017) (dismissing breach of implied covenant claim pegged to factual

---

claim.  Id. at 212.  Because it is contractual, the implied contract claim is subject to the Agreement's choice-of-law clause.  Id. at 213-14.

allegations that were "identical to the factual predicate" of the breach of contract claim); <u>TBI</u>, 2013 WL 6048720, at *3 (dismissing implied covenant claim "rooted in the same allegations that give rise to [the] breach of contact claims"; parties "may not sustain a separate cause of action for breach of the covenant of good faith and fair dealing based on the same conduct that has given rise to their breach of contract claims"); <u>Oravsky v. Encompass Ins. Co.</u>, 804 F. Supp. 2d 228, 239 (D.N.J. 2011) (dismissing implied covenant claim, court holds that because the supporting allegations "are identical to the breach of contract claim" the implied covenant claim "fails as it is duplicative of the breach of contract claim").

The implied covenant claim in the Third Cause of Action plainly echoes the breach of contract claim in the First Cause of Action.  China Grill alleges that ADP breached the implied covenant of good faith and fair dealing "[b]y recklessly and wantonly providing services to China Grill that were not in compliance with applicable law[.]"  <u>See</u> Complaint, ¶59.  This is merely a thinly veiled restatement of the breach of contract claim, in which China Grill alleges that ADP breached the express terms of the Agreement by "willfully" "failing to provide the agreed upon services in compliance with applicable legal and regulatory requirements."  <u>Id.</u>, ¶¶45-46.  There is no daylight between those two allegations regarding ADP's breaching conduct.  They are for all practical purposes one and the same.  Moreover, the breach of contract and breach of implied covenant claims both seek the same $2 million in damages.  <u>Id.</u>, ¶¶48, 60.  As the Third Cause of Action is the mirror image of the First Cause of Action, the implied covenant claim should be dismissed.

**B.**  **The Claim Improperly Seeks to Impose Implied Obligations**
**That Conflict With the Express Terms of the Agreement**

The claim for breach of the implied covenant also fails because it purports to impose upon ADP implied obligations that not only are contrary to but also substantially more

onerous than the obligations ADP assumed under the express terms of the Agreement.

Specifically, ADP is alleged to have breached an implied duty to ensure that its payroll services

were in full compliance with controlling laws and regulations.  Id., ¶59.  As demonstrated above

in Point II, however, ADP assumed no such obligation under the Agreement.  To the contrary,

the express terms of the Agreement imposed upon China Grill the obligation to ensure the

accuracy and completeness of the payroll information provided to ADP for processing.  See

Agreement, Annex A, §2.2.  China Grill was contractually obligated to review ADP's documents

and reports for accuracy and to report any errors.  Id.  China Grill remained responsible for

"complying with its legal and regulatory responsibilities."   Id., §2.3 (emphasis supplied).  The

implied obligation China Grill now attempts to impose upon ADP would improperly shift

ultimate responsibility for legal compliance to ADP and essentially upend the parties' bargain as

reflected in the express terms of the Agreement.  Such a result would be fundamentally

inequitable and contrary to well-settled law.

       The implied covenant "is to be interpreted narrowly, lest it 'become an all-

embracing statement of the parties' obligations under contract law, imposing unintended

obligations upon parties and destroying the mutual benefits created by legally binding

agreements.'"  Cargill Global Trading v. Applied Dev. Co., 706 F. Supp. 2d 563, 580 (D.N.J.

2010).  An implied covenant "cannot override an express contractual term."  Wade v. Kessler

Inst., 172 N.J. 327, 341, 798 A.2d 1251, 1259 (2002); Kurnik v. Cooper Health Sys., 2008 WL

2829963, at *21 (N.J. App. Div. July 24, 2008).  The implied covenant "'does not operate to alter

the clear terms of an agreement[.]'"  Fields v. Thompson Printing Co., 363 F.3d 259, 271 (3d

Cir. 2004).  Where "the terms of the parties' contract are clear, the implied covenant of good

faith and fair dealing will not override the contract's express language."  Id. at 272.  Again, New

Jersey law on this point is entirely consistent with New York law.  See Broder v. Cablevision Sys. Corp., 418 F.3d 187, 198-99 (2d Cir. 2005) (implied covenant "can only impose an obligation consistent with other mutually agreed upon terms in the contract.  It does not add to the contract a substantive provision not included by the parties") (citation omitted); see, e.g., Fellows, 710 F. Supp. 2d at 407 (this Court dismissed an implied covenant claim that sought "to impose duties upon [defendant] beyond those imposed by" the controlling mortgage).  Because the Third Cause of Action offends these basic, common-sense principles applied to restrain the scope of claims for breach of the implied covenant of good faith, it should be dismissed.

