IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X
:
**CHINA GRILL INC.,**
:
                **Plaintiff,**                           **Case No.: 19-CV-03705**
:
    -v-
:               **FIRST AMENDED**
**ADP, LLC,**                                      **COMPLAINT**
:
                **Defendant.**                     **JURY TRIAL**
:              **DEMANDED**
-------------------------------------------------------------------------X

       Plaintiff China Grill Inc. ("China Grill"), by and through its undersigned counsel, Kraus & Zuchlewski LLP, upon personal knowledge as to its own acts and status and upon information and belief as to all others, as and for its First Amended Complaint against Defendant ADP, LLC ("ADP"), respectfully alleges as follows:

## INTRODUCTION

       1.    This is an action arising out of ADP's reckless and grossly negligent provision of critical payroll services China Grill and its affiliates. As addressed further below, under the National Account Services Masters Services Agreement between ADP and China Grill, dated effective March 1, 2005 ("MSA") ADP contractually obligated itself to provide various payroll services in a manner designed to assist China Grill in complying with its applicable legal and regulatory responsibilities, ADP subsequently failed to render payroll services in the agreed-upon manner. In fact, ADP's services were designed in such a reckless and haphazard manner that China Grill's compliance with existing wage and hour laws was rendered impossible. Furthermore, when the Wage Theft Prevention Act ("WTPA") was passed, ADP sent out a bulletin under which it assumed the obligation of complying with the WTPA provided only that

China Grill verify the accuracy of certain data inputs, which China Grill did. Thereafter, ADP failed to properly prepare payroll reports that complied with the WTPA.

2. As a result of ADP's reckless failure under the MSA to render payroll services in a manner designed to assist China Grill in complying with applicable wage and hour laws, and or its reckless failure to act in accordance with the undertakings in the Bulletin, Plaintiff has suffered substantial liability.

3. China Grill has requested on numerous occasions that ADP admit responsibility for its grossly negligent provision of payroll services and that it provide appropriate recompense, but ADP fails and refuses to acknowledge the harm caused by its willful and reckless conduct. As such, China Grill is now compelled to bring this lawsuit.

## THE PARTIES

4. China Grill is a New York corporation with a principal place of business located in the State of New York, County of New York.

5. ADP is a Delaware limited liability company with its principal place of business located at One ADP Boulevard, Roseland, New Jersey 07068.

## JURISDICTION AND VENUE

6. Jurisdiction is proper in this Court under New York Civil Practice Law and Rules ("CPLR"), Sections 301 and 302 because Plaintiff is located in the State of New York, County of New York, and Defendant transacts business and supplies services in New York and has committed wrongful acts within New York.

7. Venue is proper in New York County pursuant to CPLR § 503; this action arose, in substantial part, within New York County.

## **FACTS**

Background

8. During the relevant period, China Grill and its affiliated entities have owned and operated over 30 restaurants and bars worldwide with locations in New York City, Miami, Ft. Lauderdale, Atlantic City, Chicago, Las Vegas, Los Angeles, London and Mexico City.

9. As is typical for restaurants and bars, China Grill and its affiliates employ numerous tipped employees, including servers, server assistants, food runners, bartenders, barbacks, busboys and other tipped employees.

10. Seeking to ensure that each of China Grill and its affiliated employees received compensation in full compliance with all applicable federal and state laws, Plaintiff sought to engage a company that specialized in providing payroll processing services.

11. In or about early 2005, China Grill entered into discussions with ADP, which advertised itself as a provider of payroll services with unique expertise in the provision of such services.

12. ADP is a large payroll processing company that promotes its expertise in providing payroll services that assure its clients remain compliant with wage and hour laws.

13. According to ADP's website, "ADP stays on top of changing rules and regulations — to help keep you compliant and protect you from potential fines and penalties."

