UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

CHINA GRILL, INC.,                          :

                                            :

                        Plaintiff,          :

                                            :

            vs.                             :            19-CV-3705 (DLC)

                                            :

ADP, LLC,                                   :

                                            :

                        Defendant.          :

-------------------------------------------------------x

---

**DEFENDANT ADP, LLC'S MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT**

---

KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York 10178
(212) 808-7800
Attorneys for Defendant

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL BACKGROUND .....................................................................................3

    A.    The Parties ..............................................................................................3

            1.    China Grill ................................................................................3

            2.    ADP..........................................................................................4

    B.    The Master Services Agreement .............................................................4

    C.    The Underlying Class Action....................................................................5

    D.    The Settlement of the Underlying Class Action ......................................6

    E.    The Breach of Contract Claim .................................................................6

ARGUMENT ...........................................................................................................7

POINT I.    THE CONTROLLING LEGAL STANDARD .........................................7

POINT II.    SUMMARY JUDGMENT IS WARRANTED BECAUSE CHINA
GRILL ADMITTEDLY HAS SUSTAINED NO DAMAGES .............................8

    A.    Proof of Actual Damages Is an Essential
Element of the Breach of Contract Claim................................................8

    B.    The Alleged Damages ..............................................................................9

    C.    China Grill Admittedly Has Sustained No Damages.............................11

            1.    China Grill Did Not Contribute a Penny to the
Settlement of the Underlying Class Action .............................11

            2.    China Grill Did Not Pay a Penny of the Defense
Costs in the Underlying Class Action ......................................12

            3.    China Grill Did Not Contribute a Penny of the
Mediator's Fee in the Underlying Class Action ......................13

            4.    China Grill Has Not Paid a Penny to the Attorneys
Representing It in This Litigation ............................................13

            5.    The Breach of Contract Claim Fails Absent Any
Proof of Damages Incurred by China Grill..............................14

**TABLE OF CONTENTS**
(continued)

**Page**

POINT III.    EVEN ASSUMING CHINA GRILL SUSTAINED
ANY LOSS, THE MSA PRECLUDES THE RECOVERY
OF SUCH CONSEQUENTIAL DAMAGES .......................................................16

    A.    The Costs of Resolving the Underlying Class
Action Constitute Consequential Damages ........................................16

    B.    The Parties' Contract Expressly Precludes China
Grill's Recovery of Consequential Damages.......................................18

    C.    The Contractual Exclusion of Consequential Damages
Is Valid and Must Be Enforced as Written ..........................................19

POINT IV.    CHINA GRILL IS DEMONSTRABLY UNABLE TO PROVE THAT
ADP BREACHED THE CONTRACT WITH RESPECT TO 99.75 PERCENT
OF THE CLASS MEMBERS IN THE UNDERLYING CLASS ACTION.........22

CONCLUSION...................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

American Leistritz Extruder Corp. v. Polymer Concentrates, Inc.,
   363 Fed. Appx. 963 (3d Cir. 2010)........................................................................20

Atlantic City Associates, LLC v. Carter & Burgess Consultants, Inc.,
   453 Fed. Appx. 174 (3d Cir. 2011)........................................................................17

Carter v. Exxon Co. USA,
   177 F.3d 197 (3d Cir. 1999)..................................................................................20

Celotex Corp. v. Catrett,
   477 U.S. 317 (1986)...............................................................................................7

Chemical Bank of New Jersey, N.A. v. Bailey,
   687 A.2d 316 (N.J. App. Div.), certif. denied, 695 A.2d 671 (N.J. 1997)..................19, 20, 22

Cross Commerce Media, Inc. v. Collective, Inc.,
   841 F.3d 155 (2d Cir. 2016)....................................................................................8

Cumberland County Improvement Authority v. GSP Recycling Co.,
   818 A.2d 431 (N.J. App. Div.), certif. denied, 827 A.2d 289 (N.J. 2003)................................8

In re Estate of Lash,
   776 A.2d 765 (N.J. 2001).......................................................................................10

Frick Joint Venture v. Starwood Ceruzzi Union, LLC,
   2006 WL 3498315 (N.J. App. Div. Dec. 6, 2006),
   certif. denied, 919 A.2d 849 (N.J. 2007) ............................................................9, 14

Globe Motor Co. v. Igdalev,
   139 A.3d 57 (N.J. 2016)......................................................................................8, 22

Kaul v. Hanover Direct Inc., 296 F. Supp. 2d 506 (S.D.N.Y. 2004),
   aff'd, 148 F. App'x 7 (2d Cir. 2005).....................................................................15

Kearney & Trecker Corp. v. Master Engraving Co.,
   527 A.2d 429 (N.J. 1987).......................................................................................19

Kephart v. Certain Underwriters at Lloyd's of London,
   427 F. Supp. 3d 508 (S.D.N.Y. 2019)....................................................................7, 8

Lane v. Brown,
   489 A.2d 1192 (N.J. App. Div. 1985)...................................................................15

Matsushita Electric Industrial Co. v. Zenith Radio Corp.,
   475 U.S. 574 (1986).............................................................................................7

Mayfair Fabrics v. Henley,
   226 A.2d 602 (N.J. 1967).................................................................................19

Metropolitan Life Insurance Co. v. Noble Lowndes International, Inc.,
   84 N.Y.2d 430 (1994) .......................................................................................19

Midland Carpet Corp. v. Franklin Associated Properties,
   216 A.2d 231 (N.J. App. Div. 1966).................................................................22

Polidore v. Kordys, Puzio & DiTomasso, AIA,
   526 A.2d 230 (N.J. App. Div. 1987).............................................................17, 18

Retirement Board of the Policemen's Annuity Benefit Fund of the City of Chicago
   v. Bank of New York Mellon,
   775 F.3d 154 (2d Cir. 2014)..............................................................................24

Ridinger v. Dow Jones & Co.,
   651 F.3d 309 (2d Cir. 2011)................................................................................8

Robert Wood Johnson University Hospital at Hamilton, Inc. v. SMX Capital, Inc.,
   2013 WL 4510005 (D.N.J. Aug. 26, 2013) .....................................................17

Royal Park Investments SA/NV v. HSBC Bank USA, N.A.,
   109 F. Supp. 3d 587 (S.D.N.Y. 2015)...............................................................24

S&K Sales Co. v. Nike, Inc.,
   816 F.2d 843 (2d Cir. 1987)................................................................................9

Tannock v. New Jersey Bell Telephone Co.,
   537 A.2d 1307 (N.J. App. Div. 1988)..............................................................8, 9

