IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X
                                                                     :
CHINA GRILL INC.,
                                                                     :
                                    Plaintiff,            **Case No.: 19-CV-03705**
                                                                     :
                    -v-
                                                                     :
ADP, LLC,
                                                                     :
                                    Defendant.
                                                                     :
-----------------------------------------------------------------------X

### PLAINTIFF CHINA GRILL INC.'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT ADP LLC'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF CROSS-MOTION TO AMEND AND REMAND

KRAUS & ZUCHLEWSI LLP
Robert D. Kraus, Esq.
Pearl Zuchlewski, Esq.
60 East 42nd Street
Suite 2534
New York, New York 10165
212-869-4646
Attorneys for Plaintiff

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ......................................................................................1

BACKGROUND ............................................................................................................3

    A. Relevant Procedural History ................................................................................3
    B. The First Amended Complaint..............................................................................5
    C. Proposed Second Amended Complaint.................................................................5
    D. The MSA...............................................................................................................6
      i. The Client Group............................................................................................6
    E. The Implied Client Group ....................................................................................7
    F. Direct And Consequential Damages.....................................................................8
    G. The Deficient Wage Statements...........................................................................8

ARGUMENT ................................................................................................................9

    POINT I   ADP IGNORES CHINA GRILL'S DIRECT DAMAGES .....................................9

    POINT II   ADP CANNOT BAR CONSEQUENTIAL DAMAGES ...................................11

    POINT III   ADP PREPARED NON-COMPLIANT WAGE
              STATEMENTS FOR EVERY SINGLE NEW YORK BASED
              PLAINTIFF IN THE JAMES ACTION ..............................................15

    POINT IV   LEAVE TO AMEND SHOULD BE GRANTED ...............................................16

        A. Legal Standard.................................................................................................17
        B. No Bad Faith Motive .......................................................................................18
        C. There Has Been No Undue Delay ....................................................................18
        D. Defendant Will Not Suffer Undue Prejudice...................................................19
        E. China Grill's Proposed Amendment Is Not Futile ...........................................21

    POINT V  THE ACTION SHOULD BE REMANDED FOR
             LACK OF SUBJECT MATTER JURISDICTION ...............................................21

        A. The Client Group and Implied Client Group are Indispensable Parties....................21

        B. Accepting ADP's Argument Means Subject Matter
           Jurisdiction is Lacking.................................................................................24

CONCLUSION ...........................................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*Addison v. Reitman Blackstrap, Inc.*  283 F.R.D. 74, (E.D.N.Y. 2011)............................................17

*Associated Dry Goods Corp. v. Towers Financial Corp.,* 920 F.2d 1121 (2d Cir. 1990) ................22

*Auquilla v. GG&A Broadway Partners, LLC,* No. 11-CV-1059 SLT JO,
    2011 WL 2006309 (E.D.N.Y. May 23, 2011)..............................................................................22

*Auquilla v. GG&A Broadway Partners, LLC,.,* No. 10-CV-1059 SLT JO, 2011 WL 2014778
    (E.D.N.Y. Apr. 25, 2011) ............................................................................................................22

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, (2007) ....................................................................21

*Block v. First Blood Assoc.,* 988 F.2d 344, (2d Cir. 1991) ..............................................................19

*Block v. First Blood Assocs.,* 988 F.2d 344, (2d Cir. 1993)............................................................20

*Borough of Princeton v, Bd. Of Chosen Freeholders of Mercer*, 333
    N.J. Super. 310, 755 A.2d 637 (App. Div. 2000), aff'd 169 N.J. 135, 777 A.2d 19 (2001)..........12

*Broadway Maint. Corp. v. Rutgers, The State Univ.*, 90 N.J. 253, 447 A.2d 906 (1982).................12

*Cruz-Mendez v. ISU/Ins. Servs. Of S.F.*, 156 N.J. 556, 772 A.2d 515 (1999) ..................................12

*Dluhos v. Floating & Abandoned Vessel,* 162 F.3d 63, (2d Cir. 1998) ............................................21

*Driscoll Constr. Co. v. N. J. Dep't of Transp.*, 371 N.J. Super. 304, 853 A.2d 270 (App. Div. 2004)
    ...................................................................................................................................................11

*Evans v. Syracuse City School Dist.,* 704 F.2d 44 (2d Cir. 1983)...................................................18

*Foman v. Davis,* 371 U.S. 178 (1962).............................................................................................17

*Homann v. Torchinsky*, 296 N.J. Super. 326, 686 A.2d 1226 (App. Div.), *cert. denied*, 149 N.J. 141,
    693 A.2d 110 (1997).....................................................................................................................11

*India Com. Inc. v. Dalal*, 412 F.3d 315 (2d Cir. 2005) ...................................................................13

*Jin v. Metro. Life Ins. Co.,* 310 F.3d 84 (2d Cir. 2002).................................................................17

*Krosnowski v. Krosnowski*, 22 N.J. 376, 126 A. 2d 182 (1956) ......................................................11

*McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184 (2d Cir. 2007).........................................17, 18

*Monahan v. New York City Dep't/Corrections,* 214 F.3d 275 (2d Cir. 2000)...................................20

*Onderdonk v. Presbyterian Homes of N.J.*, 85 N.J. 171, 425 A.2d 1057 (1981) ...............................11

*Pickett v. Majors Touring Inc.* 330 F.R.D. 140 (S.D.N.Y. 2019) ......................................17

*Posadas de Mexico, SA. de C.V v. Dukes,* 757 F. Supp. 297 (S.D.N.Y. 1991) .................................18

*Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102,
   19 L. Ed. 2d 936, 88 S. Ct. 733 (1968) ..............................................................22

*Rachman Bag Co. v. Liberty Mut. Ins. Co.,* 46 F.3d 230 (2d Cir. 1995) ..........................................19

*Richardson Greenshields Sec., Inc. v. Lau,* 825 F.2d 647, 653 n. 6 (2d Cir. 1987).........................18

*Rhone-Poulenc, Inc. v. International Ins. Co.,* 71 F.3d 1299 (7th Cir. 1995)...................................23

*Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774 (2d Cir. 1984)......21

*Scheuer v. Rhodes,* 416 U.S. 232 (1974)...............................................................................21

