UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

CHINA GRILL, INC.,                                     :
                                                       :
                              Plaintiff,               :
                                                       :
              vs.                                      :         19-CV-3705 (DLC)
                                                       :
ADP, LLC,                                              :
                                                       :
                              Defendant.               :

---------------------------------------------------------x

---

## DEFENDANT ADP, LLC'S MEMORANDUM OF LAW IN OPPOSITION TO CROSS-MOTION FOR LEAVE TO AMEND

---

KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York 10178
(212) 808-7800
Attorneys for Defendant

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ..........................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND........................................................3

      A.     The May 2, 2019 Order:  "Unlikely Plaintiff
            Will Have Another Opportunity to Amend"..............................................3

      B.     The Scheduling Order:  "No Additional Parties
            May Be Joined or Pleadings Amended" ...................................................4

      C.     The Amended Scheduling Order:  No Further
            Amendment or Joinder Sought and None Permitted .............................5

      D.     The March 19, 2020 Order:  No Further Amendment or
            Joinder Sought and None Permitted ........................................................6

      E.     Discovery Concludes and ADP Files
            Its Motion for Summary Judgment ..........................................................7

      F.     The June 23, 2020 Order:  Additional Time
            Granted for China Grill to File Its "Cross-Motion".............................7

ARGUMENT ..................................................................................................................8

POINT I.     THE CONTROLLING LEGAL PRINCIPLES .........................................8

      A.     Amendments After the Entry of a Scheduling Order............................8

      B.     Joinder After the Entry of a Scheduling Order .....................................9

POINT II.    CHINA GRILL HAS FAILED TO DEMONSTRATE "GOOD CAUSE"
              FOR RELIEF FROM THE SCHEDULING ORDER ............................10

      A.     The Joinder Motion Fails .......................................................................12

      B.     The Motion to Amend Fails ...................................................................15

      C.     Prejudice to ADP ...................................................................................18

POINT III.   CHINA GRILL'S REMAND ARGUMENT IS BASELESS ................22

CONCLUSION..............................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

Ansam Associates, Inc. v. Cola Petroleum, Ltd.,
  760 F.2d 442 (2d Cir. 1985).................................................................21

Bayerische Landesbank v. Aladdin Capital Management LLC,
  289 F.R.D. 401 (S.D.N.Y. 2013) ....................................................13, 14

BPP Illiniois, LLC v. Royal Bank of Scotland Group,
  859 F.3d 188 (2d Cir. 2017)..................................................................9

Camacho v. City of New York,
  2020 WL 4014902 (S.D.N.Y. July 16, 2020) ...................................8, 20

Christians of California, Inc. v. Clive Christian New York, LLP,
  2014 WL 3605526 (S.D.N.Y. July 18, 2014) ...................................9, 16

City of Almaty v. Ablyazov,
  278 F. Supp. 3d 776 (S.D.N.Y 2017)................................................9, 10

DiChiara v. Ample Faith Investments Limited,
  2006 WL 3431197 (S.D.N.Y. Nov. 29, 2006)........................................24

Downtown Music Publishing LLC v. Peloton Interactive, Inc.,
  436 F. Supp. 3d 754 (S.D.N.Y. 2020)....................................................8

Estate of Ratcliffe v. Pradera Realty Co.,
  2007 WL 3084977 (S.D.N.Y. Oct. 19, 2007) ........................................18

In re General Electric Company Securities Litigation,
  2012 WL 2892376 (S.D.N.Y. July 12, 2012) ...................................8, 20

Grochowski v. Phoenix Construction,
  318 F.3d 80 (2d Cir. 2003)...................................................................21

Gullo v. City of New York,
  540 F. Appx. 45 (2d Cir. 2013).............................................................18

Holmes v. Grubman,
  568 F.3d 329 (2d Cir. 2009)...................................................................9

Kassner v. 2nd Avenue Delicatessen Inc.,
  496 F.3d 229 (2d Cir. 2007)............................................................9, 18

McCarthy v. Dun & Bradstreet Corp.,
    482 F.3d 184 (2d Cir. 2007)..................................................................................21

Nairobi Holdings Ltd. v. Brown Brothers Harriman & Co.,
    2006 WL 617977 (S.D.N.Y. Mar. 10, 2006), aff'd, 2006 WL 2242596
    (S.D.N.Y. Aug. 3, 2006) .......................................................................................18

Oppenheimer & Co. v. Metal Management, Inc.,
    2009 WL 2432729 (S.D.N.Y. July 31, 2009), objections overruled, 2010 WL
    743793 (S.D.N.Y. Mar. 2, 2010) ..........................................................................18

Parker v. Columbia Pictures Industries,
    204 F.3d 326 (2d Cir. 2000).....................................................................................9

Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.,
    889 F. Supp. 2d 453 (S.D.N.Y. 2012)....................................................................17

Permatex, Inc. v. Loctite Corp.,
    2004 WL 1354253 (S.D.N.Y. June 17, 2004) ..................................................17, 18

Port Authority Police Benevolent Association, Inc. v. Port Authority of N.Y. and N.J.,
    2016 WL 6083956 (S.D.N.Y. Oct. 17, 2016) ....................................................10, 12

Presbyterian Church of Sudan v. Talisman Energy, Inc.,
    453 F. Supp. 2d 633 (S.D.N.Y. 2006), aff'd, 582 F.3d 244 (2d Cir. 2009)............20

Soroof Trading Development Co. v. GE Microgen, Inc.,
    283 F.R.D. 142 (S.D.N.Y. 2012) ...........................................................................10

Tardiff v. City of New York,
    2015 WL 9257069 (S.D.N.Y. Dec. 7, 2015), aff'd, 2016 WL 2343861
    (S.D.N.Y May 3, 2016)...........................................................................................18

Universal Reinsurance Co. v. St. Paul Fire & Marine Insurance Co.,
    312 F.3d 82 (2d Cir. 2002)......................................................................................23

Viacom International Inc. v. Kearney,
    212 F.3d 721 (2d Cir.), cert. denied sub nom., Taylor Forge Stainless, Inc. v.
    Viacom International, Inc., 531 U.S. 1051 (2000)...................................................23

In re Wireless Telephone Services Antitrust Litigation,
    2004 WL 2244502 (S.D.N.Y. Oct. 6, 2004) .......................................................8, 20

In re Worldcom, Inc. Securities Litigation,
    2003 WL 22831008 (S.D.N.Y. Dec. 1, 2003) ..........................................................8

## **Rules**

Federal Rule of Civil Procedure 16(b)(4) ................................................................9

Federal Rule of Civil Procedure 16(d) ................................................................8

Federal Rule of Civil Procedure 19(a)(1)(A) .........................................................23

Federal Rule of Civil Procedure 19(a)(1)(B) .........................................................24

## **Treatises**

7 Wright & Miller <u>Federal Practice & Procedure: Civil</u> §1602 (3d ed. 2020) .......................22, 24

## PRELIMINARY STATEMENT

Defendant ADP, Inc. ("ADP"), formerly known as ADP, LLC, respectfully submits this memorandum of law in opposition to the cross-motion of plaintiff China Grill, Inc. ("China Grill") for leave to amend and remand.