**POINT V.**

**THE DEMAND FOR PUNITIVE DAMAGES
IS BASELESS AND SHOULD BE STRICKEN**

China Grill's demand for punitive damages in connection with its gross negligence claim is entirely without merit and should be stricken.  See Complaint, ¶54.  The standard governing an award of punitive damages is a "'strict'" and "demanding" one.  Rapay v. Chernov, 2017 WL 892372, at *8 (S.D.N.Y. March 6, 2017); Protoons Inc. v. Reach Music Pub., Inc., 2016 WL 680543, at *11 (S.D.N.Y. Feb. 19, 2016), aff'd, 718 Fed. App'x 8 (2d Cir. 2017).  Punitive damages are "'awarded only in exceptional cases[.]'"  Rapay, 2017 WL 892372, at *8.  Under New York law, punitive damages are awarded on tort claims only "'where the defendant's wrongdoing has been intentional and deliberate, and has the character of outrage frequently associated with crime.'"  Protoons, 2016 WL 680543, at *5 (quoting Prozeralik v. Capital Cities Communications, Inc., 82 N.Y.2d 466, 479, 605 N.Y.S.2d 218, 225-26, 626 N.E.2d 34, 41-42 (1993)).  As the New York Court of Appeals has observed:

> Something more than the mere commission of a tort is always required for punitive damages.  There must be circumstances of aggravation or outrage, such as spite or malice, or a fraudulent or evil motive on the part of the defendant, or such a conscious and

22

deliberate disregard of the interests of others that the conduct may
be called wilful or wanton.

Prozeralik, 82 N.Y.2d at 479, 605 N.Y.S.2d at 226, 626 N.E.2d at 42 (quoting Prosser & Keeton,

Torts §2 at 9-10 (5th ed. 1984); internal quotation marks omitted).  Punitive damages are

permitted only "when the defendant's wrongdoing is not simply intentional but evince[s] a high

degree of moral turpitude and demonstrate[s] such a wanton dishonesty as to imply a criminal

indifference to civil obligations."  Rapay, 2017 WL 892372, at *8.

China Grill has alleged no facts that, even if assumed to be true, are sufficient to

support its demand for punitive damages.  This is, at bottom, a plain-vanilla commercial dispute.

The wrongful conduct attributed to ADP in the Complaint cannot reasonably be characterized as

reflecting the high degree of culpability necessary to warrant an award of punitive damages.  The

gist of China Grill's quarrel with ADP is that ADP agreed to provide certain services and then

failed to adequately provide those services.  This amounts to no more than a garden-variety

commercial beef between sophisticated corporate entities.  No right to punitive damages can

possibly arise in such a scenario.  China Grill's conclusory allegation that "ADP's conduct has

been willful and wanton," see Complaint, ¶54, is grossly inadequate to support any conclusion to

the contrary.

Rule 12(f) provides the proper procedural mechanism to strike a demand for relief

that cannot be awarded as a matter of law.  As the leading commentator on federal practice has

observed, motions to strike a demand for punitive damages "are generally granted if such relief is

not recoverable under applicable law."  2 Moore's Federal Practice-Civil §12.37[3] at 12-130 (3d

ed. 2018).  ADP respectfully submits that, if the gross negligence claim survives this motion, the

Court should strike China Grill's demand for punitive damages pursuant to Rule 12(f).  See

Twelve Sixty LLC v. Extreme Music Library Ltd., 2018 WL 369185, at *6 (S.D.N.Y. Jan. 9,

2018) (striking demand for punitive damages); <u>Rapay</u>, 2017 WL 892372, at *8 (this Court strikes a demand for punitive damages); <u>Rosa v. TCC Communications, Inc.</u>, 2016 WL 67729, at *7 (S.D.N.Y. Jan. 5, 2016) (striking demand for punitive damages); <u>Spencer v. DHI Mortg. Co.</u>, 642 F. Supp. 2d 1153, 1168-69 (E.D. Cal. 2009) (same); <u>Cerveceria Modelo, S.A. De C.V. v. USPA Accessories LLC</u>, 2008 WL 1710910, at *5-7 (S.D.N.Y. Apr. 10, 2008) (same); <u>Ventus Networks, LLC v. Answerthink, Inc.</u>, 2007 WL 582736, at *4 (S.D.N.Y. Feb. 22, 2007) (same); <u>Wells</u>, 393 F. Supp. 2d at 999 (same); <u>Johnson v. Metropolitan Sewer Dist.</u>, 926 F. Supp. 874, 875 (E.D. Mo. 1996) (same); <u>Nash v. Coram Healthcare Corp.</u>, 1996 WL 363166, at *4 (S.D.N.Y. June 28, 1996) (same); <u>Brokke v. Stauffer Chem. Co.</u>, 703 F. Supp. 215, 222-23 (D. Conn. 1988) (same); <u>Embedded Moments, Inc. v. International Silver Co.</u>, 648 F. Supp. 187, 195 (E.D.N.Y. 1986) (same).

## <u>CONCLUSION</u>

For the reasons set forth above, ADP respectfully requests that the Court dismiss the Complaint in its entirety.

Dated:  New York, New York
      May 2, 2019

      Respectfully submitted,

      KELLEY DRYE & WARREN LLP


      By:  /s/ William S. Gyves
         William S. Gyves
         Randall L. Morrison, Jr.

      101 Park Avenue
      New York, New York 10178
      Telephone:  (212) 808-7800
      Facsimile:  (212) 808-7897
      wgyves@kelleydrye.com
      rmorrison@kelleydrye.com

      Attorneys for Defendant