China Grill and ADP Enter into an MSA
Regarding the Provision of Compliant Payroll Services

14. On or about March 1, 2005, China Grill entered into a National Account Services – Master Services Agreement with ADP (as amended, the "MSA").

15. In connection with use of ADP's payroll services, the MSA requires China Grill to follow ADP's "instructions and reasonable policies."  In relevant part, section 2.1 states as follows:

> 2.1  Use of Services.  Client will follow the instructions and reasonable policies established by ADP from time to time and communicated to Client.  Client will use the Services only for the internal business purposes of the Client and the Client Group.

16. The MSA also states that China Grill is responsible for providing ADP with information that was accurate and timely. Section 2.2 states:

> 2.2 Accuracy of Client Information, Review of Output. All services will be based on information provided to ADP by Client…

All information provided to ADP by China Grill was accurate in regard to the wage statements.

17. The MSA also assigns responsibility to China Grill to review certain documents for accuracy, validity and conformity with client records. Noticeably missing from the section are wage statements. The relevant part states:

> Upon receipt from ADP, Client will promptly review all payroll registers, disbursement records, reports and documents produced by ADP for accuracy, validity and conformity with Client's records.

18. Regarding legal compliance, ADP specifically represented that its payroll services were designed to assist China Grill to comply with applicable law.  Section 2.3 states in relevant part as follows:

> 2.3  Compliance with Laws.  The Services are designed to assist Client in complying with its applicable legal and regulatory responsibilities.  Nevertheless, Client (and not ADP) will be responsible (i) for compliance by Client with all laws and governmental regulations affecting its business and (ii) for any use Client may make of the Services to assist it in complying with such laws and governmental regulations.

19. The services that ADP agreed to design in a manner that would assist China Grill in complying with wage and hour loss included designing, preparing and delivering pay statements, performing wage calculations including overtime and tip credit calculations, and providing direct deposit services among other things.

20. As China Grill was to discover, ADP failed to provide payroll services in a manner that assisted China Grill in complying with applicable wage and hour laws, in particular by furnishing pay statements that were not compliant, as ADP knew or should have known. In fact, ADP's services were provided in a manner that ensured that China Grill would not be compliant with applicable wage and hour laws.

The Passage of the Wage Theft Prevention Act

21. On December 10, 2010, New York State enacted the Wage Theft Prevention Act, N.Y. Labor Law, Sect. 195 , ("WTPA"), and it became effective on April 9, 2011. The WTPA generally required that employers provide certain information in statements to be given to employees at the time of hire and with their regular pay. The relevant portion of the statute reads:

> Every employer shall:
>
> 3. furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages. For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked. For all employees paid a piece rate, the statement shall include the applicable piece rate or rates of pay and number of pieces completed at each piece rate. Upon the request of

5

an employee, an employer shall furnish an explanation in writing of how such wages were computed…

NYLL § 195(3).

22. In March 2011, ADP sent a letter entitled "ADP Tax Bulletin" (the "Bulletin") to China Grill informing it of this change in the law and providing information and instructions regarding compliance with the statute.

23. The Bulletin reads in relevant parts:

> The WTPA contains additional requirements for employers regarding statements to the employees at the time of hire…information required on pay statements, and record keeping requirements. As part of this Act, employers must furnish each employee with a pay statement with every payment of wages that contains the following information:
>
> - Dates of work covered by that payment of wages – the pay period beginning date now displays on employees pay statements
> - Rate of pay and basis (e.g. per hour, day, salary, etc.)
> - Gross wages
> - Deductions
> - Allowances, if any, claimed as part of the minimum wage – *ADP will implement printing Tip Credits on your pay statement* if your company has blocked the display
> - Net wages
> - Name of the employee
> - Name of the employer
> - Address and phone number of employer

(emphasis added)

24. The notice asked China Grill to review the ADP Pay Statements and confirm certain limited information "in order to ensure compliance" with the new statute:

> *In order to ensure compliance*, we need your confirmation regarding the following information:
>
> Step 1: Review your pay statements
>
> a. Does your company name appear on the pay statement correctly?
> b. Does your company's full address appear on the pay statement correctly?

        c.  Does your company telephone number appear on the pay statement correctly?