U.S. Bank, N.A. v. UBS Real Estate Securities, Inc.,
   205 F. Supp. 3d 386 (S.D.N.Y. 2016)...............................................................24

United States Fidelity & Guaranty Co. v. Braspetro Oil Services Co.,
   369 F.3d 34 (2d Cir. 2004)................................................................................10

Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc.,
   275 F. Supp. 2d 543 (D.N.J. 2003) ..................................................................16

Whitehurst v. 230 Fifth, Inc.,
   998 F. Supp. 2d 233 (S.D.N.Y. 2014)...........................................................15, 16

Wright v. Goord,
   554 F.3d 255 (2d Cir. 2009)................................................................................7

Wright v. United Food & Commercial Workers Local 152,
    2016 WL 4710201 (N.J. App. Div.), certif. denied, 157 A.3d 856 (N.J. 2016) .................8, 16

## **Statutes**

N.Y. Labor Law § 195(3) ...........................................................................................................5, 6

## **Miscellaneous**

11 Corbin on Contracts §57.9 (2019) .........................................................................................16

24 Williston on Contracts §64:16 (4th ed. 2020)........................................................................17

## PRELIMINARY STATEMENT

Defendant ADP, LLC ("ADP") respectfully submits this memorandum of law in support of its motion pursuant to Federal Rule of Civil Procedure 56(a) for summary judgment on plaintiff China Grill, Inc.'s ("China Grill") sole remaining claim for breach of contract.

This commercial dispute arises out of certain payroll processing services ADP provided to China Grill. Those services were the subject of a detailed agreement executed in 2005 and then amended several times over the years until China Grill terminated the contract in 2019. Significantly for purposes of this motion, ADP and China Grill were the only two parties to the controlling contract throughout that entire 14-year period.

The breach of contract claim turns on the allegation that ADP generated defective wage statements that did not comply with the technical requirements of New York's Wage Theft Prevention Act ("WTPA"). Those noncompliant wage statements, China Grill maintains, triggered a putative class action brought on behalf of nearly 1,600 employees of China Grill and a dozen other affiliated entities. The class action was settled last year. China Grill here seeks to recover from ADP nearly $1 million in costs incurred in resolving that class action.

With discovery closed, it is now clear that China Grill's breach of contract claim suffers from a defect as fundamental as it is fatal: China Grill indisputably has sustained no damages whatsoever as a result of ADP's alleged breach. As demonstrated below in Point II, China Grill concedes that it is not out of pocket a single dollar with respect to the resolution of the underlying class action. The funds paid to resolve that matter were contributed by entities other than China Grill. China Grill itself contributed nothing. As a matter of law and logic, a breach of contract claim without damages is no breach of contract claim at all.

Further, even if the Court were to find that China Grill has been injured, the costs associated with resolving the underlying class action plainly constitute consequential damages.

Consequential damages are expressly precluded under the terms of the parties' agreement.  As demonstrated below in Point III, controlling New Jersey law recognizes the freedom of sophisticated corporate entities like China Grill and ADP to contractually allocate their risk of loss.  ADP and China Grill did just that in their contract, agreeing that neither party would be liable to the other for any consequential damages caused by a breach.  In the commercial context, contractual limitations on consequential damages are routinely enforced absent a showing of unconscionability.  There is nothing at all unconscionable about enforcing the parties' contractual exclusion of consequential damages under the circumstances presented here.

Finally, as demonstrated below in Point IV, the breach of contract claim fails because China Grill cannot demonstrate that its alleged damages flowed from any actual breach of the parties' contract.  China Grill seeks to recover the cost of settling claims brought on behalf of 1,598 employees who were members of the class in the underlying class action.  It maintains that ADP breached the parties' contract by issuing to these employees wage statements that were not compliant with the WTPA.  To prove that breach, China Grill requires the allegedly noncompliant ADP wage statements issued to those 1,598 employees.  It is now apparent that China Grill cannot produce this proof at trial.  It admittedly only has ADP wage statements for four of the named plaintiffs in the underlying class action -- a mere 0.25 percent of the class. China Grill thus is unable to prove that ADP breached the contract with respect to wage statements issued to 99.75 percent of the employees in question, nor can it prove that the damages allegedly incurred in settling the claims brought on behalf of those employees were caused by ADP's breach.

## FACTUAL BACKGROUND

**A.**     **The Parties**

**1.**     **China Grill**

China Grill is a New York corporation that owned and operated a Manhattan restaurant by that same name from 1987 to 2017.  See Defendant ADP, LLC's Statement of Undisputed Facts ("Statement of Undisputed Facts"), ¶¶1-5.  The brainchild of entrepreneur Jeffrey Chodorow, China Grill was the first in what eventually would grow into a group of loosely affiliated entities operating more than thirty restaurants and bars throughout the United States and abroad.  By the mid-2000s, this so-called China Grill Management restaurant group was among the largest independent restaurant groups in the country.  At one point, those restaurants collectively were generating an estimated $250 million in revenue annually.  Id., ¶¶9-12.

China Grill and other members of the restaurant group received centralized accounting, human resources and other services from China Grill Management, Inc.  Id., ¶¶13-14.  China Grill and China Grill Management, Inc., however, were distinct legal entities.  Id., ¶15.  In fact, each of the restaurants in the China Grill Management group was owned and operated by a separate corporate entity.  China Grill, for example, owned and operated only the China Grill restaurant located in New York.  Id., ¶17.  Other China Grill restaurants existed outside New York, but they were operated by entities other than China Grill, Inc.  Id., ¶18.  A China Grill restaurant in Fort Lauderdale was owned and operated by China Grill FTL, LLC, for example, while a China Grill restaurant in Miami was owned and operated by China Grill Café Sunset, Inc.  Id., ¶¶19-22.  Other restaurants in the China Grill Management group all were owned and operated by stand-alone corporate entities legally separate and distinct from China Grill.  Id., ¶¶23-42.  Other than China Grill, none of these entities within the China Grill

Management group was ever a party to the contract ADP now is alleged to have breached.  Id., ¶¶60, 64, 69, 74, 79, 84.

        2.       **ADP**

ADP is a Delaware limited liability company maintaining its principal place of business in Roseland, New Jersey.  It is one of the world's leading providers of payroll processing services and other human resources management services and products.  Id., ¶¶43-44.