*State Teachers Ret. Bd. v. Fluor Corp.,* 654 F.2d 843 (2d Cir. 1981) .......................................17, 19

*Stonewell Corp. v. Conestoga Title Ins.,* No. 04 CV 9867 (KMW)
   (GWG), 2010 WL 647531 (S.D.N.Y. Feb. 18, 2010) ..................................................20

*United States on behalf of Maritime Admin. v. Continental Ill. Nat'l Bank & Trust Co.,* 889 F.2d
   1248 (2d Cir. 1989) ....................................................................................20

## Statutes
28 U.S.C. 1332(a)....................................................................................................24
28 U.S.C§1447(e)...............................................................................................1, 23

## Rules
Federal Rule of Civil Procedure, Rule 56(a) ..........................................................1
FRCP, R. 15 and R. 21 ........................................................................................1
*Rule 19(b)* ...........................................................................................22, 23, 24

## PRELIMINARY STATEMENT

Plaintiff China Grill, Inc. ("China Grill") respectfully submits this memorandum of law in opposition to defendant ADP, LLC's ("ADP") motion pursuant to Federal Rule of Civil Procedure, Rule 56(a) ("FRCP") for summary judgment on plaintiff China Grill's single claim for breach of contract, and in support of China Grill's cross-motion for leave to amend pursuant to FRCP, R. 15 and R. 21, and to remand pursuant to 28 U.S.C§1447(e).

ADP raises three arguments in support of its motion for summary judgment, each of which argues that China Grill did not suffer any damages and therefore cannot sustain its single breach of contract claim.  ADP first argues that China Grill, the sole signatory to ADP's Master Services Agreement dated March 2005 (as amended, the "MSA"), did not sustain any damages because it did not pay out any monies in connection with the settlement of a class action (the "James Action") which alleged that the wage statements prepared by ADP failed to comply with New York's Wage Theft Prevention Act ("WTPA") and other wage and hour laws.  Rather, it was certain of China Grill's affiliates which are not signatories to the MSA that paid the settlement amounts and they, effectively, are the proper party plaintiffs.  Second, ADP argues that the costs of resolving the James Action constitute consequential damages barred by the limitation of liability provisions in the MSA.  Finally, ADP argues that China Grill cannot prove that ADP breached the MSA with respect to the vast majority of class members in the James Action because it only analyzed the wage statements for the named plaintiffs.

ADP's first argument fails because it ignores the fees that China Grill and certain affiliates paid under the MSA for the payroll services that ADP agreed, but failed, to render; i.e. services designed to assist China Grill and affiliates in complying with the WTPA.  Those payroll processing fees are damages arising directly from ADP's breach and are recoverable

breach of contract damages, irrespective of any argument advanced by ADP regarding the consequential damages incurred in connection with the James Action.

Regarding ADP's second argument, although it is true that China Grill did not ultimately contribute to the settlement of the James Action, that should not bar it from seeking to recover amounts paid by its affiliates for a number of reasons. The MSA defines China Grill and certain affiliated "Client Group" entities identified therein as one and same: *i.e.*, it states that "Client Group" means "Client". The MSA also requires that each of the entities in the Client Group comply with the MSA's provisions applicable to the Client. Effectively the MSA is an exclusive arrangement with China Grill regarding ADP's rendering of services to it and the Client Group. For all these reasons, and because China Grill is the sole signatory to the MSA, it should be able to sue to enforce the rights of its affiliates, including many of which are no longer operating.

ADP's attempt to bar recovery of consequential damages also is inconsistent with the express terms of the MSA. By its express terms the limitation of liability clause only bars the Client - - i.e., China Grill -- from recovering consequential damages. It does not bar the Client Group, and it certainly does not bar those affiliates identified below that ADP treated them as though they were part of the Client Group, even though it never identified them as such in the MSA (the "Implied Client Group"). To the extent that China Grill's affiliates, both the Client Group and the Implied Client Group, must be named as additional plaintiffs because they are the legal entities that paid (i) a portion of ADP's fees in addition to those paid by China Grill (direct damages), and (ii) the costs and expenses incurred in settlement of the James Action (consequential damages), plaintiff's cross-motion seeks leave to amend and add them as parties. Since the additional parties are indispensable and several of them are non-diverse, the action having been removed by ADP, must be remanded to State Court pursuant to 28 U.S.C. 1447(e).

ADP's final argument fails because China Grill need not have analyzed every wage statement to know with reasonable certainty that all the wage statements suffered the same deficiencies under the WTPA.  The ADP display codes that caused a particular item to display as part of the wage statements -- or more accurately in this case, not display -- were the same across all the restaurants and all tipped employees.  As a result, the information not displayed on the statements that were reviewed -- basic inputs like gross hourly wage and tip credit rate -- was necessarily also absent from all the other wage statements at issue.

## BACKGROUND

### A.    Relevant Procedural History

Plaintiff initially filed this action in New York State Supreme Court by means of a Summons and Complaint on or about March 28, 2019 (DE 1). On April 25, 2019, ADP removed the action to this Court (DE 1)[1].  Subsequently, ADP filed a motion to dismiss on May 2, 2019 (DE 7 – 10).  On May 24, 2019, plaintiff filed a First Amended Complaint which rendered ADP's dismissal motion moot (DE 12).  ADP thereafter filed a partial motion to dismiss and to strike[2] on June 7, 2019 (DE 14-17), which the parties resolved on July 1, 2019 by way of a Notice of Partial Dismissal (DE 22).  ADP filed its Answer to China Grill's First Amended Complaint on July 15, 2019.

The Court conducted an Initial Pretrial Conference on July 26, 2019 (DE 28).  As part of the Pretrial Scheduling Order that followed, the parties were directed to contact the chambers of the Magistrate Judge Lehrburger by August 2nd to pursue settlement discussions, and an order was entered referring the case to him for settlement purposes (DE 29).  The Scheduling Order set a deadline of August 9th, two weeks forward, for amending pleadings or adding parties.  On

---

[1] DE denotes references to entries in the Civil Docket in this action.
[2] No argument was made that the Client Group or Implied Client Group entities were the real parties in interest and were indispensable parties.