Plainly triggered by ADP's pending summary judgment motion, China Grill's cross-motion is a procedurally defective attempt to overhaul the nature and scope of this litigation more than sixteen months after it was commenced; twelve months after the court-ordered cut-off for amending pleadings or joining parties; and two months after the close of discovery.  Belatedly realizing the fatal flaws in its breach of contract claim, China Grill seeks to re-engineer that cause of action, introduce an entirely new theory of "implied contract" liability and join as plaintiffs no fewer than a dozen of its affiliated entities -- all of this, apparently, in an ill-conceived effort to destroy diversity jurisdiction and force a remand.  China Grill's eleventh-hour scramble is as baseless as it is desperate.

The cross-motion is procedurally infirm.  China Grill moves pursuant to Rule 15 and Rule 21 to amend and join new parties.  As demonstrated below in Point I, neither of those rules applies.  Rule 16 trumps both Rule 15 and Rule 21 where, as here, the deadline for amendment or joinder has been set in a scheduling order.  China Grill may wish to ignore the August 9, 2019 deadline for amendment and joinder that the Court fixed in its scheduling order. It no doubt prefers the forgiving standard for relief under Rule 15 and Rule 21 over the more stringent one articulated in Rule 16.  The fact remains, however, that Rule 16 clearly controls. Equally clear is the fact that China Grill is entitled to no relief under Rule 16 from the August 9, 2019 cut-off.

Pursuant to Rule 16(b), China Grill must demonstrate "good cause" to secure relief from the terms of the scheduling order.  To establish good cause, China Grill must show

that, despite diligently attempting to adhere to the scheduling order, it still could not comply with the August 9, 2019 cut-off.  As demonstrated below in Points II.A and II.B, China Grill cannot satisfy this diligence standard given its extraordinary delay and the fact that the proposed amendments are based on information it possessed well in advance of August 9, 2019.  Indeed, there is nothing China Grill proposes to allege now that it could not have alleged in the initial Complaint filed in March 2019.

As demonstrated below in Point II.C, ADP would be unduly prejudiced if China Grill were permitted to overhaul the case at this late juncture.  The Second Circuit has instructed that it is particularly prejudicial to allow the amendment of pleadings where, as here, discovery is closed and the nonmovant already has moved for summary judgment.

Finally, China Grill's assertion that the Court must remand this matter is entirely without merit.  China Grill maintains that joinder of the proposed plaintiffs will destroy diversity jurisdiction.  As demonstrated below in Point III, this assertion fails for two reasons.  First, as noted above, Rule 16 provides no basis for joining those proposed plaintiffs so they pose no threat whatsoever to diversity jurisdiction.  Second, the apparent argument that Rule 19 provides the basis for China Grill to somehow _compel_ _itself_ to join those absent parties and thus destroy diversity jurisdiction lacks any basis in law, logic or common sense.

For the reasons noted above and discussed in greater detail below, ADP respectfully submits that the Court should deny the cross-motion in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.   The May 2, 2019 Order:  "Unlikely Plaintiff Will Have Another Opportunity to Amend"

China Grill commenced this litigation on March 28, 2019 in New York State Supreme Court, New York County.  In its Complaint (ECF 1-1), China Grill alleged that it was damaged as a result of ADP's deficient payroll processing services.  It asserted three causes of action:  breach of contract, gross negligence and breach of the implied covenant of good faith and fair dealing.  The breach of contract claim was pegged to the allegation that the underlying Master Services Agreement ("MSA") "constitutes a valid and enforceable contract between China Grill and ADP."  See Complaint, ¶43.  No entities other than ADP and China Grill were alleged to be parties to the MSA.  The gross negligence claim rested upon the allegation that "ADP owed a duty to Plaintiff to provide payroll services that would comply with all legal and regulatory requirements."  Id., ¶50.  ADP was not alleged to owe a duty of care to any entity other than China Grill.  The implied covenant claim turned on the allegation that "China Grill had a full expectation that the contracted-for-services would be in full compliance with applicable law."  Id., ¶58.  No entity other than China Grill was alleged to have had such an expectation regarding ADP's services.

ADP timely removed the action (ECF 1) and then, on May 2, 2019, it moved to dismiss the Complaint.  (ECF 7).  On that same date, the Court entered an order noting that, pursuant to Rule 15(a)(i)(B), China Grill could amend the Complaint once as of right within twenty-one days and directing China Grill to file any such amended pleading by May 24, 2019.  (ECF 11).  Significantly, in its May 2, 2019 Order the Court stated:

It is unlikely that plaintiff will have further opportunity to amend.

Id.

China Grill filed the First Amended Complaint on May 24, 2019.  (ECF 12).
Therein, China Grill asserted the same three claims pegged to essentially the same core
allegations.  ADP moved for partial dismissal of the First Amended Complaint on June 7, 2019.
(ECF 14).  Rather than oppose the motion, China Grill walked away from its negligence and
implied covenant claims.  Specifically, on July 1, 2019, China Grill filed a Notice of Partial
Dismissal that left only one remaining cause of action:  a claim for breach of the express contract
between ADP and China Grill.  (ECF 22).

In the breach of contract claim as it has stood for the past fifteen months, China
Grill alleges that the MSA "constitutes a valid and enforceable contract between China Grill and
ADP."  See First Amended Complaint, ¶50.  China Grill further alleges that it "has fulfilled all of
its obligations under the terms of the MSA as amended."  Id., ¶51.  ADP is alleged to have
breached the contract "by failing to design the agreed upon services to assist China Grill in
complying with applicable legal and regulatory requirements."  Id., ¶52.  As a result of this
breach, according to the First Amended Complaint, "China Grill has been damaged[.]"  Id., ¶56.
In short, the scaled-back First Amended Complaint outlines a straightforward commercial
dispute in which there are only two players (ADP and China Grill) and only one cause of action
(breach of express contract).