(emphasis added)

25. ADP's Bulletin informed China Grill that once it reviewed the pay statement and determined accuracy of the data, nothing further was required:

> If after your review of the information, ADP has the correct company name, address and telephone number, ***no further action is required.***

(emphasis added)

26. China Grill followed the instructions in ADP's Bulletin, confirmed that its names, addresses and phone numbers were correct, and relied on ADP's representation that no further action was necessary to ensure compliance.

27. The Bulletin operated as an amendment to the MSA, under which ADP guaranteed that it would ensure compliance with the WTPA or, alternatively, the Bulletin created a distinct duty under which ADP guaranteed compliance with the WTPA.

28. On numerous occasions after March 2011, ADP assured China Grill that their payroll Services, including calculating wages, overtime pay and tip credits, and preparing wage and other statements, were designed to be and were compliant with the WTPA and other applicable wage and hour laws.

29. In one example, an ADP employee confirmed via email that the wage statements were in compliance with the WTPA. The relevant portion of the mail reads:

> I looked at co code CGR and based on what I see they are in compliance.
>
> Dates of work covered by payment of wages; both Period Beginning and Period Ending Dates must appear Allowances, if any, claimed as part of minimum wage
>
> Example: Tip Credits Gross Wages, all Deductions and Net Pay amount Employee Name Employer Name, Address and Phone Number Pay Rate(s) and Rate Type

7

> I see the co name, address and phone #. I also that the hours show the rate of pay and there is a section indicated for tips.
>
> I have attached a copy of a pay stub that batched most recently. I will check all the other codes to be sure as well especially the codes that are set up w/ NY.

30. China Grill reasonably relied on ADP's statements and conduct that their wage statements were compliant with the law.

Plaintiff Learns that ADP Breached the MSA Through its Reckless and
Grossly Negligent Providing of Payroll Services to China Grill

31. On January 18, 2018, a class and collective action lawsuit was filed against China Grill and its various affiliated entities (the "Class Action Complaint").

32. The Class Action Complaint alleged that China Grill had violated the WTPA and other wage and hour laws and that certain China Grill and its affiliates' employees had not received correct pay statements, nor been paid the correct wages.

33. More specifically, the Class Action Complaint alleged, among other things, that China Grill had:

(a) failed to provide accurate and compliant wage statements with each payment of wages in violation of the WTPA;

(b) failed to provide proper notice of gross wages;

(c) failed to provide proper notice of the tip credit under the WTPA;

(d) failure to provide proper wage statements clearly indicating the tip credit allowance as an approved deduction for each pay period; and

(e) failed to provide the proper rate of overtime and regular rate of pay on wage statements.

34. China Grill was surprised to receive this Class Action Complaint. Up until this time, ADP represented under the MSA that its services were designed to assist in compliance and under the Bulletin that compliance was assured so long as the information provided by China Grill was accurate. However, most of the items for which the Class Action Complaint sought to hold China Grill liable resulted from services for which ADP was responsible for, including but not limited to: (1) the calculation of employee overtime and (2) issuing of correct wage notices and pay statements. As such, upon receipt of the Class Action Complaint, China Grill began investigating ADP's provisions of the payroll services.

35. China Grill's investigation demonstrated that not only were the payroll services provided by ADP undertaken in a manner that assured non-compliance with existing law, but ADP's actions were willful and reckless. Further ADP fail to ensure compliance with WTPA as they represented they would in the Bulletin.