    B.     **The Master Services Agreement**

On March 1, 2005, China Grill and ADP entered into a Master Services Agreement (the "MSA").  Id., ¶¶45-46.  In the MSA, ADP agreed to provide to China Grill certain payroll services.  Id., ¶88.  The MSA identified "China Grill, Inc." as the "Client".  Id., ¶60.  "China Grill, Inc." was identified as the "Client" in every subsequent addendum and amendment to the MSA.  Id., ¶¶64, 69, 74, 79, 84.  The only signatories to the MSA and every subsequent addendum and amendment were "China Grill, Inc." and ADP.  Id., ¶¶62, 67, 72, 77, 82, 87.  The MSA, and each subsequent addendum or amendment, was executed by Neil Faggen, as Vice President of "China Grill, Inc."  Id., ¶¶59, 65, 70, 75, 80, 85.  China Grill agreed to use ADP's services for its "internal business purposes" and those of the "Client Group."  Id., ¶89.  The "Client Group" was defined to encompass the "Client"-- i.e., "China Grill, Inc." -- as well as "Client's majority owned subsidiaries, and affiliates of Client" as identified in the contract.  Id., ¶90.

ADP and China Grill agreed that "Client (and not ADP) will be responsible … for compliance by Client with all laws and governmental regulations affecting its business[.]"  Id., ¶93.  As is common in contracts between sophisticated corporate entities, ADP and China Grill also sought to allocate their respective risks of loss through a number of limitation of liability provisions set forth in Section 7 of the MSA.  They agreed, for example, to a monetary cap on

the direct damages recoverable for a breach.  Id., ¶95.  Further, they agreed that neither ADP nor China Grill would be responsible for any consequential damages flowing from a breach of the MSA.  Id., ¶96.

The MSA, which was terminated in 2019, is governed by New Jersey law.  Id., ¶¶99, 101.

C.     **The Underlying Class Action**

On January 18, 2018, six former employees of various corporate members of the China Grill Management group commenced a putative class action captioned James v. China Grill Management, Inc., 18-cv-455 (S.D.N.Y.) (LGS) (the "James Action").  Id., ¶102.  Named as defendants were China Grill Management, Inc., China Grill and eleven other corporate entities that allegedly operated the restaurants at which the plaintiffs were employed.  Six individuals, including Chodorow, also were named as defendants.  Id., ¶¶103-122.

In the James Action, plaintiffs asserted claims under the Fair Labor Standards Act, the New York Labor Law and the Florida minimum wage act.  Id., ¶¶125-127, 129.  Among other things, plaintiffs alleged defendants violated the WTPA by "knowingly and willfully operat[ing] their business with a policy of not providing proper wage statements[.]"  Id., ¶¶127-128.

New York employers are required to provide employees with a wage statement accompanying each payment of wages.  See N.Y. Labor Law §195(3).  The wage statement must disclose such information as the dates of work covered by the accompanying payment of wages and the rate of pay.  It also must reflect any "allowances" the employer is claiming as part of the minimum wage, including any "tip credit."  Id.  New York law allows employers in the hospitality industry to satisfy the minimum wage requirement by combining a "cash wage" paid by the employer with a credit or allowance for tips the employee receives from customers.  The

WTPA requires that each wage statement disclose the tip credit the employer is claiming.  Id.
The defendants in the James Action were alleged to have violated the technical requirements of
the WTPA because the "tip credit allowance was never clearly included in wage statements to
tipped employees[.]"  Statement of Undisputed Facts, ¶128.

 In their Answer, China Grill and the other defendants denied the material
allegations of the complaint, including those relating to the WTPA.  Id., ¶130.

### D. The Settlement of the Underlying Class Action

 The parties to the James Action executed a formal Settlement Agreement and
Release on September 24, 2018 (the "James Settlement Agreement").  Id., ¶131.  Therein,
plaintiffs agreed to resolve the proposed class action in return for total settlement consideration
of $1.2 million.  Id., ¶132.  The defendants agreed to make that payment after the settlement
secured final court approval.  Id., ¶133.  In the James Settlement Agreement, China Grill and the
other defendants denied the material allegations of the complaint, including those relating to the
WTPA.  Id., ¶134.

 On April 29, 2019, the Honorable Lorna G. Schofield granted final approval of
the settlement.  Id., ¶¶135, 138.  Consistent with the terms of the James Settlement Agreement,
by June 10, 2019 the $1.2 million was wired into the settlement fund established in the James
Action for eventual disbursement to some 1,598 class members and their counsel.  Id., ¶¶139-
143.

### E. The Breach of Contract Claim

 China Grill initially asserted three claims: breach of contract, negligence and
breach of the implied covenant of good faith and fair dealing.  (ECF No. 12).  Following
extensive pre-discovery motion practice (ECF Nos. 14-17), China Grill voluntary dismissed the

6

negligence and implied contract claims.  (ECF No. 22).  Its sole surviving claim is the breach of

contract claim asserted in Count I of the Amended Complaint.

China Grill alleges that ADP breached the MSA "by failing to design the agreed

upon services to assist China Grill in complying with" the WTPA.  See Amended Complaint

(ECF No. 12), ¶52.  It claims that ADP's allegedly defective services triggered the

commencement of the James Action.  Id., ¶¶34-39.  "Ultimately," the Amended Complaint

alleges, "China Grill settled" the James Action, "requiring it to pay a substantial amount on

account of ADP's reckless breaches of the MSA[.]"  Id., ¶44.

## ARGUMENT

### POINT I.

### THE CONTROLLING LEGAL STANDARD

Summary judgment is warranted when "all of the submissions taken together

'show[] that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law.'"  Kephart v. Certain Underwriters at Lloyd's of London, 427 F.

Supp. 3d 508, 513 (S.D.N.Y. 2019).  The moving party bears the initial burden of demonstrating

the absence of material factual issues.  Id.  The movant satisfies this burden by showing that the

nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial."

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Once the movant carries its burden, the nonmovant must "set forth 'specific facts'

demonstrating that there is 'a genuine issue for trial.'"  Wright v. Goord, 554 F.3d 255, 266 (2d

Cir. 2009).  The nonmovant "must do more than simply show that there is some metaphysical

doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

586 (1986).  The nonmovant may not merely rest on the allegations of its pleading or

"conclusory statements, conjecture, and inadmissible evidence" to defeat a summary judgment

motion.  Ridinger v. Dow Jones & Co., 651 F.3d 309, 317 (2d Cir. 2011); Kephart, 427 F. Supp.

3d at 514.  Only genuine disputes over material facts will preclude the entry of summary

judgment.  Id.  A factual issue "is genuine and material if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party."  Cross Commerce Media, Inc. v. Collective,

Inc., 841 F.3d 155, 162 (2d Cir. 2016).