September 9, 2019, Magistrate Judge Lehrburger signed a scheduling order requiring pre-conference submissions by October 15, 2019.  Thereafter, Magistrate Judge Lehrburger held proceedings on October 8 and 22, 2019 (DE 31).  The mediation concluded without resolution on or about November 26, 2019 (DE 33).

A proposed scheduling order was filed on December 9, 2019, with the parties jointly requesting an extension of the discovery deadlines set forth in the July 26, 2019 scheduling order (DE 33).  The extension was requested because the parties had placed discovery on hold during their extensive four months of settlement efforts.  *Id.*  An extension of fact discovery was granted, but the deadline for summary judgment motions remained April 26, 2019 (DE 33).

On January 17, 2020, China Grill timely served Responses and Objections to ADP's 112 item Requests for Admissions, 108 item Document Request and 16 item First Set of Interrogatories.  Kraus Decl., Exs. "I", "J" and "K".  Plaintiff also produced two thumb drives of responsive documents and advised that there were tons of cartons of additional documents available for inspection at three locations.  Kraus Decl., Ex. "H".

On February 7, 2020, this Court signed a stipulation and order for the production and exchange of confidential information. (DE 26).  On February 18, 2020, ADP delivered its first production of responsive documents.  Its second production was made on February 23, 2020, and its third and final production of responsive documents was made on February 28, 2020.  Kraus Decl., Ex. "L".

On March 18, 2020, ADP requested an extension of the discovery deadlines due to the Coronavirus pandemic (DE 37).  The court granted an eight-week extension the following day.  (DE 38).  Each of the parties thereafter conducted a 30(b)(6) deposition of the other party. China Grill deposed ADP, by Tara Albritton, on or about May 29, 2020, Kraus Decl., Ex. "L",

and ADP deposed China Grill by Neil Faggen on or about June 1, 2020. Kraus Decl. Ex. "A".

On June 19, 2020, ADP submitted its summary judgment motion (DE 39-43).

### B.    The First Amended Complaint

The First Amended Complaint ("FAC") states a single claim for breach of contract arising out of ADP's "reckless and grossly negligent provision of critical payroll services to China Grill and its affiliates." Kraus Decl., Ex. "E", ¶1. The FAC alleges that ADP breached the MSA by failing to render services designed to assist China Grill in complying with the WTPA. *Id.*, at ¶ 18, 19 and 20; Kraus Decl., Ex. "C", sect. 2.3. As a result of ADP's breaches, the FAC alleges that China Grill suffered an estimated $2,000,000 in damages. *Id.* at ¶56. China Grill's affiliates are not individually defined anywhere in the FAC. Kraus Decl., Ex. "C". The FAC further alleges that China Grill and its affiliates employed numerous tipped employees *Id.* at ¶9. The FAC also quotes the MSA's section 2.1 which provides that "Client will use the services only for internal purposes of the Client and the Client Group." *Id.* at 1.6.

### C.    Proposed Second Amended Complaint

China Grill's cross-motion seeks leave to file a Second Amended Complaint that adds as plaintiffs on the breach of contract claim those Client Group entities that paid fees under the MSA (direct damages) and contributed to payments made in settlement of the James Action (consequential damages). It also adds a single claim for breach of implied contract with respect to the Implied Client Group entities that also paid fees in accordance with the MSA and contributed to settlement of the James Action. Kraus Decl., Ex. "F" & "G".

**D.**    <u>**The MSA**</u>

    i.    <u>The Client Group</u>

The MSA defines the Client Group to which ADP agreed to render services to include

China Grill Inc and the following affiliated entities:

> 1.6  "Client Group" means Client, Client's majority owned
> subsidiaries, and affiliates of Client.  Affiliates are listed in
> Section 1 of Annex Z.

Kraus Decl., Ex. "C".

The MSA specifically identifies the Client Group in Section 1 of Annex Z.  Section 1 of

Annex Z, as amended, defines The Client Group to include the following entities, all of which

paid fees to ADP for services it failed to render, thereby leading to the James Action.  Kraus

Decl., Ex. "C", Faggen Decl., Ex. "1":

> China Grill Inc.
> CGM-GH LLC
> China Grill Management, Inc.
> China Grill Management 12 E 22 LLC
> China Grill SOBE, Inc.
> China Grill-Chicago LLC
> CGM-LLNR LLC
> CGM EMP LLC
> CGM EMP RTP LLC
> CGM 13 LLC
> CGM Yotel NYC LLC
> China Grill Ftl LLC

The MSA specifies that "Client" - - <u>i.e.</u>, China Grill - - has the direct obligation to pay for

the services rendered by ADP irrespective of which entity in the Client Group receives the

services.  Kraus Decl., Ex. "C", Section 3.1.

    1.   Section 3.1 of the MSA states as follows:

> 3.1  Fees for Services.  Client will pay ADP for the Services at
> the fees shown in Annex Z.  Client will pay those fees
> regardless of which entity in the Client Group receives the
> Services.  The fees in Annex Z are based upon current
> requirements, specifications, volumes and quantities vary

> materially from those communicated to ADP.  The fees in
> Annex Z do not include amounts to be paid by Client to third
> parties in connection with the Services.  Reasonable travel and
> out-of-pocket expenses are payable by Client in addition in the
> fees in Annex Z.

*Id.*  Notwithstanding China Grill's direct obligation, each entity in the Client Group paid for the

services rendered to it.  Faggen Decl., Ex. "1".  China Grill also paid fees directly to ADP.  *Id*.

Annex Z to the MSA, at its section 6, specifies the fees paid for the specific payroll

services to be rendered by ADP, as follows:

SECTION 6   PAYROLL SERVICES AND FEES.

| | | |
|---|---|---|
| Pays | $1.09 per | $20 minimum |
| Check Signing | Inc. | |
| Check Stuffing | .08 per | |
| Direct Deposit | $.05 per | |
| New Hire Reporting | $2 per | |
| SDA Monthly Fee | $350 | |
| SDA Per Processing | .18 | |
| Full Service Direct Deposit | .20 | |
| In Line Management Report | .015 per | $15 minimum |
| In Line Monthly Management Report | .025 per | $20 minimum |
| All Other Management Reports | .025 per | $50 minimum |
| LAN (Monthly Fee) | $25 | |
| Courier Delivery (If applicable) | $7 | |
| Fed Ex:   0 <10 lb package | $9 | |
|          10+   lb package | $15 max | |
| W2s* | $3.25 per | |

Kraus Decl., Ex. "C",  Annex Z.