ADP filed its Answer on July 15, 2019.  (ECF 25).  Therein, ADP denied the
material allegations of the scaled-back First Amended Complaint -- which constitutes the third
iteration of China Grill's pleading.

**B.    The Scheduling Order:  "No Additional**
     **Parties May Be Joined or Pleadings Amended"**

The Court scheduled a Rule 16 pretrial conference for July 26, 2019.  In preparing
for the conference, counsel were unable to agree on, among other things, the limitations to be

imposed on further amendments to the pleadings.  Thus, in the joint Rule 26(f) report submitted

to the Court in advance of the pretrial conference (ECF 26), China Grill proposed that

"[b]eginning thirty days prior to fact discovery closing, amended pleadings may not be filed and

additional parties may not be joined except with leave of the Court."  Id., ¶4(a).  In contrast,

ADP proposed that "[a]mended pleadings may not be filed and additional parties may not be

joined without leave of the Court."  Id., ¶4(b).

      The Court rejected China Grill's expansive proposal.  It imposed an even greater

restriction on amendment and joinder than ADP had proposed.  In its July 16, 2019 order (the

"Scheduling Order") (ECF 28), the Court directed:

> No additional parties may be joined or pleadings amended after
> **August 9, 2019**.

Id., ¶1 (emphasis in original).  This marked the second time the Court placed China Grill

squarely on notice that it would not have carte blanche in amending its pleading.  See May 2,

2019 Order.

      In the Scheduling Order, the Court fixed a discovery end-date of March 26, 2020.

Id., ¶¶4-6.  By April 16, 2020, the Court directed, the parties either were to serve motions for

summary judgment or submit a Joint Pretrial Order.  Id., ¶¶7-8.

     **C.**    **The Amended Scheduling Order:  No Further**
             **Amendment or Joinder Sought and None Permitted**

      In September 2019, the parties commenced an extended but ultimately

unsuccessful series of settlement discussions with the assistance of Magistrate Judge Robert W.

Lehrburger.  Those discussions terminated on November 26, 2019.  (ECF 32).

      On December 9, 2019, China Grill's counsel submitted to the Court a joint

request for relief from the Scheduling Order in light of the amount of time the parties had

dedicated to settlement discussions.  Id.  China Grill's counsel advised that at the outset of

settlement discussions, the parties agreed to "plac[e] discovery on hold in order to facilitate settlement and contain litigation costs."  Id. at 2.  Counsel stated that the parties "cannot realistically complete meaningful discovery in accordance with" the deadlines in the Scheduling Order.  Id.  Counsel requested a 90-day extension of those deadlines.  Id.  China Grill did not seek relief from or even address paragraph 1 of the Scheduling Order, in which the Court directed that "[N]o additional parties may be joined on pleadings amended after **August 9, 2019**."  (ECF 28).  That deadline had passed four months earlier.

In an order dated December 13, 2019 (the "Amended Scheduling Order"), the Court instructed that the parties could extend fact discovery on consent provided that any summary judgment motions or the Joint Pretrial Order were filed by the April 16, 2020 deadline set in the Scheduling Order.  (ECF 33).  The Court did not modify the Scheduling Order with respect to the August 9, 2019 cut-off for joinder or amendment.

### D.    The March 19, 2020 Order:  No Further Amendment or Joinder Sought and None Permitted

By mid-March 2020, the parties had encountered the strong headwinds generated by the COVID-19 pandemic.  The health emergency upended efforts to complete discovery in a timely manner.  Counsel for China Grill and ADP determined that they required additional time to complete discovery under the circumstances.  On March 18, 2020, ADP's counsel submitted to the Court a joint request for relief from the discovery and briefing schedules set forth in the Amended Scheduling Order.  (ECF 37).  Significantly, this letter -- which was reviewed and approved in advance by China Grill's counsel -- did not address or seek relief from the August 9, 2019 deadline for amending pleadings or adding parties.

In its order of March 19, 2020 (ECF 38), the Court granted an 8-week extension "of all upcoming deadlines."  Id. at 1.  The parties were directed to submit "any motion for

summary judgment" by June 19, 2020.  Id. at 3.  The March 19, 2020 Order did not reference
any motions other than motions for summary judgment.  It did not extend the August 9, 2019
deadline for amending pleadings or adding parties, which had lapsed seven months earlier.

> **E.  Discovery Concludes and ADP Files
> Its Motion for Summary Judgment**

The parties agreed to complete discovery by June 1, 2020 so as to leave adequate
time to meet the June 19, 2020 deadline for any summary judgment motions.  ADP pressed hard
to do so, executing on a discovery strategy developed in reliance on the legal claims and issues
as framed in the First Amended Complaint.  ADP's counsel reviewed voluminous electronically
stored documents produced by China Grill.  Counsel also reviewed 150 boxes of hard copy
documents.  The majority of those documents were reviewed in New Hope, Pennsylvania.  The
remainder of the documents were reviewed on two occasions in Manhattan.  To do so, ADP
arranged for the bulk of those documents to be shipped to New York from Miramar, Florida
rather than require counsel to travel to Florida during the COVID-19 emergency.  In addition,
ADP devoted considerable time and resources to preparing and producing its Rule 30(b)(6)
witness for her deposition on May 28, 2020.  Finally, ADP deposed China Grill's Rule 30(b)(6)
witness.  See Declaration of Randall L. Morrison, Jr. ("Morrison Declaration"), ¶¶6-10.

On June 19, 2020, ADP filed its timely motion for summary judgment.  (ECF 39).
Therein, ADP maintains that the breach of contract claim as framed in the First Amended
Complaint fails absent any damages sustained by China Grill.  China Grill did not file any cross-
motion for summary judgment by the June 19, 2020 deadline.

> **F.  The June 23, 2020 Order:  Additional Time
> Granted for China Grill to File Its "Cross-Motion"**

One business day after ADP filed its motion for summary judgment, counsel for
China Grill wrote to the Court to request relief from the Scheduling Order as amended.  (ECF

45).  Specifically, counsel requested an extension through July 31, 2020 to oppose ADP's summary judgment motion and file "any cross-motion[.]"  <u>Id.</u> at 1.  Counsel did not specify what "cross-motion" might be forthcoming.[1]  ADP consented to China Grill's request, although it expressly "reserve[d] all of its rights with respect to [the] timing and propriety of any cross-motion by China Grill[.]"  <u>Id.</u> at 2.