36. For example, after analyzing the pay statements for the named plaintiffs in the Class Action Compliant, China Grill learned that an overwhelming number of pay statements contained incorrect calculations and were missing basic information that was required by the WTPA. The issues on the statements included: (1) gross wages rates were not properly disclosed; (2) overtime rates were not properly disclosed; (3) "Spread of Hour" and "Call in Pay" wages were displayed incorrectly; (4) tip credit calculations were incorrect; (5) tip credits were not properly shown as a deduction; and (5) tipped wages were displayed incorrectly and/or calculated improperly.

37. A detailed analysis of the pay statements for the named plaintiffs showed:

    a. Of the 755 individual pay statements (i.e. all of the pay statements issued for the 4 named NY Class Action members), 737 incorrectly set out the applicable wage rate;

    b. Of the 736 pay statements issued for tipped wages to NY Class Action Members, 100% failed to properly set out the tip credit allowance;

    c. Of the 734 pay statements with tip credit calculations issued to NY Class Action Members, 65 were incorrect;

    d. Of the 179 pay statements with overtime issued to NY Class Action Members, 100% of the overtime rates were not properly disclosed;

    e. Of the 389 pay statements with "Spread of Hours" wages issued to NY Class Action Members, 100% were not properly set out; and

    f. Of the 16 pay statements with "Call in Pay" wages issued to NY Class Action Members, 100% were not property set out.

38. Not only were the pay statements issued by ADP not compliant with the WTPA, but after analyzing the pay statements for the named plaintiffs in the Class Action Complaint, China Grill determined that ADP often failed to properly calculate overtime wages in accordance with applicable law. For example, of the 179 pay statements showing overtime wages, 38 were incorrect.

39. Further, ADP did not appear to make any effort to conform the wage statements provided to China Grill's employees to governing law. Indeed, the wage statements failed to comply with the WTPA in several material respects.

40. Under the WTPA, an employer who fails to provide a compliant wage statement to an employee along with his or her wages is subject to liability of $250 per week up to $5,000 per employee.

41. An employer who fails to comply with the WTPA is prohibited from taking a deduction for the tip credit allowance. Since the wage statements issued by ADP failed to properly set out the tip credit deduction in 736 of the 755 pay statements issued to the named plaintiffs in the Class Action Complaint, China Grill would be liable for significant back wages and damages under the WTPA.

42. Plaintiff informed ADP of the claims in the Class Action Complaint and requested that ADP compensate it for any liability on the grounds that under the MSA, the Bulletin and at law, ADP was ultimately responsible for: (a) the material noncompliance of its services with legal and regulatory requirements, and/or (b) the grossly negligent provision of its payroll services. ADP refused to compensate China Grill.

43. China Grill also asked ADP to participate in the mediation and settlement of the then pending class action, but ADP refused.

44. Ultimately, China Grill settled the claims in the Class Action Complaint, requiring it to pay a substantial amount on account of ADP's reckless breaches of the MSA and the duties it undertook under the Bulletin.

45. Under the settlement of the Class Action Complaint approved by the Court (the "Settlement"), 80% of the liability was allocated to WTPA violations.

46. The Settlement recites:

> …any such potential liability arises principally out of administrative failures to comply with Wage Theft Protection Act - - i.e. technical deficiencies in wage statements - - and was largely created by the actions of Defendants' third party payroll providers in preparing wage statements…

47. China Grill has demanded that ADP reimburse it for the portion of the settlement payments attributed to ADP's wrongdoing, together with China Grill's costs associated with defending the Class Action Complaint.

48. As of the date of this Complaint, ADP has refused to indemnify China Grill for any of this amount.

**AS AND FOR THE FIRST CLAIM**
**(Willful Breach of Contract)**

49. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 48 as if fully set forth herein.

50. The MSA as amended constitutes a valid and enforceable contract between China Grill and ADP.

51. China Grill has fulfilled all of its obligations under the terms of the MSA as amended.

52. ADP breached the MSA as amended by failing to design the agreed upon services to assist China Grill in complying with applicable legal and regulatory requirements.