## POINT II.

### SUMMARY JUDGMENT IS WARRANTED BECAUSE
### CHINA GRILL ADMITTEDLY HAS SUSTAINED NO DAMAGES

> **A.**    **Proof of Actual Damages Is an Essential**
> **Element of the Breach of Contract Claim**

To prevail on its breach of contract claim under controlling New Jersey law,

China Grill must prove (1) the existence of a valid and binding agreement between the parties;

(2) performance by China Grill; (3) material breach by ADP; and (4) damages to China Grill

flowing from ADP's breach.  See Globe Motor Co. v. Igdalev, 139 A.3d 57, 64 (N.J. 2016).

China Grill "ha[s] the burden of proof to establish all elements of its cause of action, including

damages."  Cumberland Cty. Improvement Auth. v. GSP Recycling Co., 818 A.2d 431, 442 (N.J.

App. Div.) (emphasis supplied), certif. denied, 827 A.2d 289 (N.J. 2003).  Stated simply,

"[w]ithout damages, there is no breach of contract."  Wright v. United Food & Commercial

Workers Local 152, 2016 WL 4710201, at *2 (N.J. App. Div.), certif. denied, 157 A.3d 856 (N.J.

2016).  When the party alleging breach of contract fails to present evidence that it was, in fact,

damaged, "the opposing party is entitled to judgment."  Tannock v. New Jersey Bell Tel. Co.,

537 A.2d 1307, 1310 (N.J. App. Div. 1988).

New Jersey law allows for some degree of uncertainty in the calculation of the

amount of damages allegedly caused by a breach of contract.  A plaintiff, however, is afforded

no such latitude in proving that it has, in fact, been damaged.  Frick Joint Venture v. Starwood Ceruzzi Union, LLC, 2006 WL 3498315, at *18 (N.J. App. Div. Dec. 6, 2006), certif. denied, 919 A.2d 849 (N.J. 2007).  A plaintiff must prove to a certainty the fact that it sustained damages.  Tannock, 537 A.2d at 1310.  New Jersey law and New York law are in line on this fundamental principle.  As the Second Circuit has instructed, under New York law a plaintiff "is required to establish with certainty that it suffered some loss."  S&K Sales Co. v. Nike, Inc., 816 F.2d 843, 852 (2d Cir. 1987).

> **B.**     **The Alleged Damages**

China Grill seeks to recover nearly $1 million in damages it claims flowed from ADP's alleged breach of the MSA.  See Statement of Undisputed Facts, ¶144.  These damages allegedly constitute China Grill's out-of-pocket expenses relating to the James Action.  Id., ¶145-146.  These alleged damages, outlined in a chart created days before the settlement consideration was paid in the James Action, consist of four components.  Id., ¶147.  First, China Grill seeks to recover 80 percent of the $1,262,238.41 in settlement consideration paid to resolve the James Action, or $1,009,790.73.  Id., ¶148.  This 80 percent allocation, according to China Grill, corresponds to the provision of the James Settlement Agreement in which the parties agreed that, for tax purposes, 80 percent of the settlement consideration would be characterized as liquidated damages attributable to the "non-wage," or WTPA, prong of the James Action -- i.e., the allegedly noncompliant wage statements for which China Grill seeks to hold ADP accountable. Id., ¶149.  The remaining 20 percent of the settlement consideration was characterized for tax purposes as back-wages relating to wage-and-hour law violations for which China Grill does not seek to hold ADP accountable.  Id., ¶150.  Further, the $1,009,790.73 portion of the settlement consideration paid to resolve the James Action is subject to an offset relating to a $175,000.00 settlement payment an entity other than China Grill secured from Paylocity Corporation

9

("Paylocity") in connection with the James Action.  Id., ¶151.  Paylocity is a second payroll processing company that, like ADP, was alleged to have been responsible for the noncompliant wage statements giving rise to the underlying class action.  Id., ¶¶152-153.

Second, China Grill seeks $50,348.18 in legal fees paid to the law firm Fox Rothschild LLP ("Fox Rothschild").  Fox Rothschild represented the defendants in the James Action.  This $50,348.18 figure is net of $9,590.00 in Fox Rothschild's fees allocated to Paylocity.  Id., ¶¶154-155.

Third, China Grill seeks to recover 80 percent of the fees paid to the mediator who facilitated the settlement of the James Action, or $5,921.10.  This figure is subject to an offset for proceeds received through the Paylocity settlement.  Id., ¶¶156-157.

Finally, China Grill seeks $49,164.51 in fees paid to Robert Kraus, the attorney representing China Grill in this litigation.[1]  Id., ¶¶158-159.

China Grill's alleged damages thus total $940,224.52:

| | | |
|---|---|---|
| James Action Settlement: | $1,009,790.73 | |
| Mediator's Fees: | + $      5,921.10 | |
| Paylocity Settlement: | - $   175,000.00 | |
| | $    840,711.83 | Subtotal: $  840,711.83 |
| Fees Paid to Fox Rothschild: | $     59,938.18 | |
| Paylocity's Share: | - $      9,590.00 | |
| | $     50,348.18 | Subtotal: $    50,348.18 |
| Fees Paid to Robert Kraus: | $     49,164.51 | Subtotal: $    49,164.51 |
| | | TOTAL: $  940,224.52 |

Id., ¶162.  As it was calculated at the close of the James Action, China Grill concedes that this $940,224.52 figure would increase thereafter only with respect to the (unrecoverable) fees paid

---

[1]      New Jersey, like New York, follows the American Rule with respect to the recovery of attorneys' fees.  See United States Fidelity & Guaranty Co. v. Braspetro Oil Servs. Co., 369 F.3d 34, 74 (2d Cir. 2004); In re Estate of Lash, 776 A.2d 765, 771 (N.J. 2001).  At his deposition, China Grill's Rule 30(b)(6) designee was unable to identify any basis in the MSA upon which China Grill could recover the attorneys' fees associated with its prosecution of this action against ADP.  See Statement of Undisputed Facts, ¶161.  There is no such basis.  Id., ¶¶100, 160.

to China Grill's counsel in <u>this</u> litigation.  <u>Id.</u>, ¶163.

      **C.**      <u>**China Grill Admittedly Has Sustained No Damages**</u>

Discovery has confirmed that China Grill sustained no damages as a result of the breaching conduct it attributes to ADP.  Indeed, China Grill has conceded that it is not out of pocket a single dollar with respect to the resolution of the James Action.