**E.      The Implied Client Group**

ADP rendered the same payroll services to the Implied Client Group as it did to China

Grill and the Client Group.  The fees paid by the Implied Client Group were calculated in the

same manner as were the fees paid by China Grill and the Client Group.  Faggen Decl., Ex. "1"

and ¶4.  ADP failed to render the same services to the Implied Client Group as it did to China

Grill and the Client Group when it produced the non-compliant wage statements.  As a result of

ADP's breach, the Implied Client Group was also named as defendants in the James Action and paid certain amounts in settlement thereof.  Faggen Decl., Ex. "6".

###### F.      **Direct And Consequential Damages**

ADP received and collected in excess of $425,000 in fees directly from China Grill, the "Client Group" and the Implied Client Group; fees paid for services not rendered (direct damages).  Faggen Decl., Ex. "1".  All the same entities were named defendants in the James Action, but only some of them contributed to the Settlement of the James Action.  Faggen Decl., Ex. "6".

The out-of-pocket costs and expenses sought to be recovered "in connection with [the] James Action" were approximately $940,000.  Kraus Decl., Ex. "A", 61:15-24; Ex. "A1"; ADP's Statement of Undisputed Material Facts, No. 144; Faggen Decl., Ex. "6".

###### G.      **The Deficient Wage Statements**

ADP prepared wage statements in the same format for each and every of the 1,598 tipped employees based in New York that were at issue in the James Action.  Faggen Decl., ¶5. The ADP codes that generated the wage statements at issue caused particular items to display as part of the wage statements, or more accurately in this case, not display.  In this case, the uniform codes resulted in ADP's wage statements not displaying information required by the WTPA, including most significantly the tipped employee's gross hourly wage rate and the tip credit rate. Faggen Decl., ¶5-12.

The wage statements generated by ADP's display codes were then stuffed by ADP in sealed envelopes and delivered to the various restaurant entities.  Since they arrived in stuffed envelopes, neither China Grill nor any of its affiliated restaurants actually saw the completed wage statements. Faggen Decl., ¶7.

With regard to the named plaintiff James in the James Action, 203 of the 204 pay statements issued him failed to properly show the gross wage rate and the tip credit rate. The only exception was the one time he received non-tipped wages for training purposes. Faggen Decl., ¶8, Ex. "2".

With regard to named plaintiff Kramer in the James Action, 79 of the 80 pay statements issued her failed to properly show the gross wage rate and the tip credit rate. The only exception was the one time she received non-tipped wages for training purposes. Faggen Decl., ¶9, Ex. "3".

With regard to the named plaintiff Rosado in the James Action, 165 of the 166 pay statements issued him failed to properly show the gross wage rate and 164 of the 166 failed to properly show the tip credit rate. These exceptions were solely related to the two times he received non-tipped wages for paid time off.  Faggen Decl., ¶10, Ex. "4".

With regard to the named plaintiff Ballinas in the James Action, 290 of the 305 pay statements issued him failed to properly show the gross wage rate and the tip credit rate. The only exceptions were the fifteen times he received non-tipped wages for other job classifications. Faggen Decl., ¶11, Ex. "5".

China Grill estimates that at least 138,929 wage statements were missing the correct gross wage and tip credit rates.  Faggen Decl., ¶12.

## ARGUMENT

## POINT I

## ADP IGNORES CHINA GRILL'S DIRECT DAMAGES

ADP's argument that China Grill did not suffer any damages because it did not pay out any amounts in connection with the James Action fails for two reasons.  *See* Mov. Memo, pgs. 9-16.  The first reason is that it is based on a flawed premise, *i.e*., that the only damages sought to

be recovered for ADP's breach of contract in failing to render services designed to assist China Grill in complying with its legal responsibilities are the consequential damages flowing from the settlement of the James Action. *Id*. at 9. But ADP may not focus on the consequential damages to the exclusion of the direct damages that China Grill seeks to recover.

China Grill's complaint seeks to recover $2,000,000 in damages ("as a result of ADP's breaches of the MSA as amended, China Grill has been damaged in an amount to be determined at trial but estimated to be at least Two Million Dollars"). Kraus Decl., Ex. "E", ¶56. Of that amount, China Grill seeks to recover only $940,224.52 in out of pocket costs associated with the James Action. *See* ADP's statement of Undisputed Material Facts, ¶144. Faggen Decl., Ex. "6". In addition, there are direct damages consisting of the fees paid under the MSA by China Grill, the Client Group and the Implied Client Group for the payroll services ADP failed to render. Section 5 of Annex Z to the MSA details ADP's fees. Kraus Decl., Ex. "C"; Faggen Decl., Ex. "1". ADP received $1.17 per employee for basic payroll services of paying, check signing and check stuffing. *Id.* As ADP, is well aware, since it collected them, the fees paid directly to ADP by China Grill, the Client Group and the Implied Client Group -- totaled more than $425,000. Faggen Decl., Ex. "1". China Grill itself paid $55,236.85 in fees to ADP for its deficient payroll services. Faggen Decl., Ex. "1". The argument that China Grill, as defined in the MSA to include the Client Group, suffered no damages as a result of ADP's breach disregards the evidence.

## POINT II

### ADP CANNOT BAR
### CONSEQUENTIAL DAMAGES

**A.      China Grill Is Aggrieved And Can Enforce The Rights
Of Client Group Under its Exclusive Contract with ADP**

In addition to ignoring direct damages suffered by China Grill, the Client Group and

Implied Client Group, ADP also argues that China Grill did not suffer damages because it did

not make payments to settle the James Action - - *i.e.*, consequential damages - - but rather such

payments were made by the Client Group and Implied Client Group.  Mov. Memo. at 11-15.