The Court granted China Grill's request on June 23, 2020.  (ECF 46).  What followed was not a delayed cross-motion for summary judgment; instead, on July 31, 2020, China Grill filed the subject motion to amend the First Amended Complaint to join twelve additional parties, materially alter its breach of contract claim and add an entirely new implied contract claim.  (ECF 50).  In support of that motion, China Grill submits a proposed Second Amended Complaint constituting its <u>fourth</u> bite at the pleading apple.  (ECF 48-7).

## ARGUMENT

## POINT I.

## THE CONTROLLING LEGAL PRINCIPLES

### A.    Amendments After the Entry of a Scheduling Order

This Court consistently has recognized that where, as here, a scheduling order has been entered, the strict standard of Rule 16(b) with respect to amending a pleading trumps the more lenient standard reflected in Rule 15(a).  <u>See</u>, <u>e.g.</u>, <u>Camacho v. City of New York</u>, 2020 WL 4014902, at *3 (S.D.N.Y. July 16, 2020); <u>Downtown Music Publ'g LLC v. Peloton Interactive, Inc.</u>, 436 F. Supp. 3d 754, 767 (S.D.N.Y. 2020); <u>In re Gen. Elec. Co. Sec. Litig.</u>, 2012 WL 2892376, at * 2 (S.D.N.Y. July 12, 2012); <u>In re Wireless Tel. Servs. Antitrust Litig.</u>, 2004 WL 2244502, at *5 (S.D.N.Y. Oct. 6, 2004); <u>In re Worldcom, Inc. Sec. Litig.</u>, 2003 WL

---

[1]     As noted above, the March 19, 2020 order did not anticipate the filing of just <u>any</u> motion by June 19, 2020.  It referenced only the filing of "any <u>motion</u> <u>for</u> <u>summary</u> <u>judgment</u>[.]"  (ECF 38) (emphasis supplied).

22831008, at \*2 (S.D.N.Y. Dec. 1, 2003).  A scheduling order "controls the course of the action unless the court modifies it."  Fed. R. Civ. P. 16(d).  Under Rule 16(b)'s exacting standard, an amendment not consistent with the scheduling order is prohibited absent a showing of "good cause."  Fed. R. Civ. P. 16(b)(4).

Rule 16 "is designed to offer a measure of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed."  Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000) ("[d]isregard of the [scheduling] order would undermine the court's ability to control its docket, disrupt the agreed-upon course of litigation, and reward the indolent and the cavalier").  A finding of good cause sufficient to secure relief from a scheduling order "turns on the diligence of the moving party."  BPP Illinois, LLC v. Royal Bank of Scotland Grp., 859 F.3d 188, 195 (2d Cir. 2017); Holmes v. Grubman, 568 F.3d 329, 334 (2d Cir. 2009); see Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 244 (2d Cir. 2007) ("primary consideration" is whether the movant has been diligent).  To show good cause, the movant "must demonstrate that, 'despite having exercised diligence' in its efforts to adhere to the court's scheduling order, 'the applicable deadline [to amend] could not reasonably have been met.'"  Christians of Cal., Inc. v. Clive Christian New York, LLP, 2014 WL 3605526, at \*4 (S.D.N.Y. July 18, 2014).  Diligence cannot be shown "'where the proposed amendment is based on information that the party knew, or should have known, in advance of the motion deadline.'"  Id.

### B.     Joinder After the Entry of a Scheduling Order

When a motion for joinder is made after the expiration of a deadline to join parties established in a scheduling order, the motion "is subject to the heightened standard for untimely amendments set forth in Rule 16(b), which requires a showing of 'good cause.'"  City of Almaty v. Ablyazov, 278 F. Supp. 3d 776, 789 (S.D.N.Y 2017).  The courts in this District

9

consistently "have concluded that Rule 16's good cause standard is applicable to both" motions to add claims and motions to add parties.  Soroof Trading Dev. Co. v. GE Microgen, Inc., 283 F.R.D. 142, 147 n.3 (S.D.N.Y. 2012).

   As with a motion to amend, the determination of whether good cause exists in the context of a joinder motion "turns on the 'diligence of the moving party.'"  City of Almaty, 278 F. Supp. 3d at 789.  "In particular, 'the movant must show that the deadlines [established in the controlling scheduling order] cannot be reasonably met despite its diligence.'"  Id. at 790; Soroof Trading, 283 F.R.D. at 147 (good cause "is demonstrated by a showing that 'despite its having exercised diligence, the applicable deadline could not have been reasonably met'").  A movant is unable to clear this hurdle "'when the proposed amendment rests on information that the party knew, or should have known, in advance of the'" joinder deadline established in the controlling scheduling order.  Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth. of N.Y. and N.J., 2016 WL 6083956, at *3 (S.D.N.Y. Oct. 17, 2016).

**POINT II.**

**CHINA GRILL HAS FAILED TO DEMONSTRATE<br>"GOOD CAUSE" FOR RELIEF FROM THE SCHEDULING ORDER**

   The Court will search the cross-motion in vain for any discussion of Rule 16. China Grill does not even cite to Rule 16(b), much less attempt to satisfy its good cause standard. The only explanation China Grill offers as to why it requires relief from the Scheduling Order reveals the true driver behind the cross-motion.  China Grill maintains at page 18 of its brief that further amendments to the First Amended Complaint are necessary "in order to cure the objection belatedly raised by ADP[.]"  This "objection," of course, is ADP's summary judgment motion targeting China Grill's breach of contract claim.

10

China Grill's tardy realization that its claim is hollow at its core does not open the door to a do-over.  Yet a do-over is precisely what China Grill proposes:  a Second Amended Complaint reflecting an entirely new cast of plaintiffs, a materially revised and expanded breach of contract claim, and a previously unarticulated theory of implied contractual liability.  China Grill does not seek to amend to incorporate information it did not previously possess; instead, it seeks to amend in order to deflect a summary judgment motion it did not anticipate.