53. Specifically, ADP has willfully:

   (a) calculated employee overtime and other amounts incorrectly, leading to errors in the calculation of employee paychecks;

   (b) failed to provide the proper rate of overtime and regular rate of pay on wage statements;

   (c) issued incorrect wage notices and statements that are in violation of the WTPA;

   (d) failed to provide proper notice of the tip credit under the WTPA; and

   (e) failure to provide proper wage statements clearly indicating the tip credit allowance for each pay period.

54. ADP has also willfully or recklessly breached its obligations under the MSA, as amended by the Bulletin and ADP's subsequent course of conduct, by failing to ensure compliance with the WTPA as it expressly undertook to do.

55. ADP's breaches resulted from their reckless misconduct or gross negligence.

56. As a result of ADP's breaches of the MSA as amended, China Grill has been damaged in an amount to be determined at trial, but estimated to be at least Two Million Dollars.

## AS AND FOR THE SECOND CLAIM
**(Negligence)**

57. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 56 as if fully set forth herein.

58. Apart from the breach of the MSA, ADP violated a duty independent of the MSA.

59. Under the Bulletin, ADP assumed a duty to Plaintiff to provide payroll services that would comply with all legal and regulatory requirements, including the WTPA.

60. ADP breached its duty to Plaintiff by, among other things:

   (a) calculating employee overtime and other amounts incorrectly, leading to errors in the calculation of employee paychecks;

   (b) failing to provide the proper rate of overtime and regular rate of pay on wage statements;

   (c) issuing incorrect wage notices and statements that are in violation of the WTPA;

   (d) failing to provide proper notice of the tip credit under the WTPA; and

   (e) failing to provide proper wage statements clearly indicating the tip credit allowance for each pay period.

61. As a result of ADP's negligence, Plaintiff has been damaged in an amount to be determined at trial, but estimated to be at least Two Million Dollars.

62. Because ADP's conduct has been reckless, Plaintiff is also entitled to punitive damages in an amount to be determined at trial.

## AS AND FOR THE THIRD CLAIM
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

63. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 62 as if fully set forth herein.

64. China Grill and ADP are parties to the MSA.

65. The express purpose of the MSA is for ADP to assist China Grill and its affiliated entities in complying with the law and the express purpose of the Bulletin was to ensure compliance.

66. China Grill understood and reasonably expected that ADP's services would be designed to comply with applicable law and in the case of the WTPA to actually comply with the law.

67. By providing services to China Grill that were not designed to and did not comply with applicable law, ADP has breached the implied covenant of good faith and fair dealing that is inherent in every contract.

68. As a result of ADP's breach of the implied covenant of good faith and fair dealing, Plaintiff has been damaged in an amount to be determined at trial, but estimated to be at least Two Million Dollars.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff China Grill respectfully requests that this Court grant the following relief:

A.	on its First Claim, compensatory damages in an amount to be determined at trial, but estimated to be at least Two Million Dollars;

B.	on its Second Claim, compensatory damages in an amount to be determined at trial but estimated to be at least Two Million Dollars, plus punitive damages in an amount to be determined at trial;

C.	on its Third Claim, compensatory damages in an amount to be determined at trial but estimated to be at least Two Million Dollars; and

D.	all of the foregoing, together with such other and further relief as to which Plaintiff may be entitled, including reasonable attorneys' fees, costs and disbursements, and such other relief as the Court may deem just and equitable.

Dated: New York, New York
	May 24, 2019

> Yours, etc.
>
> KRAUS & ZUCHLEWSKI LLP
>
> By: *Robert D. Kraus*
> Robert D. Kraus, Esq.  (RK9354)
> Desiree J. Gustafson, Esq. (DG2646)
> 60 East 42nd Street, Suite 2534
> New York, New York 10165
> 212-869-4646
> rk@kzlaw.net
> dg@kzlaw.net
> *Counsel to Plaintiff*

To:    William Gyves
        Kelley Drye & Warren LLP
        101 Park Ave
        New York, NY 10178