      **1.**      <u>**China Grill Did Not Contribute a Penny to the**</u>
                  <u>**Settlement of the Underlying Class Action**</u>

China Grill did not contribute a penny of the $1.2 million paid to resolve the James Action.  In fact, by the time the $1.2 million was wired into the settlement fund established in the James Action in June 2019, the China Grill restaurant in Manhattan had been closed for more than two years.  China Grill thus had no meaningful source of revenue with which to make any contribution.  <u>Id.</u>, ¶¶164-170.  This is clear from the deposition testimony of Neil Faggen, China Grill's general counsel and Rule 30(b)(6) designee:

> Q.     Can you tell me specifically which of the defendants [in the James Action] contributed to the $1.2 million settlement?
>
>                  *   *   *   *
>
> A.     China Grill was also out of business, would not have contributed.

<u>Id.</u>, ¶169.

> Q.     Okay, with respect to the . . . settlement payment of $1.2 million and change, do you see that?
>
> A.     I do.
>
> Q.     I take it from your earlier testimony that China Grill, Inc. paid no portion of that amount [the $1.2 million] with regard to settling the James matter?
>
> A.     I believe that is correct.
>
>        I don't believe it was operating at that time and had access to revenues for those payments.

Id., ¶170.

Mr. Faggen's deposition testimony is consistent with China Grill's interrogatory responses.  Asked to identify the parties that contributed to the settlement consideration paid to resolve the James Action, China Grill listed a number of the corporate members of the China Grill Management group.  Conspicuously absent from that list is China Grill itself.  Id., ¶¶171-173.

The reality is that the $1.2 million settlement payment was made from pooled funds contributed by only a few of the named defendants in the James Action.  Only those entities that "had funds to contribute" participated.  Id., ¶¶164-165.  China Grill, which had long before ceased operations, was not one of those entities.  Id., ¶¶169-173.  Defendants China Grill Management, Inc., RF Hudson, LLC (owner and operator of the RedFarm restaurant in the West Village); RF Broadway LLC (owner and operator of a second RedFarm restaurant on the Upper West Side); GM-GH LLC (owner and operator of a lounge in the Gansevoort Hotel in Manhattan); and China Grill Management 12 E 22 LLC (owner and operator of the Almond restaurant in Manhattan) contributed to the settlement payment, along with individual defendant Jeffrey Chodorow (and possibly Chodorow's wife).  Id., ¶¶174, 178, 182, 186, 190, 194.  China Grill Management, Inc. bundled these contributions and then forwarded the $1.2 million in three wire transfers to the settlement fund established in the James Action.  Id., ¶¶139-142.  Indisputably, China Grill contributed not one penny of those funds.  Id., ¶¶166-173.

## 2.    China Grill Did Not Pay a Penny of the Defense Costs in the Underlying Class Action

Nor did China Grill contribute a penny of the fees paid to Fox Rothschild for its legal services relating to the James Action.  Id., ¶209.  Mr. Faggen so testified:

> Q.    With respect to the payments to Fox Rothschild that are reflected in the first line of Exhibit D, did China Grill, Inc.

make any portion of the payment of $49,922.73 to Fox
Rothschild?

A.  China Grill as in China Grill, Inc.?

Q.  Yes.

A.  No.

<u>Id.</u>, ¶210.

### 3.  China Grill Did Not Contribute a Penny of the Mediator's Fee in the Underlying Class Action

Similarly, China Grill did not pay any portion of the mediator's fee in the James

Action.  <u>Id.</u>, ¶211.  Again, Mr. Faggen conceded this point:

Q.  . . . And then, again, the line . . . on Exhibit D refers to the
"James Arbitration Fee."

Do you see that?

A.  I do.

Q.  And what portion of that, if any, did China Grill, Inc. pay?

A.  I don't believe it did pay any.

I believe we gave you a schedule of the amounts paid and
we were just looking at it, so my answer would be that
China Grill, Inc. to my knowledge did not advance any
funds there.

<u>Id.</u>, ¶212.

### 4.  China Grill Has Not Paid a Penny to the Attorneys Representing It in This Litigation

Finally, even assuming without conceding that there is any legal basis for the

recovery of the fees paid to China Grill's counsel in this case, <u>see</u> discussion <u>supra</u> at 10 n.1,

China Grill itself has not paid any portion of those fees.  <u>Id.</u>, ¶213.  Mr. Faggen conceded this

point:

Q.  And then with respect to the Kraus fees, the fees paid, I
take it, to Mr. Kraus's firm in connection with this

litigation, has China Grill, Inc. paid any portion of the
amount paid to Mr. Kraus's firm?

A.      Not to my knowledge.

<u>Id.</u>, ¶214.

### 5.   The Breach of Contract Claim Fails Absent Any <u>Proof of Damages Incurred by China Grill</u>

This incontrovertible proof that China Grill has sustained no economic loss is
absolutely fatal to its breach of contract claim.  The corporate defendants in the James Action
that contributed to the cost of resolving that matter are independently formed legal entities
wholly distinct from China Grill, Inc.  <u>Id.</u>, ¶¶174-175, 178-179, 182-183, 186-187, 190-191.
None of those corporate entities was a party to the MSA; neither was Chodorow (or his wife).
<u>Id.</u>, ¶¶176, 180, 184, 188, 192, 195.  None of those corporate entities is a plaintiff in this action;
neither is Chodorow (or his wife).  <u>Id.</u>, ¶¶177, 181, 185, 189, 193, 196.  ADP owed no
contractual duty to those other corporate entities or any of their principals.  Their out-of-pocket
expenses incurred in resolving the James Action simply do not constitute any cognizable damage
to China Grill sufficient to sustain its breach of contract claim here.  Significantly, China Grill
and ADP agreed in the MSA that "[n]either this Agreement, nor any rights or obligations under
this Agreement, may be assigned by any party without the prior written consent of the other
party."  <u>Id.</u>, ¶97.  The MSA also expressly provides that "[n]othing in this Agreement creates, or
will be deemed to create, third party beneficiaries of or under this Agreement."  <u>Id.</u>, ¶98.

Application of black letter law to these indisputable fact(s) compels entry of
summary judgment on the breach of contract claim.  <u>Frick Joint Venture</u>, 2006 WL 3498315,
illustrates the point.  There, the owner of a shopping center sued defendant for breach of a lease
that prohibited defendant from selling certain products.  <u>Id.</u> at *3.  Defendant moved for
summary judgment.  <u>Id.</u>  The trial court granted the motion, identifying the pivotal issue as being

14

whether plaintiff "can hope to prove to any reasonable certainty, that it has incurred any damages due to" defendant's alleged breaching conduct.  Id. at *3, 17.  The court found that "[i]t is not possible that [plaintiff] will ever be able to prove damages beyond speculation because there has been no damage for which [defendant] can be held accountable."  Id. at *18.