Since China Grill did not make the consequential damage payments to settle the James Action,

ADP therefore argues that China Grill has sustained no damages and cannot claim breach.  *Id.*

ADP's argument is not supported by the terms of the MSA.

Interpreting the MSA's provisions in accord with "justice, common sense and the

probable intent of the parties", *Krosnowski v. Krosnowski*, 22 N.J. 376, 387, 126 A. 2d 182

(1956), the MSA assigned certain obligations (*i.e.*, follow reasonable instructions, pay ADP fees)

and gave certain rights (*i.e.*, to receive the payroll services) to China Grill, both for itself and the

Client Group.  As the sole signatory, it is aggrieved and has standing to enforce rights of the

Client Group entities that are not direct signatories.

The intention of the parties to a contract must be ascertained by looking to the chosen

language, taken in its entirety. *Driscoll Constr. Co. v. N. J. Dep't of Transp.*, 371 N.J. Super.

304, 313, 853 A.2d 270 (App. Div. 2004) (*citing Onderdonk v. Presbyterian Homes of N.J.*, 85

N.J. 171, 184, 425 A.2d 1057 (1981)).[3]  The objectives sought to be achieved by the parties

should also be examined.  *Ibid.*  Although contractual provisions should generally be construed

---

[3] The MSA, at section 9.1 provides that it is to be interpreted in accordance with New Jersey Law.

narrowly against the drafter, "the construction should be sensible and in conformity with the expressed intent of the parties." *Homann v. Torchinsky*, 296 N.J. Super. 326, 335, 686 A.2d 1226 (App. Div.), *cert. denied*, 149 N.J. 141, 693 A.2d 110 (1997) (*quoting Broadway Maint. Corp. v. Rutgers, The State Univ.*, 90 N.J. 253, 271, 447 A.2d 906 (1982)). Black letter law holds that contracts must be read as a whole and, if possible, courts must interpret them to affect the general purpose of the contract. *Cruz-Mendez v. ISU/Ins. Servs. Of S.F.*, 156 N.J. 556, 570-71, 772 A.2d 515 (1999) (goal in interpreting the provisions of a contract is to ascertain the intention of the parties as revealed by the language used, taken as a whole, the parties' situation, the circumstances attendant to their agreement, and the objectives they were striving to attain.)

Applying these well settled principles of contract interpretation, ADP's position that China Grill, the sole signatory to the MSA, cannot seek to recover breach of contract damages for its affiliates identified as part of the "Client Group" lacks merit.  It is inconsistent with the central object of the MSA, which was to have ADP contract with a single signatory, China Grill, on behalf of the Client Group.  Effectively, the MSA is an exclusive arrangement with China Grill under which ADP agreed to render services to it and its related Client Group.

Further, ADP's construction of the MSA renders meaningless several provisions of the MSA, including section 1.6 which defines "'Client Group'" to mean "'Client, Client's majority owned subsidiaries and affiliates of Client."  The MSA also states at its section 2.1 that "Client will use the Services only for the internal business purposes of the Client <u>and the Client Group</u>.  Kraus Decl., Ex. "C".  (emphasis added).

Section 3.1 provides that Client will pay ADP for the services at the fees shown in Annex Z.  *Id.* Although it is true that the Client Group and Implied Client Group entities paid fees directly to ADP, China Grill is in fact personally liable for those payments.  It also paid ADP fees on its own behalf.  Faggen Decl. Ex. "1".

It's a cardinal rule of contract construction that a court should avoid an interpretation that renders a clause meaningless.  Under New Jersey law, effect and meaning must be given to every term of the contract. *Borough of Princeton v, Bd. Of Chosen Freeholders of Mercer*, 333 N.J. Super. 310, 325, 755 A.2d 637 (App. Div. 2000), aff'd 169 N.J. 135, 777 A.2d 19 (2001) ("axiomatic that contract provisions are to be 'read as a whole', without artificial emphasis on one section, with a consequent disregard for others").  New York Law is no different, *India Com. Inc. v. Dalal*, 412 F.3d 315, 323 (2d Cir. 2005).  Here, the fact that the "Client Group" of companies is defined to mean "Client" – *i.e.*, China Grill - - coupled with the fact that China Grill is the sole signatory and was personally liable for the Client Group's payment obligations, establishes that the parties intended for China Grill Inc. to have the right to enforce the contract on behalf of the "Client Group".

Carried to its logical conclusion, ADP's argument would mean either that (i) the Client Group of entities has no remedy because they are neither signatories nor parties to the MSA; or (ii) China Grill as the Client and sole signatory, cannot sue to enforce the rights of its Client Group, and they must be named as party plaintiffs.  The first argument obviously makes no sense and so ADP must be arguing the latter.  But that is easily remedied.

To the extent that the Client Group and the Implied Client Group must be named as plaintiffs because they paid certain (but not all) of ADP's payroll servicing fees (the direct damages sought) and/or because they contributed to the settlement of the James Action (the consequential damages sought), plaintiff's motion seeks leave to amend and add them as party plaintiffs, and then to remand this action to New York State Supreme Court because several of them are non-diverse.  ADP removed this action from Supreme Court of the State of New York, County of New York on or about April 25, 2019 (DE 1).  After interposing two dismissal motions without previously raising this basic jurisdictional issue, ADP now argues that it was not

13

China Grill who had suffered a large part of the $2,000,000 in damages sought in the FAC, but rather the Client Group and Implied Client Group.

      **B.**    **The Terms Of The Limitation Of Liability Clause Do Not Bar Recovery Of Consequential Damages From The Client Group Or Implied Client Group**

ADP cannot have it both ways.  It cannot on the one hand argue that only China Grill, as the sole signatory and only party to the MSA, can claim damages under the MSA, and on the other hand argue that its affiliated entities are bound by the MSA's limitation on liability provisions.  One need not go any further than to consider the Implied Client Group entities. These four China Grill affiliates suffered both direct, and in the case of RF Hudson and RF Broadway consequential damages, yet none are even listed as part of the Client Group on Annex Z to the MSA.  Kraus Decl., Ex. "C".  Each paid fees for ADP's deficient payroll services, Faggen Decl. Ex. "1", and each also suffered consequential damages.  Faggen Decl., Ex. "6". ADP cannot rely on the limitation of liability clause to bar Implied Client Group entities from recovering consequential damages.