China Grill cannot demonstrate good cause for relief from the Scheduling Order. Prior to ADP's summary judgment motion, China Grill had taken no action toward amending the First Amended Complaint by August 9, 2019 or even attempting to preserve its right to do so thereafter.  China Grill did not seek relief from the August 9, 2019 cut-off in connection with the parties' December 9, 2019 joint request for a relaxation of the discovery and summary judgment briefing schedules.  (ECF 32).  Nor did China Grill seek relief from the August 9, 2019 cut-off in connection with the parties' March 18, 2020 joint request for relief from the discovery and briefing schedules.  (ECF 37).  The reality is that the first half-step China Grill took toward amending the First Amended Complaint came just one business day after ADP filed its motion for summary judgment.  After reviewing that motion, China Grill cagily sought an extension of time to file an unspecified "cross motion."  (ECF 45).  Even then China Grill did not expressly request relief from the August 9, 2019 cut-off or even candidly telegraph to the Court that it intended to do so.  When China Grill did finally get around to expressly seeking this relief six weeks later, its application was not based on any newly developed information; instead, the cross-motion constitutes a textbook example of a proposed amendment that is based on information the movant knew or should have known well prior to the deadline for amending or joinder.

A.      **The Joinder Motion Fails**

China Grill proposes to join no fewer than a dozen new plaintiffs, all of whom are affiliated with and obviously known to China Grill.  See Proposed Second Amended Complaint, ¶¶5-16.  Eight of these affiliated entities, China Grill now seeks to allege for the first time, were parties to the MSA (although China Grill alone was identified as the Client and only China Grill executed the agreement).[2]  Id., ¶¶27, 66.  The remaining four affiliates, China Grill now seeks to allege for the first time, were parties to the MSA by "implication" because ADP "treated [them] as though they were covered by the MSA although never specifically identified in the MSA[.]" China Grill's Brief at 17; see Proposed Second Amended Complaint, ¶30.

China Grill cannot establish the requisite good cause under Rule 16(b) because this proposed joinder "rests on information that [it] knew, or should have known," well in advance of the August 9, 2019 joinder deadline.  Port Auth. Police Benevolent Ass'n, 2016 WL 6083956, at *3.  China Grill cannot credibly claim that prior to August 9, 2019 it was unaware of the identity of these affiliates.  Each proposed plaintiff is part of the China Grill Management restaurant group.  See China Grill Inc.'s Response to Defendant ADP's Statement of Undisputed Facts (ECF 51), ¶¶1-5, 13-14, 17-42.  Nor can China Grill claim that prior to August 9, 2019 it was unaware that certain of these entities were members of the Client Group as that term is defined in the MSA.  Likewise, China Grill must concede that prior to August 9, 2019 it was aware that proposed plaintiffs RF Broadway, RF Hudson, CGM-LLNR LLC and CG Brickell were not members of the Client Group.  China Grill has been in possession of the MSA since 2005.  The MSA as amended over the years made clear which of these affiliated entities were

---

[2]       China Grill maintains in the Proposed Second Amended Complaint that "[t]he MSA sta[t]es that 'Client Group' means 'Client.'"  See Proposed Second Amended Complaint, ¶27.  That is a bald mischaracterization of the plain language of the MSA.  See MSA (ECF 41-19) at ADP128 (definition of "Client") and ADP129 (definition of "Client Group").

members of the Client Group and which were not.  As the only Client under the MSA, China

Grill knew or should have known well before August 9, 2019 which of its affiliated entities were

receiving payroll processing services under that contract.  Absolutely none of this is news to

China Grill.

The fact is that China Grill today possesses no more information regarding these

proposed plaintiffs than it did years prior to August 9, 2019.  If China Grill truly believed that

these affiliated entities had grounds to assert any legal claims arising out of ADP's payroll

processing services, it could and should have included them as parties to this litigation from the

outset -- or at least well before August 9, 2019.

On its face, the joinder motion is peculiar.  In the typical Rule 16(b) scenario, the

movant maintains that it did not know and could not have known that some third party should

have been included as a party to the action.  Here, China Grill strains to argue that it somehow

did not know that a dozen of its own corporate affiliates had an interest in this dispute and that it

could not have known this information until very recently.  China Grill's contention fails the

straight-face test.  This is not a case in which late joinder is warranted due to the inaccessibility

of relevant information regarding potential parties.  In Bayerische Landesbank v. Aladdin Capital

Management LLC, 289 F.R.D. 401 (S.D.N.Y. 2013), for example, plaintiff sued Aladdin Capital

Management LLC ("ACM") in a dispute arising out of investment losses relating to plaintiff's

participation in a collateralized debt obligation.  Plaintiff filed an amended complaint.

Thereafter, this Court entered a scheduling order setting a deadline of October 12, 2012 for

joinder of parties and amendment of pleadings.  A revised First Amended Complaint was filed

on that same date.  Id. at 402-03.

In its initial disclosures, ACM identified seven individuals likely to possess

discoverable information.  ACM identified the individuals as current or former ACM employees.

However, in its November 13, 2012 interrogatory responses, ACM identified ten potential witnesses who were "employed by an affiliate or otherwise related entity of ACM" or were employees of Aladdin Capital Holdings LLC ("ACH") during the relevant time.  When plaintiff pressed for clarification, ACM on November 19, 2012 confirmed that the ten individuals "'are or were technically employees of ACH'" and not ACM.  This marked the first time plaintiff had confirmation that employees of ACH, not ACM, attended a key meeting at which plaintiff's investment was solicited.  Id. at 403-04.

On December 4, 2012, plaintiff moved to add ACH as a defendant.  Id. at 402. The Court concluded that, although the October 12, 2012 deadline for joinder had passed, "plaintiff has demonstrated 'good cause' for its application to amend."  Id. at 404.  The Court noted that it was not until November 13, 2012 that plaintiff learned that ACH employees had "'significant involvement' in marketing and managing" the investment in question.  Id.  After receiving confirmation of this information, the Court emphasized, plaintiff acted promptly to join ACH.  Id.  The Court concluded, "Plaintiff has therefore shown that it was sufficiently diligent in its pursuit of the proposed additional defendant to constitute 'good cause' for amending its pleading at this stage."  Id.

In contrast to Bayerische Landesbank, here the identity of the proposed plaintiffs did not come into focus only after the deadline for joinder.  China Grill years ago knew not only the identity of these proposed plaintiffs but also their relationship to ADP, the MSA and the payroll processing services ADP provided thereunder.  During the course of this litigation, China Grill learned nothing about these proposed plaintiffs it did not already know.  In the highly unlikely event China Grill truly believes there is a good faith basis for maintaining that these proposed plaintiffs possess any viable cause of action against ADP, it had the same information

14

years ago and should have joined them long before now.  Having failed to proceed diligently, China Grill cannot now establish good cause for relief from the Scheduling Order.