The Appellate Division affirmed.  To survive summary judgment, the court reasoned, "plaintiff had to establish to a reasonable degree of certainty that it in fact suffered money damages by [defendant's] alleged breach of the lease agreement."  Id. at *19.  The court found that summary judgment was warranted because "plaintiff failed to establish with any degree of certainty that it suffered a monetary loss as a result of defendant's breach[.]"  Id. at *20.  The court held, "Because plaintiff has failed to prove the existence of money damages beyond mere speculation," the trial court properly entered summary judgment.  Id.; see also Kaul v. Hanover Direct, Inc., 296 F. Supp. 2d 506, 523 (S.D.N.Y. 2004) (applying New Jersey law, court grants summary judgment dismissing counterclaim for breach of contract because counterclaimant "has presented no evidence of damages"; "[d]amages are a necessary element of a breach of contract action"), aff'd, 148 F. App'x 7 (2d Cir. 2005); Lane v. Brown, 489 A.2d 1192, 1194 (N.J. App. Div. 1985) (summary judgment on breach of contract claim appropriate when plaintiff could not assert any damages).

The laws of New Jersey and New York are entirely consistent regarding the consequences an absence of damages will have on a breach of contract claim.  In Whitehurst v. 230 Fifth, Inc., 998 F. Supp. 2d 233 (S.D.N.Y. 2014), for example, plaintiffs asserted a breach of contract claim arising out of their expulsion from a lounge where they had gathered for a birthday party.  Id. at 240-42.  The court granted summary judgment on the claim in the absence of proof that the plaintiffs sustained any economic harm by the alleged breach.  Id. at 256-57.  As did Mr. Faggen here, plaintiffs in Whitehurst admitted under oath that they had sustained no

economic loss.  Id.  Given these admissions, the Whitehurst court concluded, summary judgment was warranted.  Id. at 257.  "No Plaintiff here suffered damages," the court held, "and so their breach of contract claim must fail as a matter of law."  Id.

The same result is compelled here.  China Grill -- ADP's sole counterparty with respect to the MSA and the only plaintiff in this action -- admittedly has sustained no economic loss as a result of the breaching conduct it attributes to ADP.  Without damages, there simply is no breach of contract claim.  Wright, 2016 WL 4710201, at *2.[2]

## POINT III.

### EVEN ASSUMING CHINA GRILL SUSTAINED ANY LOSS, THE MSA PRECLUDES THE RECOVERY OF SUCH CONSEQUENTIAL DAMAGES

#### A.      The Costs of Resolving the Underlying Class Action Constitute Consequential Damages

Even if the Court were to conclude that the costs of resolving the James Action are properly characterized as damages sustained by China Grill, China Grill nonetheless is contractually precluded from recovering those damages.  The costs relating to the settlement of the James Action are a textbook example of consequential damages.  As discussed below in Point III.B, consequential damages are expressly precluded by the plain and unambiguous terms of the MSA.

As Professor Corbin made clear, if a breach of contract triggers litigation between the non-breaching party and a third party, the costs associated with that litigation may be recoverable but "[s]uch expenses are consequential damages."  11 Corbin on Contracts §57.9

---

[2]      Even if the Court determines that summary judgment is not appropriate under the circumstances, absent proof of actual economic loss, China Grill's recovery at trial would be limited to nominal damages.  See Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc., 275 F. Supp. 2d 543, 566-569 (D.N.J. 2003) (despite absence of proof of actual damages, court declines to enter summary judgment on breach of contract counterclaim but notes that "a plaintiff who proves a breach of contract but no actual damages may not recover more than nominal damages"; "as a matter of law … defendant's recovery on its breach of contract counterclaim shall be limited to nominal damages in the amount of one dollar").

(2019).  The distinction under New Jersey law between direct damages and consequential

damage depends on "whether the damages represent (1) a loss in value of the other party's

performance, in which case the damages are direct, or (2) collateral losses following the breach,

in which case the damages are consequential."  Atlantic City Assocs., LLC v. Carter & Burgess

Consultants, Inc., 453 Fed. Appx. 174, 179 (3d Cir. 2011); see Robert Wood Johnson Univ.

Hosp. at Hamilton, Inc. v. SMX Cap., Inc., 2013 WL 4510005, at *6 (D.N.J. Aug. 26, 2013); 24

Williston on Contracts §64:16 (4th ed. 2020) (direct or general damages "are sometimes called

'loss of bargain' damages, because they reflect a failure on the part of the defendant to live up to

the bargain it made, or a failure of the promised performance itself"; in contrast, "[c]onsequential

damages are those damages that do not flow directly and immediately from the breach, but only

from some of the consequences or results of the breach").  Here, China Grill does not seek to

recover the benefit of its bargain with ADP -- i.e., the fees paid for what it maintains were ADP's

deficient services.  Instead, China Grill seeks to recover the collateral costs of resolving claims

brought by third parties as a consequence of those allegedly deficient payroll processing services.

The consequential nature of China Grill's alleged damages is illustrated by

Polidore v. Kordys, Puzio & DiTomasso, AIA, 526 A.2d 230 (N.J. App. Div. 1987).  There,

plaintiff owned a two-family home he shared with a tenant.  Plaintiff had contracted with

defendants for the design and construction of the stairs running between the basement and the

first floor of the premises.  When an interior water pipe burst, ice formed on the stairs.  The

tenant slipped on the icy stairs, sustained injuries and sued plaintiff.  Plaintiff settled with the

tenant.  He then asserted a breach of contract claim against the defendants who designed and

constructed the stairway.  Plaintiff sought to recover the cost of resolving the personal injury

action brought by the tenant.  Id. at 231-32.  Plaintiff maintained that the settlement costs were

recoverable as consequential damages.  Id. at 235.  The Polidore court agreed, holding that the

settlement payment "falls within the category of consequential damages theoretically recoverable on the breach of contract claim." Id. at 236.

The nature of China Grill's alleged damages is no different.  With the exception of the plainly unrecoverable fees paid to the attorney representing it in the litigation, see discussion supra at 10 n.1, the damages China Grill seeks to recover all tie back to the settlement of claims asserted in the James Action by third parties allegedly injured by ADP's breach.  These collateral out-of-pocket costs plainly constitute consequential damages.