ADP's interpretation of the ban on consequential damages also does not comport with the plain language of the exculpatory clause regarding the Client Group.  Here, the express terms of section 7.4 of the MSA only bar one party from recovering consequential damages from the other.  In relevant part, the clause states that "neither ADP nor <u>Client</u> will be responsible [for consequential damages] that the other <u>party</u> may incur."  Kraus Decl., Ex. "C".  (Emphasis supplied.)  Since section 7.4 only bars recovery of consequential damages suffered by the "other party" to the agreement, ADP cannot use section 7.4 to bar the recovery of consequential damages suffered by the Client Group or the Implied Client Group entities since neither is a direct party to the MSA not ever identified.

## POINT III

## ADP PREPARED NON-COMPLIANT
## WAGE STATEMENTS FOR
## EVERY SINGLE NEW YORK
## BASED PLAINTIFF IN THE JAMES ACTION

ADP last argues that "without the full universe of noncompliant wage statements" issued by ADP to the 1,598 class members, China Grill "is unable to prove that ADP breached the MSA with respect to fully 99.75 percent of the employees…" Mov. Memo at 22. Stated differently, ADP argues that China Grill only will be able to prove that .25% of the wage statements were non-complaint. *Id.* at 22-23.  ADP's evidentiary argument about what China Grill may or may not be able to prove at trial deserves short shrift.

As ADP well knows, the wage statements it prepared for each and every tipped employee were in precisely the same format.  Faggen Decl., Exs. "5" and "6". While the pay calculations differed among the 1,598 tipped employees at issue in the James Action because of, for example, hours worked and amounts earned, every single one of their wage statements had the same formatting deficiencies and each was non-compliant with the WTPA.  *Id.*  For example, each and every pay statement issued for tipped wages in New York failed to comply with the WTPA in that it did not properly display the tipped employee's gross hourly wage rate.  Faggen Decl., Exs. "5-12".  In addition, each and every pay statement issued for tipped wages in New York failed to comply with the WTPA in that it did not properly display the tip credit rate for the tipped employees. *Id.*

These two deficiencies in ADP's wage statements were errors in format that existed with regard to each and every one of the 1,598 employees based in New York that were at issue in the James Action. *Id.* In fact, the James Action settlement amounts were allocated to the 1,598 tipped employees based on 138,929 incorrect pay statements issued by ADP. *Id.* at 12.  The ADP

15

display codes that caused a particular item to display as part of the wage statements – or more accurately in this case, not display -- were the same across all the restaurants and all tipped employees.  *Id.* at 6. If one wage statement was improperly coded to block the tip credit and gross wage rates from displaying properly, that necessarily meant that every one of the 138,929 wage statements was, at a minimum, missing the correct gross wage and tip credit rates.  *Id.* at 12.  These deficiencies were plain evidence of non-compliance with the WTPA.

China Grill's review of the wage statements in connection with the James Action showed that 203 of the 204 statements issued to plaintiff James in the James Action failed to properly show the gross wage rate and the tip credit rate. The only exception was the one time he received non-tipped wages for training purposes.  Faggen Decl., Ex. "2".

For the plaintiff Kramer in the James Action, 79 of the 80 wage statements issued her failed to properly show the gross wage rate and the tip credit rate. The only exception was the one time she received non-tipped wages for training purposes.  Faggen Decl., Ex. "3".

For the plaintiff Rosado in the James Action, 165 of the 166 wage statements issued him failed to properly show the gross wage rate and 164 of the 166 failed to properly show the tip credit rate. These exceptions were solely related to the time he received non-tipped wages for paid time off.  Faggen Decl., Ex. "4".

For the plaintiff Ballinas in the James Action, 290 of the 305 pay statements issued him failed to properly show the gross wage rate and the tip credit rate. The only exceptions were the fifteen times he received non-tipped wages for other job classifications.  Faggen Decl., Ex. "5".

## POINT IV

## LEAVE TO AMEND
## SHOULD BE GRANTED

Plaintiff respectfully seeks leave to amend and file a Second Amended Complaint pursuant to FRCP Rules 15 and 21 to add the "Client Group" as well as the Implied Client Group, as plaintiffs.  Because the Implied Client Group entities were treated as though they were covered by the MSA although never specifically identified in the MSA, an implied breach of contract claim is also asserted on their behalf.

### A.      Legal Standard

Federal Rule of Civil Procedure 15(a) allows a party to amend its pleadings by leave of the court, and further directs that "leave shall be freely given when justice so requires." FRCP Rule 15(a).  When adding parties FRCP Rule 21 is also implicated.  However, the standard under Rule 21 bears little practical difference.  *See Pickett v. Majors Touring Inc.* 330 F.R.D. 140, 142 (S.D.N.Y. 2019) (in deciding whether to permit Joinder, courts apply same standard liberality afforded motions to amend pleadings under Rule 15, *quoting Addison v. Reitman Blackstrap, Inc.* 283 F.R.D. 74, 79 (E.D.N.Y. 2011).  Indeed, "it is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 200 (2d Cir. 2007). Absent "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis,* 371 U.S. 178, 182 (1962); *see also McCarthy,* 482 F.3d at 200 ("A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party. However, '[o]utright refusal to grant the leave without any

justifying reason for the denial is an abuse of discretion."' *quoting Jin v. Metro. Life Ins. Co.,* 310 F.3d 84, 101 (2d Cir. 2002)) (internal citation omitted)).

The Second Circuit has interpreted the *Foman* standard to allow amendments, even if there was substantial delay in seeking the same, unless the movant has acted in bad faith, the amendment will prejudice the non-movant, or the amendment is futile. *See State Teachers Ret. Bd. v. Fluor Corp.,* 654 F.2d 843, 856 (2d Cir. 1981) ("Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend."); *accord Block v. First Blood Assoc.,* 988 F.2d 344, 350 (2d Cir. 1991), *quoting Fluor,* 654 F.2d at 856); *Richardson Greenshields Sec., Inc. v. Lau,* 825 F.2d 647, 653 n. 6 (2d Cir. 1987); *see also Posadas de Mexico, SA. de C.V v. Dukes,* 757 F. Supp. 297, 300 (S.D.N.Y. 1991) (recognizing that leave to amend should be given unless the motion for leave is the product of bad faith or dilatory motive, or amendment will prejudice the adversary or be futile). An analysis of the facts cited in *Foman* favor the grant of leave to amend.