      **B.**    <u>**The Motion to Amend Fails**</u>

        In the second prong of its cross-motion, China Grill seeks to alter the scope and nature of this dispute in two material respects.  <u>First</u>, it proposes a material reformation of the breach of contract claim.  In the Complaint and First Amended Complaint, China Grill specifically alleged that the MSA constituted a valid and binding contract "between China Grill and ADP."  <u>See</u> Complaint, ¶43; First Amended Complaint, ¶50.  In the proposed Second Amended Complaint, the MSA is now said to constitute a valid and binding express contract between ADP, China Grill and eight of the proposed plaintiffs.  <u>See</u> Proposed Second Amended Complaint, ¶66.  Whereas China Grill previously alleged that ADP breached the MSA by providing deficient services to China Grill, <u>see</u> Complaint, ¶45; First Amended Complaint, ¶52, China Grill now proposes to allege that ADP "breached the MSA as amended by failing to design the agreed upon services to assist Plaintiffs" -- i.e., China Grill and a host of its affiliates -- "in complying with applicable legal and regulatory requirements."  <u>See</u> Proposed Second Amended Complaint, ¶68.

        <u>Second</u>, China Grill proposes to introduce an entirely new "implied contract" theory of liability.  <u>Id.</u>, ¶¶73-81.  In the proposed Second Amended Complaint, China Grill asserts for the first time that ADP contractually agreed to render payroll services to four of the proposed plaintiffs who were not included in the Client Group as that term is defined in the MSA.  <u>Id.</u>, ¶74.  In this new theory, China Grill maintains that ADP breached its obligations under an "implied contract" with these four entities "by failing to render services designed to assist [them] in complying with their legal responsibilities."  <u>Id.</u>, ¶79.

15

China Grill cannot establish good cause for relief from the Scheduling Order to advance these new legal claims because "the proposed amendment is based on information that [it] knew, or should have known, in advance of the" August 9, 2019 deadline for amended pleadings.  Christians of Cal., 2014 WL 3605526 at *4.  China Grill maintains that "the rights [of the proposed plaintiffs] derive from the same occurrence" giving rise to its own breach of contract claim.  See China Grill's Brief at 19.  If this is so, then clearly the information regarding this "same occurrence" was in China Grill's possession long before August 9, 2019.  For example, China Grill seeks to add an allegation that, although China Grill "was the sole signatory to the MSA," the MSA "also made clear that ADP was rendering services to a 'Client Group' which was defined to mean China Grill and the affiliates listed on an Annex Z to the MSA."  Proposed Second Amended Complaint, ¶27.  The purported bases for this allegation -- the MSA and Annex Z thereto -- have been in China Grill's possession since 2005.  If the MSA is "clear" now on the issue of ADP providing services to members of the Client Group, it was no less clear years prior to August 9, 2019.

China Grill also now seeks to allege that "Annex Z was thereafter amended to include various other China Grill affiliated restaurants."  Id., ¶28.  Once again, the purported bases for this allegation -- the various amendments to Annex Z -- have been in China Grill's possession for years.  There is no new-found information here.  China Grill knows no facts today regarding those amendments than it did not know long before August 9, 2019.

Similarly, in its proposed pleading China Grill seeks to allege that "[a]ll Plaintiffs except for RF Broadway, RF Hudson, CGM-LLNR LLC and CG Brickell were expressly made part of the Client Group to which ADP agreed to render services under the MSA."  Id., ¶29.  The purported basis for this assertion -- the MSA -- was available to China Grill some fourteen years before the August 9, 2019 deadline.  The identity of members of the Client Group is not

information that surfaced during the course of discovery.  This is information that has been

reflected on the face of the MSA and its amendments since as early as 2005.

      China Grill next seeks leave to allege for the first time that, "although not

expressly made part of the Client Group, ADP treated RF Broadway, RF Hudson, CGM-LLNR

LLC and CG Brickell as if they were part of the Client Group (hereinafter 'Implied Client

Group')."  Id., ¶30.  Once again, how ADP "treated" these four affiliates is information that was

readily available to China Grill years prior to its commencement of this litigation.  This certainly

is not information developed after the August 9, 2019 cut-off for amendments.

      Finally, through its proposed pleading, China Grill seeks to allege that "ADP

provided payroll services, assigned client codes to, and collected fees from the companies in the

Implied Client Group as if they were part of the Client Group in the MSA."  Id., ¶31.

Information regarding ADP's fees and how it performed its services under the MSA obviously

was readily available to China Grill years before August 9, 2019.

      China Grill's motion to amend is highly irregular.  This is not a case in which the

factual basis for a proposed new claim was not known and could not have been known to a

movant until after the deadline for amendment had passed.  In Perfect Pearl Co. v. Majestic Pearl

& Stone, Inc., 889 F. Supp. 2d 453 (S.D.N.Y. 2012), for example, plaintiff sought leave to add

new claims after the January 6, 2011 deadline for amendment had passed.  Id. at 454-55.

Plaintiff maintained that it proceeded diligently because it only became aware of the grounds for

those new claims at the September 20, 2011 deposition of defendant's Rule 30(b)(6) designee.

Id. at 455.  The Court allowed the late amendment because "prior to the January 6, 2011 deadline

for amended pleadings, [plaintiff] neither knew, nor should have known" of the wrongful

conduct giving rise to the new claims.  Id. at 458.

Similarly, in <u>Permatex, Inc. v. Loctite Corp.</u>, 2004 WL 1354253 (S.D.N.Y. June 17, 2004), defendant sought and obtained leave to amend its answer to assert two new counterclaims after the July 31, 2003 deadline for amendments in the scheduling order had lapsed. <u>Id.</u> at *1, 3. Defendant maintained that it was entitled to relief from that deadline because it only discovered the factual basis for the new counterclaims at the March 2, 2004 deposition of one of plaintiff's executives. <u>Id.</u> at *1. The court agreed. <u>Id.</u> at *3. Because defendant did not learn of the underlying wrongful conduct until after the deadline lapsed and then moved promptly to seek leave to amend, the court held that defendant "has provided the necessary 'good cause' and 'diligence' for excusing its failure to move for leave to amend by the July 31, 2003 cut-off." <u>Id.</u>

None of the circumstances justifying relief in <u>Perfect Pearl</u> and <u>Permatex</u> are presented here. The alleged factual basis for China Grill's revised breach of contract claim and new implied contract cause of action did not come to light after the August 9, 2019 cut-off. To the contrary, the facts and circumstances China Grill proposes to use as a basis for the Second Amended Complaint all were known to China Grill in real-time and certainly long before that deadline had passed.