### B.    The Parties' Contract Expressly Precludes China Grill's Recovery of Consequential Damages

The recoverability of consequential damages is an issue ADP and China Grill squarely and plainly addressed in the MSA.  Section 7.4 of the MSA provides:

> **No Consequential Damages.**  NOTWITHSTANDING ANYTHING IN THIS AGREEMENT TO THE CONTRARY, NEITHER ADP NOR CLIENT WILL BE RESPONSIBLE FOR SPECIAL, INDIRECT, INCIDENTAL, CONSEQUENTIAL OR OTHER SIMILAR DAMAGES (INCLUDING LOST PROFITS) THAT THE OTHER PARTY MAY INCUR OR EXPERIENCE IN CONNECTION WITH THIS AGREEMENT OR THE SERVICES, HOWEVER CAUSED AND UNDER WHATEVER THEORY OF LIABILITY, EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

Statement of Undisputed Facts, ¶96.

Such restrictions on consequential damages are commonplace in commercial agreements between sophisticated corporate parties.  They are not, however, empty boilerplate. To the contrary, limitations on consequential damages often are among the most critical terms included in those contracts.  As the New Jersey Supreme Court has observed:

> As a general matter, consequential damages exclusions are hands down the most significant limitation of liability in a contract for the sale of goods.  Potential liability for consequential damages in commercial contexts, usually in the form of the buyer's lost profits from the use or resale of the goods in its business, is enormous in

> comparison to the contract price of the goods.  On the other hand, the general or direct damages that a buyer may suffer upon a seller's breach are finite and can be gauged at a maximum amount either in terms of the contract price or market price of the goods to be sold.  Potential consequential losses are a much different proposition.  They can exceed, and most likely will exceed, the value of the goods by an unknown quantum, depending not so much on the actions and machinations of the seller as on the individual operating structure of the buyer and on the buyer's contracts and relationships with third parties.

Kearney & Trecker Corp. v. Master Engraving Co., 527 A.2d 429, 433 (N.J. 1987) (quoting

Anderson, Failure of Essential Purpose and Essential Failure on Purpose: A Look at Section 2-

719 of the Uniform Commercial Code, 32 Sw.L.J. 759, 774 (1977)).  Thus, "[i]n a commercial

setting, the seller's right to exclusion of consequential damages is recognized as a beneficial risk-

allocation device that reduces the seller's exposure in the event of breach."  Id.  The court noted

the "commercial reality" that "for many sellers, immunity from liability for their customers'

consequential damages may be indispensable to their pricing structure and, in extreme cases, to

their solvency."  Id. at 437-38.  New York law similarly recognizes the critical role such

provisions play in the commercial relationship between sophisticated corporate entities.  See

Metropolitan Life Ins. Co. v. Noble Lowndes Int'l, Inc., 84 N.Y.2d 430, 436-37 (1994).

   C.   **The Contractual Exclusion of Consequential Damages Is Valid and Must Be Enforced as Written**

   The exclusion of consequential damages reflected in Section 7.4 of the MSA is

unequivocal, legally valid and should be enforced as written.  New Jersey courts recognize that

"[i]t is fundamental that parties to a contract may allocate risk of loss by agreeing to limit their

liability as long as the limitation does not violate public policy."  Chemical Bank of N.J., N.A. v.

Bailey, 687 A.2d 316, 322 (N.J. App. Div.), certif. denied, 695 A.2d 671 (N.J. 1997).  Limitation

of liability provisions in private contracts are generally sustained.  Mayfair Fabrics v. Henley,

226 A.2d 602, 605 (N.J. 1967); Bailey, 687 A.2d at 322.  Exculpatory clauses "are more

commonly upheld in the commercial context." Id.  The central question is whether in their contract the parties "so clearly allocated the risks that each party knew, or should have known, the existence of its contingent liability and was thus placed in a position where it could protect itself against such loss by adequate insurance coverage or otherwise." Bailey, 687 A.2d at 322.

Under New Jersey law, "contractual limitations on consequential damages are permitted unless unconscionable." American Leistritz Extruder Corp. v. Polymer Concentrates, Inc., 363 Fed. Appx. 963, 966 (3d Cir. 2010).  Unconscionability is a question of law for the court.  Carter v. Exxon Co. USA, 177 F.3d 197, 207 (3d Cir. 1999).  The unconscionability analysis "focuses on the relative bargaining power of the parties, the conspicuousness of the exclusion, the oppressiveness of its application, and unreasonableness or bad faith on the part of the party enforcing the exclusion." American Leistritz Extruder, 363 Fed. Appx. at 966.  An exclusion of liability in the commercial context "is unconscionable only if "the circumstances of the transaction, including the seller's breach, cause [the]exclusion to be inconsistent with the intent and reasonable commercial expectations of the parties[.]" Id. (internal quotation marks omitted).

There is nothing unconscionable or even inequitable about enforcing the MSA's exclusion of consequential damages here.  The MSA was the product of arm's-length negotiations between two sophisticated corporate entities.  At the time the MSA was executed and long thereafter, China Grill was part of one of the country's premier independent restaurant groups.  Statement of Undisputed Facts, ¶¶9-12.  There was no unequal bargaining power as between ADP and China Grill.

Moreover, the MSA was vetted by two experienced business professionals representing China Grill's interests.  First, the MSA was reviewed by the long-time chief financial officer of China Grill Management, Inc., Jack Polsenberg.  Id., ¶¶47-49.  Then Mr.

Polsenberg, a Certified Public Accountant, forwarded the document to China Grill's general

counsel, Mr. Faggen, "indicating he was comfortable with it from a business perspective and

asked [Mr. Faggen] to look at it from a legal perspective." Id., ¶50.

Mr. Faggen reviewed and then executed the MSA on behalf of China Grill. Id.,

¶59. At the time, Mr. Faggen had extensive experience drafting and negotiating commercial

contracts. Id., ¶51. He is a graduate of Tulane University, from which he obtained both an

undergraduate degree in economics and a Master of Business Administration degree. Mr.

Faggen is also a graduate of Temple University's law school, where he served as editor-in-chief

of the law review and a member of the moot court board. Upon graduation from law school, Mr.

Faggen worked for six years at the Blank Rome law firm, assigned to its national real estate

practice group. There, he participated in the drafting and negotiation of complex contracts.

After Blank Rome, Mr. Faggen worked for seven years as in-house counsel at a real estate

management firm. In that role, Mr. Faggen had responsibility for negotiating, drafting and

reviewing complex commercial agreements. In 1995, Mr. Faggen joined the China Grill

Management group as its general counsel. Plainly, China Grill was ably represented in the

negotiation, review and execution of the MSA. Id., ¶52-58.