### B.    No Bad Faith Motive

China Grill has not acted in bad faith or with a dilatory motive.  China Grill seeks to amend the FAC and add the Client Group and the Implied Client Group.  China Grill seeks to add these party plaintiffs in order to cure the objection belatedly raised by ADP which in substance argues that they are indispensable parties whose rights cannot be enforced by China Grill.  The parties sought to be added are plainly proper.  Their rights derive from the same occurrence – breach of the MSA - - and they present precisely the same questions of law and fact regarding whether ADP breached the MSA by failing to render services designed to assist the parties in complying with applicable legal and regulatory responsibilities.  Kraus Decl., Ex. "C", section 2.3.  There is no dilatory or other improper motive.  Discovery has been completed.

### C.      There Has Been No Undue Delay

Undue delay in bringing a motion to amend a pleading is measured not simply in length of time. The key is whether the delay is *undue,* which takes into account the timing of other events in the litigation. *See, e.g., McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 202 (2d Cir. 2007) (plaintiffs' motion to amend complaint was properly denied where it was sought "after an inordinate delay" of two years after filing the original complaint, after discovery had closed, and after defendants had filed for summary judgment); *Evans v. Syracuse City School Dist.,* 704 F.2d 44 (2d Cir. 1983) (amendment on the eve of trial impermissible due to undue delay). Further, delay alone, absent of an additional basis for denial, does not usually warrant denying a request for leave to amend. *Rachman Bag Co. v. Liberty Mut. Ins. Co.,* 46 F.3d 230, 234 (2d Cir. 1995); *State Teachers Retirement Bd. v. Fluor Corp.,* 654 F.2d 843, 856 (2d Cir. 1981).

The scheduling order set a deadline pre-discovery of two weeks thereafter to amend the complaint, and it also referred the case immediately to Magistrate Judge Lehrburger for settlement purposes. (DE 28).  As a result, discovery was placed on hold and paper discovery only began in January and continued through the very end of February 2020.  Kraus Decl., Ex. "L".  The completion of discovery was delayed by the Covid-19 crisis and the parties requested, and the court granted, an eight-week extension to complete discovery and submit summary judgment motions. (DE).  Depositions were conducted remotely on May 29 and June 1, 2020, Kraus Decl., Ex. "A", and ADP submitted its summary judgment motion on June 19, 2020 (DE 39-43).

China Grill has taken all the necessary steps to move its case forward through discovery, consistent with Court's scheduling orders.  The parties moved with diligence to promptly pursue settlement discussions and placed discovery (and other motion practice) on hold as soon as this Court referred the matter to Magistrate Judge Lehrburger for settlement purposes.  (DE 32).

Plaintiff did not obtain defendant's document production in full until February 28, 2020.  Kraus Decl., Ex. "L".  Shortly thereafter, Covid-19 interfered with the pursuit of the action for some time.  There has been no undue delay.

### D.      Defendant Will Not Suffer Undue Prejudice

In determining whether a party would be unduly prejudiced by a proposed amendment to a complaint, the courts consider "whether the assertion of the new claim[s]...would (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; or (ii) significantly delay the resolution of the dispute...." *Monahan v. New York City Dep't/Corrections,* 214 F.3d 275, 284 (2d Cir. 2000) (*citing Block v. First Blood Assocs.,* 988 F.2d 344, 350 (2d Cir. 1993)).

The burden of establishing that the proposed amendment would be prejudicial or cause undue delay is on the party opposing the motion for leave to amend. *Stonewell Corp. v. Conestoga Title Ins.,* No. 04 CV 9867 (KMW) (GWG), 2010 WL 647531, at *2 (S.D.N.Y. Feb. 18, 2010). And, as the Second Circuit has made clear, "the adverse party's burden of undertaking [additional] discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading." *United States on behalf of Maritime Admin. v. Continental Ill. Nat'l Bank & Trust Co.,* 889 F.2d 1248, 1255 (2d Cir. 1989).

Here, no additional discovery will be required as a result of the proposed Amended Complaint.  ADP has always known the identity of the companies in the Client Group and Implied Client Group.  Since it assigned them client codes and rendered payroll services to them, ADP knows the fees it collected (direct damages) and has had full discovery about the payments the connection with the James Action (consequential damages).  Allowing amendment of the complaint will not cause ADP to expend any additional resources or significantly delay the

action because discovery has been completed.  China Grill responded to ADP's Request for

Admissions (112 items), Document Request (108 items) and First Set of Interrogatories (16

items). It complied with the single request for a deposition and produced tens of thousands of

pages of documents.  Kraus Decl., Ex. "H", and "A".   No additional discovery should be

required by the proposed amended complaint because it arises out of the same breach about

which the parties have conducted full and comprehensive discovery.  The only differences are

that China Grill's affiliates are now specifically identified and an implied breach of contract

claim is stated since the Implied Client Group was never identified in the MSA, although ADP

treated it as having been.

### E.  China Grill's Proposed Amendment Is Not Futile

When a proposed amendment appears insufficient to withstand a motion to dismiss, it is

futile and leave to amend should be denied. *Dluhos v. Floating & Abandoned Vessel,* 162 F.3d

63, 74 (2d Cir. 1998). But an amendment is not futile if the moving party shows "at least

colorable grounds for relief." *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc.,*

748 F.2d 774, 783 (2d Cir. 1984). "Colorable grounds" is a minimal standard.  Even if the

movant's ultimate chance for recovery is "very remote and unlikely," a properly pleaded

complaint may nonetheless proceed. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007)

*quoting Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).  Here plaintiff's proposed Second

Amended Complaint presents more than colorable grounds of relief.  Kraus Decl., Ex. "F".  It

alleges the same breach by same defendant of the same agreement.  *Id.*  As stated above, the only

substantive difference is that all of China Grill's affiliates that paid any fees for services not

rendered, and also suffered consequential damages are now expressly identified.  Additionally,

an implied breach of contract claim has been added.