## C.     <u>Prejudice to ADP</u>

In addition to the "good cause" requirement, the Court in its discretion may consider whether granting leave to amend will prejudice ADP. <u>Kassner</u>, 496 F.3d at 244; <u>Tardiff v. City of New York</u>, 2015 WL 9257069, at *3 (S.D.N.Y. Dec. 7, 2015), <u>aff'd</u>, 2016 WL 2343861 (S.D.N.Y May 3, 2016).[3] ADP respectfully submits that it would be greatly prejudiced

---

[3]     The mere absence of prejudice to the nonmovant does not establish good cause or relieve China Grill from satisfying Rule 16(b)'s heightened standard for relief. <u>Estate of Ratcliffe v. Pradera Realty Co.</u>, 2007 WL 3084977, at *1 (S.D.N.Y. Oct. 19, 2007); <u>Nairobi Holdings Ltd. v. Brown Bros. Harriman & Co.</u>, 2006 WL 617977, at *7 (S.D.N.Y. Mar. 10, 2006), <u>aff'd</u>, 2006 WL 2242596 (S.D.N.Y. Aug. 3, 2006). Courts recognize that "to allow the lack of prejudice to trump [movant's] lack of good cause would be to ignore the important distinction between Rule

both by the magnitude of the amendments China Grill proposes and their timing, coming as they do after the close of discovery and after ADP moved for summary judgment.  See Morrison Declaration, ¶¶3-14.

ADP has defended this matter aggressively.  It has done so in reliance on how China Grill framed the case in the First Amended Complaint as a straightforward breach of contract dispute between two parties.  China Grill now seeks to scrap that narrative altogether. ADP has not had an opportunity to challenge the legal viability of China Grill's reformulated legal theories through pre-discovery motion practice.  It has not had the opportunity to propound discovery on the dozen proposed new plaintiffs.  It has not had the opportunity to review any relevant documentation in the possession of those proposed plaintiffs.  ADP has not deposed any representatives of those entities, nor has it deposed any other witnesses who may possess relevant information regarding the affiliates' purported claims.  ADP has not had the opportunity to challenge those claims on a summary judgment motion, nor has it had the opportunity to properly position itself for any trial of those claims.  Id., ¶¶11-14.

Nonetheless, China Grill argues that the proposed plaintiffs' rights "present the same question of law and fact" as its own claim in that the affiliates' proposed claims turn on whether ADP breached the MSA.  See China Grill Brief at 18.  It is not, of course, even remotely that simple.  As the "Client" under the MSA, China Grill indisputably was a party to the MSA and indisputably possessed certain rights and obligations arising out of the express terms of that contract.  This is not the case with respect to the dozen entities China Grill now seeks to add to the mix.  What, if any, rights and obligations members of the Client Group may have with

---

15(a) and Rule 16(b)."  Oppenheimer & Co. v. Metal Mgmt., Inc., 2009 WL 2432729, at *4 (S.D.N.Y. July 31, 2009), objections overruled,  2010 WL 743793 (S.D.N.Y. Mar. 2, 2010); see also Gullo v. City of New York, 540 F. Appx. 45, 47 (2d Cir. 2013) ("[t]hat defendants suffered no prejudice does not change the fact that plaintiffs failed to pursue amendment with diligence").

respect to ADP is a matter involving a distinct set of legal and factual issues.  Whether China

Grill's affiliates who were not even members of the Client Group have any rights and obligations

under the MSA presents yet another set of distinct factual and legal issues.  Additional new

issues raised by China Grill's proposed amendment include what, if any, damages the proposed

plaintiffs suffered and the degree to which they are bound by the MSA's robust limitation of

liability provisions.  These issues have not been explored -- and that is not due to any lack of

diligence on ADP's part.  They have not been explored because they never fell within the

parameters of this dispute as delineated in the First Amended Complaint.

        China Grill's assertion that "no additional discovery will be required as a result of

the proposed Amended Complaint" is nonsense.  See China Grill's Brief at 20.  The proposed

amendments would transform this case into something materially different from what is outlined

in the First Amended Complaint.  See Camacho, 2020 WL 4014902, at *3 (denying leave to

amend where proposed amendment "would transform this case" and constitute a "material

alteration in the nature of the litigation"); Presbyterian Church of Sudan v. Talisman Energy,

Inc., 453 F. Supp. 2d 633, 680 (S.D.N.Y. 2006) ("[w]hile the plaintiffs defend [the proposed

amendment] as simply a clarification" of their theories of liability set forth in pleading, "they are

absolutely wrong.  The proposed amendment dramatically alters the plaintiffs' theories of

liability and the focus of their case"), aff'd, 582 F.3d 244 (2d Cir. 2009).  To allow China Grill to

alter the nature and scope of this case so materially and at so late a stage in the litigation plainly

would prejudice ADP.  See In re Wireless Tel. Servs., 2004 WL2244502, at *6 ("permit[ting] the

plaintiffs to change and expand the focus [of] their case at this stage in the litigation demands too

much of the defendants").

        ADP reasonably relied on the First Amended Complaint as "the final, definitive

statement" of China Grill's claim.  In re Gen. Elec., 2012 WL 2892376, at *3.  It conducted its

defense of this case accordingly, particularly after the August 9, 2019 deadline passed.  As the Second Circuit has made clear in this context, a complaint is intended to "provide[ ] a defendant with 'notice of what the plaintiff's claim is and the grounds upon which it rests.'"  McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 201 (2d Cir. 2007).  "Having received such notice, a defendant may conduct his trial preparation accordingly and is not required, based on the plaintiff's subsequent conduct in litigation, to anticipate future claims that a plaintiff might intend to pursue."  Id. at 201-02.

Courts consistently deny leave to amend when, as here, the motion is brought after the close of discovery and after the filing of a summary judgment motion.  They reject those late amendments because they offend the notion that a defendant should be permitted to structure and execute upon its defense strategy in reliance on how the litigation is framed in the operative complaint.  Indeed, the Second Circuit has emphasized that it is "especially prejudicial" to allow amendment after discovery is closed and the defendant already has moved for summary judgment.  Ansam Assocs., Inc. v. Cola Petroleum, Ltd., 760 F.2d 442, 446 (2d Cir. 1985) (affirming denial of motion to amend made after discovery had been completed and nonmovant had already moved for summary judgment); see also McCarthy, 482 F.3d at 202 (same); Grochowski v. Phoenix Constr., 318 F.3d 80, 86 (2d Cir. 2003) (same).