As for the exclusionary language of Section 7.4 itself, it is both clear and

conspicuous. It could not possibly have been overlooked by Mr. Polsenberg and Mr. Faggen,

nor could such seasoned business professionals have misconstrued it. The intent of this

provision is clear: neither party would be responsible for the consequential damages flowing

from its breach. The consequence of that exclusion could not possibly have been lost on a

corporate entity with the experience and sophistication of China Grill. The commercially

reasonable allocation of risk in the MSA with respect to consequential damages could not have

been clearer.

21

ADP respectfully submits that under these undisputed circumstances, the plain and unambiguous terms of Section 7.4 of the MSA should be enforced as written to preclude China Grill's recovery of the costs of resolving the underlying class action.  China Grill may in retrospect regret having included this provision in the MSA.  Any such regret, however, provides no basis for now writing Section 7.4 out of the MSA.  See Bailey, 687 A.2d at 322 ("'judiciary will not undertake the writing of a different or better contract between the parties'"); Midland Carpet Corp. v. Franklin Associated Props., 216 A.2d 231, 234 (N.J. App. Div. 1966) ("'court will not make a different or a better contract than the parties themselves have seen fit to enter into'").

## POINT IV.

### CHINA GRILL IS DEMONSTRABLY UNABLE TO PROVE THAT ADP BREACHED THE CONTRACT WITH RESPECT TO 99.75 PERCENT OF THE CLASS MEMBERS IN THE UNDERLYING CLASS ACTION

The breach of contract claim fails even if China Grill could overcome the fatal deficiencies discussed above.  To prove its breach of contract claim, China Grill must establish that ADP actually breached the MSA.  See Globe Motor, 139 A.3d at 64.  China Grill maintains that ADP breached the MSA by generating tens of thousands of noncompliant wage statements issued to the 1,598 employees who were members of the class in the James Action.  China Grill concedes, however, that the only ADP wage statements it possesses are those issued to four of the named plaintiffs in the James Action.  China Grill does not possess the allegedly noncompliant ADP wage statements issued to the remaining 1,594 class members.  Without the full universe of allegedly noncompliant wage statements, China Grill is unable to prove that ADP breached the MSA with respect to fully 99.75 percent of the employees whose WTPA claims were settled for $1.2 million.  Stated differently, China Grill at best may be able to prove

at trial that the ADP wage statements issued to 0.25 percent of those employees were noncompliant with WTPA.

As part of their pre-settlement inquiry into the WTPA prong of the James Action, the defendants collected and analyzed only those ADP wage statements issued to the four named plaintiffs who asserted those claims.  Statement of Undisputed Facts, ¶¶215-217.  Although they could have accessed the wage statements issued to the other members of the class, the defendants elected not to do so and focused their inquiry exclusively on the four named plaintiffs.  Id., ¶¶218-221.  In total, the defendants marshaled and reviewed just 755 ADP wage statements relating to only the four named plaintiffs.  Id., ¶¶222-223.  The defendants then generated reports reflecting their analysis of the extent to which those four sets of wage statements complied with the WTPA, later updating those reports and attaching all of the ADP wage statements in their possession.  Id., ¶¶224-228.  Similar reports were not prepared for ADP wage statements issued to any other members of the class because the defendants did not have those wage statements then and they do not have them now.  Id., ¶¶229-235.

Even if the extraordinarily limited universe of wage statements in China Grill's possession are noncompliant with the WTPA, this does not establish that ADP breached the MSA by generating noncompliant wage statements to the remaining 1,594 employees in the class.  At the summary judgment stage, China Grill cannot extrapolate from the four sets of wage statements in its possession to demonstrate that the ADP wage statements issued to the remaining 1,594 class members were noncompliant and caused its damages.  Absent proof on an employee-by-employee basis of noncompliance with the WTPA, China Grill cannot establish that the alleged damages attributable to resolving the claims brought on behalf of all 1,598 employees were caused by any actual breach of the MSA.

Requiring China Grill to prove ADP's breach with respect to each of the 1,598 employees included in the class is no more onerous than the burden of proof imposed on plaintiffs in other contexts in which a breach of contract claim is based not on a single wrongful act but, instead, a multitude of individual breaches.  Breach of contract claims arising out of the implosion of the residential mortgage-backed securities industry is just one example.  The Second Circuit has made it clear that notwithstanding the enormous complexity of the breach of contract claims asserted in that context, the defendant's "alleged misconduct must be proved loan-by-loan and trust-by-trust."  Retirement Bd. of the Policemen's Annuity Benefit Fund of the City of Chicago v. Bank of New York Mellon, 775 F.3d 154, 162 (2d Cir. 2014); see also U.S. Bank, N.A. v. UBS Real Estate Secs. Inc., 205 F. Supp. 3d 386, 411-12 (S.D.N.Y. 2016) (plaintiffs have burden of proving each element of each claim, and they "bear this burden with respect to each alleged breach for each loan as to which they seek relief"); Royal Park Investments SA/NV v. HSBC Bank USA, N.A., 109 F. Supp. 3d 587, 601 (S.D.N.Y. 2015) ("at trial or summary judgment, plaintiffs must prove their claims 'loan-by-loan and trust-by-trust'"). In other words, there are no short cuts to proving a breach of contract claim.  If China Grill wants to recover the costs of settling claims brought on behalf of 1,598 class members, it must -- but plainly cannot -- prove that those damages flowed from ADP's breach with regard to noncompliant wage statements issued to those 1,598 class members.

The defendants in the James Action no doubt were free to agree to settle that class action based on a minute subset of the allegedly noncompliant ADP wage statements.  They certainly were free for settlement purposes to assume that all ADP wage statements issued to all class members were noncompliant.  But settling a case and proving a case are two entirely different matters.  Here, China Grill must present hard evidence of ADP's breach and establish that this breach caused its alleged damages.  This China Grill cannot do because it admittedly

lacks the requisite documentary proof.  ADP respectfully submits that, at a minimum, the absence of any documentary proof that it breached the MSA by generating noncompliant wage statements to 99.75 percent of the class in the James Action compels the entry of partial summary judgment with respect to the breach of contract claim.

## <u>CONCLUSION</u>

For the reasons set forth above, ADP respectfully requests that the Court enter summary judgment in its favor on the breach of contract claim asserted in Count I of the Amended Complaint.

Dated:   New York, New York
         June 19, 2020

Respectfully submitted,

KELLEY DRYE & WARREN LLP

By:  /s/ William S. Gyves
     William S. Gyves
     Randall L. Morrison, Jr.
     Robert N. Ward

101 Park Avenue
New York, New York 10178
Telephone:  (212) 808-7800
Facsimile:  (212) 808-7897
wgyves@kelleydrye.com
rmorrison@kelleydrye.com
rward@kelleydrye.com

Attorneys for Defendant