## POINT V

## THE ACTION SHOULD BE REMANDED FOR
## LACK OF SUBJECT MATTER JURISDICTION

### A.      The Client Group and Implied
###           Client Group are Indispensable Parties

Plaintiff seeks leave to amend the FAC to add as plaintiffs the Client Group of

companies identified in the MSA, as well as the Implied Client Group entities.  However, several

of those entities are limited liability companies organized under the laws of the State of

Delaware[4], as is ADP.  Kraus Decl., Ex. "F, at ¶¶s. 7, 8,10, 13 and 14".  Accordingly, diversity

jurisdiction is absent.  "Where the plaintiff in a case that has been removed to federal court seeks

to join a non-diverse defendant whose addition to the case would " destroy subject matter

jurisdiction ," the trial court can either allow joinder and remand the action to the state court in

which it was filed or deny joinder and retain jurisdiction over the case." *Auquilla v. GG&A*

*Broadway Partners, LLC,* No. 10-CV-1059 SLT JO, 2011 WL 2014778, at *1 (E.D.N.Y. Apr.

25, 2011), *report and recommendation adopted sub nom. Auquilla v. GG&A Broadway Partners,*

*LLC,* No. 11-CV-1059 SLT JO, 2011 WL 2006309 (E.D.N.Y. May 23, 2011) (*citing* 28 U.S.C. §

1447(e)).

Whether a party is indispensable requires an assessment on a case-specific basis of whether

in "equity and good conscience" the action should proceed in the absence of the necessary party.

*Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 118, 19 L. Ed. 2d 936, 88

S. Ct. 733 (1968).  *Rule 19(b)* sets forth four relevant factors to be considered: first, to what

extent a judgment rendered in the person's absence might be prejudicial to the person or those

---

[4] The Delaware entities are CGM EMP LLC; CGM EMP RTP LLC, CGM-GH LLC, CGM Yotel NYC LLC, China
Grill Management 12 E. 22 LLC, RF Hudson LLC and CG Brickell LLC.

already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.  FRCP Rule *19(b), Fed. R. Civ. P.*

As the Second Circuit pointed out in *Associated Dry Goods Corp. v. Towers Financial Corp.,* 920 F.2d 1121 (2d Cir. 1990), *Rule 19(b)* does not assign a relative weight to each of the factors. Instead, the Rule allows the court to determine the emphasis to be placed on each consideration according to the facts of the case and in light of the "equity and good conscience" test prescribed by the Rule. *Id.* at 1124. *"Rule 19(b)* sets forth a standard, not a rigid rule . . . A party is indispensable only if it would be unjust (against 'equity and good conscience' in the words of the rule) to allow the litigation to proceed in his absence." *Rhone-Poulenc, Inc. v. International Ins. Co.,* 71 F.3d 1299, 1301 (7th Cir. 1995).

As to the first factor of *Rule 19(b)*, there is no prejudice to ADP.  In fact, ADP's motion points up the potential prejudice that exists if the Client Group and Implied Client Group are not added as plaintiffs; specifically, ADP faces the prospect of multiple suits arising out of precisely the same alleged breach of the MSA.

Regarding the second factor, it is difficult to envision measures that could insulate ADP from additional lawsuits.  For example, in the case of the Implied Client Group, the entities are not ever identified in the MSA.  As a result, they cannot be bound by any judgment. Furthermore, accepting defendant's argument that the MSA bars the recovery of consequential damages, then subject matter jurisdiction over this action does not exist because China Grill only suffered $55,236.86 in <u>direct</u> damages, and that amount does not meet the jurisdictional limit for diversity jurisdiction under 28 U.S.C. 1332(a).  Faggen Decl., Ex. "1".

As to the third factor, while a judgment in the absence of the Client Group and Implied Client Group may be "adequate" as to the plaintiff China Grill Inc. and defendant ADP LLC, it obviously will not resolve the entire controversy and will only engender piecemeal litigation.

The fourth factor similarly weighs in favor of indispensability because the plaintiff will have a remedy if the action is remanded; it will pursue its remedies as part of the state court action.

Applying the factors of Rule 19(b), plaintiff respectfully submits that the Client Group and Implied Client Group are indispensable parties some certain of them are non-diverse; the action should therefore be remanded to State Supreme Court pursuant to 28 U.S.C 1447(e).

### B.   Accepting ADP's Argument Means Subject Matter Jurisdiction is Lacking

To the extent that this Court accepts ADP's argument that China Grill cannot enforce the rights of the Client Group or Implied Client Group under the MSA, or denies plaintiffs' cross-motion to amend, then subject matter jurisdiction is still lacking.  It is lacking because China Grill itself incurred only $55,236.85 in direct damages in the form of fees paid to ADP for services not rendered Faggen Decl., Ex. "1", an amount insufficient to meet the amount in controversy requirements for diversity jurisdiction 28 U.S.C. 1332(a).  And while addition as plaintiffs of the Client Group and Implied Client Group would satisfy the amount in controversy requirement, certain of those parties are non-diverse.  See infra at FN 4.  Since they are indispensable parties and the sole basis for this Court's jurisdiction is diversity jurisdiction, the action should be remanded to State Court, where it was originally filed, pursuant to 28 U.S.C. 1447(e).  For that reason, and because the court lacks subject matter jurisdiction over plaintiff China Grill, Inc., the action should be remanded to New York State Supreme Court.

**CONCLUSION**

For all of the foregoing reasons, ADP's motion for summary judgment should be denied

in its entirety, and China Grill's cross-motion to amend and remand this action be granted.

Dated: New York, New York
      July 31, 2020

Yours, etc.

KRAUS & ZUCHLEWSKI LLP

By: */s/ Robert D. Kraus*
    Robert D. Kraus, Esq.  (RK9354)
    60 East 42nd Street, Suite 2534
    New York, New York 10165
    212-869-4646
    rk@kzlaw.net
    *Counsel to Plaintiff*

To:    William Gyves
        Kelley Drye & Warren LLP
        101 Park Ave
        New York, NY 10178