In contrast to the real-world prejudice the proposed amendments would cause ADP, denying the cross-motion imposes no undue hardship on China Grill.  China Grill remains free to see its breach of contract claim through to the end.  As for the dozen affiliated entities China Grill seeks to join as parties, they remain free to pursue independently whatever claims they may have against ADP.  ADP is ready and willing to defend those claims in the ordinary course if they materialize.  ADP, however, should not be sandbagged by an eleventh-hour

motion to amend, nor should it be compelled to face those new claims without a fair opportunity to pursue discovery and fully develop its defenses.

* * * *

For these reasons, ADP respectfully submits that China Grill is entitled to no relief from the Scheduling Order's August 9, 2019 deadline for the amendment of pleadings or joinder of parties.

<h2 style="text-align:center">POINT III.</h2>

<h2 style="text-align:center">CHINA GRILL'S REMAND<br>ARGUMENT IS BASELESS</h2>

China Grill maintains that the Court must remand this action because the addition of the proposed plaintiffs would destroy diversity jurisdiction.  See China Grill's Brief at 22. This argument fails because, for the reasons discussed above, Rule 16(b) does not allow the joinder of those new plaintiffs under the circumstances presented here.  Grasping at procedural straws, China Grill invokes Rule 19 to support its remand argument.  Rule 19 is of no more assistance to China Grill than Rule 15, Rule 16 or Rule 21.

Rule 19 has no application here.  Rule 19 embodies a form of compulsory joinder. 7 Wright & Miller Federal Practice & Procedure:  Civil §1602 (3d ed. 2020) (hereinafter "Wright & Miller").  Typically, a defendant asserts the indispensable party doctrine reflected in Rule 19 as a defense, maintaining that the court either should compel plaintiff to join a party that is indispensable to the dispute or dismiss the action.  The Rule 19 defense commonly is advanced in an answer or a motion to dismiss pursuant to Rule 12(b)(7).

The indispensable party rule "is an exception to the general practice of giving plaintiff the right to decide who shall be the parties to a lawsuit."  Id.  A plaintiff's right to dictate who is and is not made a party must yield when "significant countervailing considerations

22

make the joinder of particular absentees desirable."  Id.  China Grill purports to invoke Rule 19

to compel itself to join the proposed plaintiffs, and thus destroy diversity jurisdiction and compel

remand.  That is not a proper use of the indispensable party doctrine.  Not surprisingly, not one

of the authorities China Grill cites at page 22-23 of its brief involves an even remotely analogous

scenario.

        Even if it did apply to this attempt to add as plaintiffs a dozen of its affiliated

entities, China Grill has not established that it is entitled to relief under Rule 19.  Rule 19 sets

forth a two-step test for determining whether a court must dismiss an action for failure to join an

indispensable party.  Viacom Int'l Inc. v. Kearney, 212 F.3d 721, 724 (2d Cir.), cert. denied sub

nom., Taylor Forge Stainless, Inc. v. Viacom Int'l, Inc., 531 U.S. 1051 (2000).   First, a court

must determine whether the absent party is a "necessary" party under Rule 19(a).  Id.  Second, if

the absent party is deemed "necessary" under Rule 19(a) and joinder is not feasible for

jurisdictional or other reasons, the court turns to the determination of whether the absent party is

"indispensable" under Rule 19(b).  Universal Reins. Co. v. St. Paul Fire & Marine Ins. Co., 312

F.3d 82, 87 (2d Cir. 2002).  Courts adopt a "flexible approach" in determining whether absent

parties are indispensable.  Id.  The Second Circuit has instructed that "very few cases should be

terminated due to the absence of nondiverse parties unless there has been a reasoned

determination that their nonjoinder makes just resolution of the action impossible."  Id.

        Here, proceeding without the proposed plaintiffs will not interfere with the just

resolution of this dispute between ADP and China Grill.  Those "absent" parties are not

indispensable under Rule 19(b).  Indeed, they are not even necessary parties under Rule 19(a).

An absent party is necessary when "in that person's absence, the court cannot accord complete

relief among existing parties[.]"  Fed. R. Civ. P. 19(a)(1)(A).  Alternatively, an absent party is

necessary where that person "claims an interest relating to the subject of the action and is so

situated" that resolution of the action in its absence either (1) may "as a practical matter" impair that person's ability to protect its interest, or (2) leave any existing party to the action "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations" by virtue of the absent party's claimed interest.  Fed. R. Civ. P. 19(a)(1)(B).

These "significant countervailing considerations," 7 Wright & Miller at §1602, are not present here.  There "is no reason that 'complete relief' could not be accorded among" ADP and China Grill without joining the proposed plaintiffs.  DiChiara v. Ample Faith Invs. Ltd., 2006 WL 3431197, at *9 (S.D.N.Y. Nov. 29, 2006).  China Grill's ability to recover its purported damages in this case will not be affected in the least if this action proceeds without the proposed plaintiffs.  If China Grill's affiliates wish to pursue claims against ADP in one or more separate proceedings, their ability to recover any purported damages from ADP will not be affected by whatever recovery China Grill may secure here.  ADP will not be exposed to the risk of any "double, multiple, or otherwise inconsistent obligations," Fed. R. Civ. P. 19(a)(1)(B), if the proposed plaintiffs proceed independently.  Their purported claims will stand or fall on their own merits regardless of the disposition of China Grill's claim in this action.

In short, because the proposed plaintiffs are not indispensable parties, neither Rule 19 nor any other rule provides a viable peg for China Grill's Hail Mary attempt to scuttle this case and avoid the consequence of its fundamentally flawed breach of contract claim.

## **CONCLUSION**

For the reasons set forth above, ADP respectfully requests that the Court deny in its entirety China Grill's cross-motion to amend and remand.

Dated:   New York, New York
           August 28, 2020

Respectfully submitted,

KELLEY DRYE & WARREN LLP

By:  /s/ William S. Gyves
     William S. Gyves
     Randall L. Morrison, Jr.
     Robert N. Ward

101 Park Avenue
New York, New York 10178
Telephone:  (212) 808-7800
Facsimile:  (212) 808-7897
wgyves@kelleydrye.com
rmorrison@kelleydrye.com
rward@kelleydrye.com

Attorneys for Defendant